**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
*jcotchett@cpmlegal.com*
Mark C. Molumphy (SBN 168009)
*mmolumphy@cpmlegal.com*
Anne Marie Murphy (SBN 202540)
*ammurphy@cpmlegal.com*
Tyson C. Redenbarger (SBN 294424)
*tredenbarger@cpmlegal.com*
Julia Q. Peng (SBN 318396)
*jpeng@cpmlegal.com*
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:   (650) 697-6000

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN: 175783)
*fbottini@bottinilaw.com*
Anne B. Beste (SBN 326881)
*abeste@bottinilaw.com*
Albert Y. Chang (SBN 296065)
*achang@bottinilaw.com*
Yury A. Kolesnikov (SBN 271173)
*ykolesnikov@bottinilaw.com*
Nicholas H. Woltering (SBN 337193)
*nwoltering@bottinilaw.com*
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAM HERESNIAK**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**ELON R. MUSK, X HOLDINGS I, INC., X HOLDING II, INC., and TWITTER, INC.**,<br><br>Defendants, | Case No.: **3:22-CV-03074-CRB**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXPEDITE AND COORDINATE DISCOVERY**<br><br>Date:     September 16, 2022<br>Time:    10:00 a.m.<br>Crtrm:   6, 17th Floor<br>Judge:   Hon. Charles R. Breyer |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 16, 2022, at 10:00 a.m. or as soon thereafter as it may be heard, in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will and does move this Court for an Order granting Plaintiff's Motion to Expedite and Coordinate Discovery ("Motion"). Please also take notice that Plaintiff intends to request an expedited briefing schedule and hearing date for this Motion, subject to the Court's approval.

As set forth in the accompanying Memorandum of Points and Authorities, good cause exists for the relief requested. This Motion is based upon this Notice of Motion; the supporting Memorandum of Points and Authorities; the supporting declaration of Tyson Redenbarger filed herewith; all documents and pleadings on file in this action; and such other argument or evidence as may be presented in reply or at the hearing on this motion.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................................i
MEMORANDUM OF POINTS AND AUTHORITIES.................................................................... 1
I. INTRODUCTION................................................................................................................. 1
II. FACTUAL BACKGROUND............................................................................................... 2
III. ARGUMENT......................................................................................................................... 6
    A. Expedited and Coordinated Discovery is Warranted in this Case ............................... 6
        1. Good Cause Exists to Compel Defendants to Produce the Discovery from the Delaware Action in an Expedited Manner...................................................... 6
        2. Expedited Discovery is Appropriate As Plaintiff Anticipates Filing a Motion for Injunction or Declaratory Relief ................................................................ 8
    B. Defendants Should be Ordered to Promptly Confer on Discovery and to Submit a Discovery Plan............................................................................................................ 9
    C. Alternatively, If the Court Does Not Order Coordination, Defendants Should be Ordered to Produce to Plaintiff all Documents and Deposition Transcripts from the Delaware Action ..................................................................................................... 10
IV. CONCLUSION ................................................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff respectfully moves this Court pursuant to Federal Rule of Civil Procedure 26(d)(1) to compel Defendants to coordinate the discovery taking place in the related Delaware Action[1] where discovery has already been expedited, and to compel Defendants to promptly schedule a Rule 26(f) conference. The Delaware Action seeks only specific performance, asking the court there to require Defendant Elon Musk ("Musk") to honor his contract to buy Twitter for $54.20 per share, or approximately $44 billion (the "Merger" or "Buyout"). The present action concerns the same Buyout but seeks monetary damages and declaratory relief on behalf of Twitter's stockholders. Those damages are significant as Twitter's stock price has declined by over 25% (more than $8 billion in market capitalization) due to the wrongful conduct alleged in Plaintiff's complaint.

The Merger has a closing Deadline of October 24, 2022, and the Delaware Action, though filed after this case on July 12, 2022, is set for Trial on October 17, 2022. Discovery in that action has already commenced, with all document production and depositions to be completed by September 12, 2022. Because the imminent discovery in the Delaware Action is directly relevant to this case, Plaintiff asked Defendants to coordinate discovery so that duplicative and potentially inconsistent discovery could be avoided. Defendants refused. Defendants also declined to schedule a Rule 26(f) conference despite Plaintiff's requests. The Rule 26(f) report in this case, originally due August 22, 2022, is currently due September 16, 2022. Waiting until that time to begin discovery will likely result in duplicated efforts as fact discovery will be completed in the Delaware Action by September 12, 2022.

Given the quickly approaching deadlines that impact the Delaware Action, the Merger, and ultimately Plaintiff and the class, there is good cause to expedite and coordinate discovery in this case. If discovery is not coordinated now, many of the same people will have to be deposed twice, or Plaintiff will be forced to brief Defendants' inevitable future arguments that the individuals

---

[1] "Delaware Action" refers to *Twitter, Inc. v. Musk, et al.*, C.A. No. 2022-0613-KSJM, filed in Delaware Chancery Court.

should not have to be deposed twice, or that Plaintiff should be relegated to a copy of the transcript from the earlier depositions, or should not be able to ask similar questions, etc.  It is far easier and more efficient for the parties to simply coordinate discovery now.

The urgency for such discovery is self-evident given the nature of Plaintiff's claims, including Plaintiff's anticipated motions for declaratory and injunctive relief relating to the Merger. Additionally, producing the documents from the Delaware Action involves few burdens, as the documents are likely already gathered, reviewed, and presumably available in digital form (or will be in short order).  Conversely, failing to coordinate discovery will create unnecessary duplication and will potentially prevent Plaintiff from seeking declaratory and injunctive relief before the Merger closes.

Accordingly, Plaintiff respectfully requests that the Court order the Defendants to coordinate discovery in the Delaware Action with Plaintiff in this case, and to promptly participate in a Rule 26(f) conference.

## II. FACTUAL BACKGROUND

On April 4, 2022, Musk publicly disclosed his ownership of approximately 9.2% of Twitter's common stock.  However, Musk's disclosure was 11 days late.  Musk became a 5% stockholder on March 14, 2022, according to the SEC filings, but failed to file his Form 13G until April 4, 2022.  FAC[2] ¶63.  Musk's Schedule 13G also failed to disclose his intent to join the Twitter Board or that he was contemplating buying Twitter.  FAC ¶62.  Both disclosures would have caused Twitter's stock to increase more than it did when his filing was made.  Musk was later forced to file an amended 13D on April 5, 2022.  Musk benefitted himself by approximately $156 million by failing to timely file the Form 13G.  FAC ¶63.

On April 25, 2022, Elon Musk entered into the Merger agreement to purchase Twitter for $54.20 per share, or $44 billion.  Redenbarger Decl.,[3] Ex. A,[4] at ¶3.  Shortly thereafter, Musk began

---

[2] "FAC" refers to Plaintiff's First Amended Complaint.  Dkt. 7.
[3] "Redenbarger Decl." refers to the Declaration of Tyson Redenbarger filed in support of this Motion.
[4] "Ex. __" refers to the Exhibits attached to the Redenbarger Decl.

denigrating Twitter in contravention of the "anti-disparagement" clause of the merger agreement, stating he needed more information about Twitter's user base and suggesting that Twitter's estimates of "bot" accounts on its platform were inaccurate.  However, Musk was well aware that there were bots on Twitter, having publicly stated before the Merger that he would fix the bot problem once he owned Twitter:

> Elon Musk
> @elonmusk
>
> If our twitter bid succeeds, we will defeat the spam bots or die trying!
>
> 11:53 AM · Apr 21, 2022
>
> Read the full conversation on Twitter
>
> 898.9K    Reply    Share
>
> Read 35K replies

See FAC ¶76.

      Moreover, Musk had specifically waived due diligence, and thus his protestations about needing more information about the bots were bogus.  FAC ¶¶4,14.[5]  Indeed, commentators have widely noted that it was the falling share prices of Twitter and Tesla, Inc. that motivated Musk to back out of the deal, and it is undisputed that Musk had to cancel a $12.5 billion loan collateralized by Tesla stock which was to finance part of the purchase price after Tesla stock plummeted by 37%.  *Id*. at FAC ¶¶5-8, 90-104, 137.

      Musk continued to make disparaging statements about Twitter, and on May 13, 2022, issued a statement indicating "Twitter deal temporarily on hold," a statement Twitter disputed but which nonetheless caused Twitter's stock price to decline.  FAC ¶13.  Then, approximately two months later, on July 8, 2022, Musk notified Twitter that he was "terminating" the Merger.  All told, Musk's wrongful conduct caused Twitter's stock price to decline by more than 25%, or over $8 billion in market capitalization.  Ex. A, at ¶9.  Twitter then sued Musk in the Delaware Court of Chancery on July 12, 2022, alleging breach of contract and seeking specific performance.  *Id*. at

---

[5] Musk negotiated the Buyout over the weekend of April 23-24, 2022, without carrying out any due diligence.  FAC ¶3.

3

Notice of Motion and Motion to Expedite and Coordinate Discovery

¶¶148-155.

On May 25, 2022, six weeks before Twitter filed its case, Plaintiff filed suit here. *See* Dkt. 1. On May 26, 2022, the Court issued an order scheduling the initial case management conference and setting August 8, 2022, as the deadline to meet and confer regarding Rule 26(f) initial disclosures. *See* Dkt. 5. On July 1, 2022, Plaintiff filed his First Amended Complaint. Dkt. 7.

Plaintiff seeks monetary damages in addition to declaratory and injunctive relief and alleges that two specific Twitter directors share the blame for the substantial harm to Twitter and its shareholders. Those two Twitter directors – Egon Durban and Jack Dorsey – were loyal to Musk and catered to his desires. Durban is a principal at Silverlake, which invested $100 million in Musk's SolarCity company. FAC ¶¶37-39. Dorsey is good friends with Musk—in 2020, Musk came to Dorsey's defense after Elliot Management attempted to knock Dorsey out of his position as CEO of Twitter. FAC ¶41.

Plaintiff alleges that Dorsey and Durban, eager to please Musk, failed to engage in adequate due diligence regarding Musk's sources of equity financing. FAC ¶105. Dorsey and Durban also breached their fiduciary duties by failing to engage in a market check, failing to shop the Company to other potential suitors, and providing Musk with a no-shop agreement. FAC ¶107. The Merger Proxy admits that "The Twitter Board determined not to contact other parties" before agreeing to accept Musk's first and only offer. FAC ¶107. A mere ten days elapsed between the time Musk's offer was publicly announced on April 14, 2022, and when the Twitter Board accepted his offer on April 24, 2022. *Id*. At Twitter's recent Annual Meeting on May 25, 2022, Twitter's stockholders voted Durban off the Board, but the Board refused to remove him. FAC ¶¶136-38.

On July 19, 2022, Delaware Chancery Court Judge Kathaleen St. J. McCormick granted Twitter's motion to expedite the proceedings, and set the Delaware Action for trial, starting on October 17, 2022. Ex. C, at 4. Discovery began immediately as Defendants' deadline to serve discovery requests in the Delaware Action was July 29, 2022. *Id*. at 1. In addition to party discovery, Twitter sent dozens of third-party subpoenas, including subpoenas to Musk's "circle of Silicon Valley investors, friends and financial backers" who were familiar with the Merger. *See* Wall Street Journal, "What Twitter's Subpoenas to Elon Musk's Inner Circle Could Yield." Ex. D.

On July 19, Plaintiff's Counsel contacted counsel for Musk and X Holdings I & II and requested that the parties conduct a Rule 26(f) conference. Redenbarger Decl. at ¶6. On July 22, 2022, Plaintiff's Counsel asked counsel for Twitter when they were available to hold a Rule 26(f) conference. *Id*. The Defendants did not provide any dates. *Id*. The parties then held telephone calls with all counsel on July 27, 2022, and August 2, 2022. *Id*. at ¶7. During both calls, Plaintiff's Counsel requested that discovery proceed and be coordinated with the Delaware Action. *Id*. Plaintiff also requested during both calls that the parties conduct a Rule 26(f) conference. *Id*. Defendants again refused to schedule the conference. *Id*. Additionally, Plaintiff explained that his claims needed to be resolved timely and that a motion for declaratory relief would need to be filed promptly. Plaintiff again reiterated why coordination of discovery with the Delaware Action would save the parties time and effort. *Id*. On August 3, 2022, Plaintiff's counsel emailed Defense counsel once again requesting that discovery proceed and be coordinated with the Delaware Action and that the parties conduct a Rule 26(f) conference promptly. *Id*. at ¶8, Ex. E. On August 5, 2022, Defendants declined the offer to coordinate discovery and declined to schedule a Rule 26(f) conference. *Id*. at ¶9. On August 11, 2022, counsel spoke again to discuss the relief sought in this Motion and discussed a potential expedited briefing schedule in an attempt to stipulate to such a briefing schedule, though no agreements were reached. *Id*. at ¶10. These meet and confer discussions were conducted to "resolve a disclosure or discovery dispute pursuant to Fed. R. Civ. P. 37." *See* N.D. Cal. Local Rule 37-1. However, as explained herein, those discussions did not resolve the dispute. *Id*. at ¶11.

In the meantime, on July 28, 2022, Chancery Court Judge Kathaleen St. J. McCormick, entered an order establishing the expedited schedule in the Delaware Action, which included the following relevant deadlines: by August 4, 2022, each side shall produce readily available information; by August 29, 2022, the parties shall substantially complete document production; and by September 12, 2022, parties must complete fact discovery, including depositions. *See* Ex. C.

On September 13, 2022, Twitter will hold a special meeting for shareholders to vote on the Merger, but shareholders have already been encouraged to start casting their votes. S*ee* Ex. B. The Merger is scheduled to close on October 24, 2022. Ex A at ¶53.

## III. ARGUMENT

### A. Expedited and Coordinated Discovery is Warranted in this Case

District Courts are empowered to order expedited discovery prior to the Rule 26(f) discovery planning conference. Fed. R. Civ. P. 26(d)(1). Courts in the Ninth Circuit generally use the "good cause" standard to determine whether to permit discovery prior to a Rule 26(f) conference. *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276. In determining whether good cause justifies expedited discovery, courts commonly consider factors including: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *American LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1067 (C.D. Cal. 2009); *see also Apple Inc. v. Samsung Electronics Co., Ltd.*, 768 F.Supp.2d 1040, 1044 (N.D. Cal. 2011).

#### 1. Good Cause Exists to Compel Defendants to Produce the Discovery from the Delaware Action in an Expedited Manner

The expedition of this case is essential so that Twitter shareholders can obtain discovery in aid of their anticipated motions for declaratory and injunctive relief. The discovery will also be relevant to Plaintiff's claim for monetary damages after the resolution of the motion for declaratory/injunctive relief. Twitter's stockholders face continuing market risk and operational harm from Musk's public denigration of Twitter and wrongful attempt to back out of the Buyout, which has a closing date of October 24, 2022. Immediate discovery on these issues is warranted as the Merger deadlines directly impact Plaintiff's claims, *i.e.*, if Plaintiff moves for injunctive or declaratory relief after the Merger has closed, those claims could be moot. *See Payment Logistics Ltd. v. Lighthouse Network, LLC*, No. 18-CV-0786-L-AGS, 2018 WL 3869956, at *3 (S.D. Cal. Aug. 14, 2018) (permitting expedited discovery in relation to a merger, noting "due diligence inquiries are vital to merger and acquisition transactions, and it can be presumed that some information gathered for this purpose is responsive and readily available."); *United States v. BNS*

*Inc.*, 858 F.2d 456, 461-66 (9th Cir. 1988) (The public interest "could be harmed irreparably by permitting a merger to become a *fait accompli* ... [because] the unwinding of a completed merger would present mammoth obstacles."); *Fed. Trade Comm'n v. Staples, Inc.*, 970 F. Supp. 1066, 1091 (D.C. Cir. 1997) ("'Unscrambling the eggs' after the fact is not a realistic option in [some] case[s].")

Good cause is also present as Plaintiff's requested discovery is not overly broad, nor is there any burden on the Defendants. *See* Ex. G.  Plaintiff presently seeks coordination with the discovery already being conducted in the Delaware Action, which (presumably) can easily take place, as the documents are likely already being collected, reviewed, and will be produced shortly.  Regarding depositions, "it is best to coordinate discovery plans to avoid conflicts and duplication.  If the cases are pending before different judges, the judges should attempt to coordinate the depositions of common witnesses and other common discovery.  Examination regarding subjects of interest only to a particular case may be deferred until the conclusion of direct and cross-examination on matters of common interest."  MANUAL FOR COMPLEX LITIG. (4th) §11.455, at p. 89.  Plaintiff has requested that he be permitted to participate in order to avoid the need to take the same deposition twice, including depositions of third parties.  Accordingly, the benefits of coordinating discovery in these cases are clear and the burdens are low.

Courts commonly require the early production of documents already exchanged in parallel matters because the burdens associated are so low. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 1938154, at *2-3 (N.D. Cal. May 18, 2011) (ordering production of expedited discovery two-and-a-half months before discovery would ordinarily begin, including the production of discovery that had already disseminated); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1113 (N.D. Cal. 2012) (court ordered early production of responsive, non-privileged documents already produced to the Department of Justice); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR, 2013 WL 2237887, at *1 (N.D. Cal. May 21, 2013) (court ordered production of documents that had already been produced to the Department of Justice or any Grand Jury before the plaintiffs' deadline to file the consolidated complaint); *see also* MANUAL FOR COMPLEX LITIG. (4th) (Excerpt), Multidistrict Lit Man Appendix E (coordinating discovery is

common and serves to "minimize duplicative discovery activity".)

Finally, without an expedited schedule, the necessary discovery on a typical schedule would occur too late.  Presently, Defendants are taking the position that the Rule 26(f) conference should be held on or before September 9, but have refused to schedule a date.  Redenbarger Decl. at ¶9.  If the parties wait until September 9, 2022, to commence discovery, there is simply not enough time to serve document requests, conduct depositions, and file motions (including a motion for summary judgment on the declaratory relief cause of action) in the few weeks left before the Merger is scheduled to close in October.  Such a delay is prejudicial to Plaintiff.

### 2. Expedited Discovery is Appropriate As Plaintiff Anticipates Filing a Motion for Injunction or Declaratory Relief

"[C]ourts have found that expedited discovery may be justified to allow a plaintiff to determine whether to seek an early injunction."  *Apple Inc. v. Samsung Elecs. Co.*, *supra*, 2011 WL 1938154, at *2;  *see also Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C 09-05812 JW (PVT), 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010) ("[e]xpedited discovery will allow plaintiff to determine whether to seek an early injunction.")  In matters concerning mergers, "a plaintiff's fate often rests on the outcome of a motion for preliminary injunction."  *See Payment Logistics, supra*, 2018 WL 3869956 at *3;  *Fed. Trade Comm'n*, *supra*, 970 F. Supp. at 1091.

Moreover, Delaware courts routinely find that expedition is appropriate in cases involving mergers and an anticipated motion for injunctive relief.  *See Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*, No. CIV.A. 4066-VCN, 2008 WL 4824053, at *8 (Del. Ch. Oct. 28, 2008) (expedited discovery granted in merger case involving anticipated preliminary injunction);  *In re H.F. Ahmanson & Co. v. Great W. Fin. Corp.*, No. CIV. A. 15650, 1997 WL 225696 (Del. Ch. Apr. 25, 1997) (expedited discovery permitted to explore scope of injunctive relief);  *Raymond Revocable Tr. v. MAT Five LLC*, No. CIV.A. 3843-VCL, 2008 WL 2673341 (Del. Ch. June 26, 2008) (expedited discovery granted for preliminary injunction.)

Here, imminent and critical events justify expedited discovery – shareholders are already voting on the Merger, and on October 24, 2022, the deal is scheduled to close.  Expedited discovery is necessary to support Plaintiff's anticipated motion for preliminary injunction or motion for

summary judgment on his declaratory relief cause of action before the Merger closes. These motions are important to Twitter's shareholders since the Delaware Action does not assert any claims on behalf of Twitter's shareholders (instead only seeking specific performance) and because the Delaware Action may not achieve the relief sought, or it may result in a negotiated resolution that creates substantial damages to Twitter's shareholders. If so, shareholders will have suffered damages but will not be able to pursue them in Delaware, where they are not parties. Declaratory relief in this case, which must be filed as a motion for summary judgment supported by <u>evidence</u>,[6] would serve to define shareholders' legal rights, including whether Musk improperly terminated the Merger, whether Musk aided, and abetted breaches committed by Twitter's directors, and whether shareholders are entitled to damages. Such a determination will aid the parties regardless of the ultimate outcome of the Delaware Action.

      **B.**    **<u>Defendants Should be Ordered to Promptly Confer on Discovery and to Submit a Discovery Plan</u>**

By its plain meaning, Rule 26(f) requires the parties to start formal discovery planning "as soon as practicable" and "in any event at least 21 days before a scheduling conference is to be held" pursuant to Rule 16. *See* Fed. R. Civ. P. 26(f)(1). Absent Court order or agreement of the parties, discovery cannot commence until the parties first hold a formal Rule 26(f) discovery planning conference. *See* Fed. R. Civ. P. 26(d). When this case was first filed, the scheduling conference was set for August 29, 2022, and the parties had a deadline of August 8, 2022, to discuss a discovery plan and August 22, 2022 to submit a Rule 26(f) report. Dkt 5. The Defendants' filing of a declination form delayed those dates. *See* Dkt. 21.

Here, the Defendants' continued refusal to confer functions as a discovery stay during a critical period in this case. Like the Delaware Action, this case should be operating on an expedited basis. Shareholders are already voting on the Merger and the Merger is set to close in October – waiting to commence discovery until September 9, 2022, is not practical. Moreover, as explained

---

[6] *See Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.,* 560 F.3d 935, 943 (9th Cir. 2009).

9
Notice of Motion and Motion to Expedite and Coordinate Discovery

above, proceeding with discovery in this case is not burdensome, as Defendants are already conducting similar discovery in the Delaware Action. Accordingly, Plaintiffs respectfully request an expedited Order compelling Defendant to participate in a Rule 26(f) discovery planning conference on or before August 30, 2022, and setting September 2, 2022, as the deadline to submit a Joint Discovery Plan.

### C. Alternatively, If the Court Does Not Order Coordination, Defendants Should be Ordered to Produce to Plaintiff all Documents and Deposition Transcripts from the Delaware Action

Alternatively, if the Court does not order expedition or coordination at this point, Plaintiff requests that Defendants be ordered to provide Plaintiff with all documents and deposition transcripts from the Delaware Action. Given the overlapping factual issues in the cases, the production of such discovery will help avoid duplication and expedite the discovery process. *See* MANUAL FOR COMPLEX LITIG. (4th) §11.455, at p. 89 (noting that "It may also be economical for the judges to afford parties in the present litigation access to depositions previously taken in other litigation (*see* section 11.423)—the judges can deem depositions of opposing parties and their employees admissible against parties involved in related litigation under Federal Rule of Evidence 801(d)(2). Depositions of other witnesses may be usable for impeachment under Federal Rule of Evidence 801(d)(1)(A). In other situations, such as those involving nonparties or a party's own witnesses, a new deposition may be necessary, but (with advance notice) the answers given at the earlier deposition may be adopted as the current testimony of the witness, subject to supplementation.").

## IV.  CONCLUSION

Plaintiff respectfully requests an order compelling Defendants to coordinate the discovery taking place in the related Delaware Action. Alternatively, or at a minimum (and in light of the fact that depositions are scheduled to conclude by September 12, 2022, in the Delaware Action), Plaintiff requests that the Court order Defendants to promptly produce to Plaintiff all documents and deposition transcripts from the Delaware Action. Plaintiff further requests the Court order Defendants to participate in a Rule 26(f) discovery planning conference on or before August 30,

2022, and set September 2, 2022, as the deadline to submit a Joint Discovery Plan.

Dated: August 12, 2022

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**

*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Anne Marie Murphy (SBN 202540)
Tyson C. Redenbarger (SBN 294424)
Julia Q. Peng (SBN 318396)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:   (650) 697-6000

**BOTTINI & BOTTINI, INC.**

*/s/ Francis A. Bottini*
Francis A. Bottini, Jr.

Francis A. Bottini, Jr. (SBN 175783)
Anne B. Beste (SBN 326881)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)
Nicholas H. Woltering (SBN 337193)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiff*