Daniel H.R. Laguardia (SBN 314654)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 616-1100
Fax: (415) 616-1199
Email: daniel.laguardia@shearman.com

Adam S. Hakki (admitted *pro hac vice*)
Paula H. Anderson (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Fax: (212) 848-7179
Email: adam.hakki@shearman.com
       paula.anderson@shearman.com

*Attorneys for Defendant Twitter, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM HERESNIAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELON R. MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., and TWITTER, INC.,<br><br>Defendants. | Case No. 3:22-cv-03074<br><br>**DEFENDANT TWITTER, INC.'S OPPOSITION TO MOTION TO EXPEDITE AND COORDINATE DISCOVERY** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................ 1

BACKGROUND .................................................................................................................................. 3

    I.      The Merger Agreement. ................................................................................................. 3

    II.     Twitter has brought an expedited action in the Delaware Court of Chancery seeking to enforce the terms of the Merger Agreement. ........................................... 4

    III.    Plaintiff brought this action to enforce the terms of the Merger Agreement. .......... 4

    IV.    Another Twitter shareholder has brought a putative class action in the Delaware Court of Chancery seeking to enforce the terms of the Merger Agreement. ..................................................................................................................... 5

    V.     Plaintiff requests expedited and coordinated discovery allowing him to participate in the Delaware action that Twitter has brought against Musk ............. 5

ARGUMENT ........................................................................................................................................ 5

    I.      Plaintiff is not entitled to expedited or coordinated discovery as a matter of right. ..................................................................................................................................... 5

         A.  Plaintiff must show "good cause" for expedited discovery. .................................. 5

         B.  Plaintiff has no right to coordinated discovery. ...................................................... 5

    II.     The Motion should be denied because Plaintiff lacks standing. ............................. 6

    III.    The Motion should be denied because Plaintiff filed suit in the wrong forum. ................................................................................................................................ 7

    IV.    The Motion should be denied because Plaintiff cannot establish "good cause." ............................................................................................................................... 8

    V.     Expedited and coordinated discovery would be inefficient and unnecessary. ......... 9

CONCLUSION .................................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**           **Page(s)**

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
   935 F.3d 858 (9th Cir. 2019) .................................................................................. 6

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   2011 WL 1938154 (N.D. Cal. May 18, 2011) ........................................................ 9

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
   571 U.S. 49 (2013) .................................................................................................. 8

*Boxer v. Accuray Inc.*,
   906 F. Supp. 2d 1012 (N.D. Cal. 2012) .............................................................. 2, 6

*EHang Inc. v. Wang*,
   2021 WL 3934325 (N.D. Cal. Aug. 20, 2021) ................................................. 1, 10

*Facebook, Inc. v. Various, Inc.*,
   2011 WL 2437433 (N.D. Cal. June 17, 2011) ..................................................... 5, 9

*Hadley v. Shaffer*,
   2003 WL 21960406 (D. Del. Aug. 12, 2003) ........................................................ 8

*In re High-Tech Emp. Antitrust Litig.*,
   856 F. Supp. 2d 1103 (N.D. Cal. 2012) .................................................................. 9

*Huang v. Futurewei Techs., Inc.*,
   2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) .................................................... 2, 8

*Huene v. U.S. Dep't of Treas.*,
   2013 WL 417747 (E.D. Cal. Jan. 31, 2013) ........................................................... 8

*Interserve, Inc. v. Fusion Garage PTE, Ltd.*,
   2010 WL 143665 (N.D. Cal. Jan. 7, 2010) ............................................................. 9

*In re Lithium Ion Batteries Antitrust Litig.*,
   2013 WL 2237887 (N.D. Cal. May 21, 2013) ........................................................ 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) .................................................................................. 7

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
   922 A.2d 417 (Del. Ch. 2007) ................................................................................ 6

*NovelPoster v Javitch Canfield Grp.*,
   2014 WL 5687344 (N.D. Cal. Nov. 4, 2014) ......................................................... 6

*Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*,
   213 F.R.D. 418 (D. Colo. 2003) ............................................................................. 9

*Roe v. Gray*,
   165 F. Supp. 2d 1164 (D. Colo. 2001) ................................................................... 8

*Sladek v. City of Colo. Springs*,
    2013 WL 5526582 (D. Colo. Oct. 7, 2013) .................................................................................. 6

*Soto v. Castlerock Farm. & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012) .................................................................................................. 6

*TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc.*,
    915 F. 2d 1351 (9th Cir. 1990) ..................................................................................................... 8

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ........................................................................................................... 7

*Walters v. Famous Transp., Inc.*,
    488 F. Supp. 3d 930 (N.D. Cal. 2020) ......................................................................................... 8

**Other Authorities**

Coordinating Multijurisdiction Litigation: A Pocket Guide for Judges, Fed. Judicial
    Ctr., Nat'l Ctr. for State Courts, (2013) ..................................................................................... 6

Del. Ch. Ct. R. 24 ................................................................................................................................ 2

# INTRODUCTION

Plaintiff's Motion to Expedite and Coordinate Discovery (the "Motion") should be denied. In the Delaware Court of Chancery, Defendant Twitter, Inc. ("Twitter") is vigorously pursuing a judgment against Musk and his merger affiliates X Holdings I, Inc. and X Holdings II, Inc. (collectively, the "Musk Defendants") that would require them to perform their obligations under the Merger Agreement with Twitter, including their obligation to close the acquisition at the agreed upon price of $54.20 per share. That case is hurtling through expedited discovery and will be tried in less than 60 days – on October 17, 2022. Unwilling to stand back – even briefly – while Twitter pursues enforcement of the Merger Agreement for the benefit of all stockholders, Plaintiff (a purported Twitter stockholder from Virginia) filed a wholly unnecessary claim in this Court demanding substantially the same declaratory and injunctive relief that Twitter is now pursuing in Delaware. Plaintiff also elected to sue *Twitter*, rather than just the Musk Defendants, presumably in hopes of better explaining why he sued here rather than in Delaware or his home jurisdiction.

Plaintiff offers no plausible reason why this Court should take the extraordinary step of effectively intervening in the Delaware action to *order* that he be permitted to participate in the critical and expedited discovery transpiring there. There are, in fact, overwhelming grounds to deny that relief. *First*, Plaintiff does not have standing to enforce Twitter's rights under the Merger Agreement. *Second*, the Merger Agreement makes Delaware the exclusive jurisdiction for any claim arising from the agreement. Given the absence of standing and any right to proceed with his injunctive relief/declaratory judgment claim (the only claim against Twitter) in this Court, there is no basis to grant Plaintiff *any* discovery at this time, let alone expedited discovery under an extraordinary cross-jurisdictional coordination order. *Third*, even if Plaintiff had standing and were in the right court, he has not established good cause for the extraordinary relief he seeks. The Motion does not plausibly explain why expediting discovery would be superior to awaiting the outcome of the highly expedited litigation in Delaware. That litigation is virtually certain to render Plaintiff's claim for injunctive/declaratory relief moot. To the extent Plaintiff seeks money damages, the only distinction he draws with the Delaware action, such claims are no basis for injunctive relief or expedited proceedings. *See EHang Inc. v. Wang*, 2021 WL 3934325 (N.D. Cal. Aug. 20, 2021).

Virtually all of Plaintiff's purported efficiency arguments focus on the burden on *Defendants* that would supposedly result if his discovery here is not expedited and coordinated with the Delaware action. But that is Defendants' argument to make, not his, and the most efficient course from Twitter's perspective is to resolve the threshold issues with Plaintiff's claim on motion to dismiss, as well as questions of the appropriate forum, before Plaintiff receives discovery. Where, as here, there is significant doubt as to whether a plaintiff has standing, that issue should be resolved before discovery. *E.g.*, *Boxer v. Accuray Inc.*, 906 F. Supp. 2d 1012, 1015 n. 1 (N.D. Cal. 2012) (denying motion for expedited discovery as moot because "the Court must determine, as a threshold matter, whether it has subject matter jurisdiction"). Similarly, where, as here, there is significant doubt as to whether Plaintiff can pursue his claim in this forum, that issue, too, should be decided before discovery. *E.g.*, *Huang v. Futurewei Techs., Inc.*, 2018 WL 1993503, at *4 (N.D. Cal. Apr. 27, 2018) (staying discovery prior to decision on motion to transfer where forum selection provision identified a different forum). Moreover, this approach is especially logical and efficient here because the outcome of the Delaware trial, commencing on October 17, is more than likely to render Plaintiff's claim for injunctive/declaratory relief (the only claim he suggests needs expedited discovery and the only claim asserted against Twitter) moot. Plaintiff's purported efficiency arguments also misapprehend the demanding schedule necessary to stay on pace for the current October 17 trial date. If expedition is ordered here, and the parties must accommodate Plaintiff's intervention in the Delaware proceedings from this forum, it will introduce unnecessary distraction and logistical challenges in a critical case that is being prepared for trial in a very short period. This is yet another reason to deny the Motion and the extraordinary relief it seeks.

If Plaintiff believes that his involvement in discovery in the Delaware action is important, nothing stops him from seeking to intervene or to otherwise file his complaint in Delaware. *See* Del. Ch. Ct. R. 24. Indeed, another purported Twitter stockholder asserting a substantially identical injunction/declaration claim against the Musk Defendants recently filed suit in the Delaware Court of Chancery.[1] That case has been assigned to the same judge (Chancellor Kathaleen St. J. McCormick) overseeing Twitter's case, and the same would have been done with Plaintiff's claim

---

[1] *Crispo v. Musk et al.*, C.A. No. 2022-0666-KSJM (Del. Ch. filed July 29, 2022).

had he filed it there. There are no federal claims in this action, and Plaintiff is not even a California resident, suggesting his decision to sue in this Court was made for reasons unrelated to a desire to have his claims quickly and efficiently coordinated with the Delaware proceeding. Indeed, when Plaintiff commenced this action on May 25, he did not even bother to serve his complaint. It was only *after* Twitter announced that it would take legal action against the Musk Defendants that Plaintiff commenced steps to serve his Amended Complaint here. Anderson Decl. ¶ 2. This record further undermines Plaintiff's current insistence on a coordination and expedition order.

Finally, Twitter requires no additional Court order to comply with its obligation to conduct a Rule 26(f) conference. Mot. at 1. As Plaintiff concedes, under the current schedule, the parties' Joint Case Management Statement is not due until September 16 and the Rule 26(f) conference does not need to occur until September 9. Twitter will, of course, fully comply with that schedule.

The Motion should be denied.

## BACKGROUND

### I.   The Merger Agreement.

On April 25, Twitter and the Musk Defendants entered into an Agreement and Plan of Merger (the "Merger Agreement"). Anderson Decl., Ex. 1. The Merger Agreement includes conditions that must be satisfied prior to closing. For example, the deal must be approved by a shareholder vote, which is currently scheduled for September 13. *Id.* § 4.20. Assuming all conditions of the deal are met, Musk must close on the transaction no later than the second business day after the satisfaction of all conditions. *Id.* § 2.2. At closing, outstanding Twitter shares will convert to a right to payment of the corresponding portion of the merger consideration. *Id.* §§ 2.3, 3.1(c). The Merger Agreement contains three other provisions of relevance here:

- *First*, there is a "No Third Parties Beneficiaries" provision: "[T]his Agreement is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder." *Id.* § 9.7.

- *Second*, there is a forum selection provision: "Each of the parties … agree that it will not bring any action relating to this Agreement ... in any court other than the Delaware Court of Chancery, any other court of the State of Delaware or any federal court sitting in the State of Delaware." *Id.* § 9.10(a)(iii).

- *Third*, there is a "Governing Law Provision": "This Agreement and all actions ... relating to this Agreement ... shall be governed by … the laws of … Delaware." *Id.* § 9.8.

**II.     Twitter has brought an expedited action in the Delaware Court of Chancery seeking to enforce the terms of the Merger Agreement.**

On July 8, Musk purported to terminate the Merger Agreement, alleging that Twitter was in breach. *See* Ex. 2. The same day, Twitter's chairman announced that Twitter would pursue legal action in Delaware to enforce the Merger Agreement. *See* Ex. 3. Shortly thereafter, on July 12, Twitter filed suit in the Delaware Court of Chancery, seeking an order that requires the Musk Defendants "to specifically perform their obligations under the merger agreement and consummate the closing in accordance with the terms of the merger agreement" and "granting such injunctive relief as is necessary to enforce the decree of specific performance." Dkt. 26-1, Ex. A at 61. On July 19, the court granted Twitter's motion for expedition and subsequently entered a condensed schedule, culminating in an October 17 trial date. *See id.*, Ex. C. To meet the demands of that schedule, including a September 12 fact discovery deadline, the parties are engaged in fast-paced and voluminous discovery.

**III.    Plaintiff brought this action to enforce the terms of the Merger Agreement.**

Plaintiff, a purported Twitter shareholder residing in Virginia, filed the original Complaint in this case on May 25, after Musk publicly stated that the deal was "temporarily on hold," and filed an Amended Complaint on July 1. *See* Dkt. 1; Dkt. 7 ("Am. Compl."). But Plaintiff sat on the lawsuit and did not take any action to serve the Musk Defendants or Twitter until July 11. *See* Dkt. 16. By that time, Twitter had announced that it was pursuing its own action in Delaware.

The Amended Complaint asserts three claims, but only one naming Twitter as a defendant and relevant to Plaintiff's Motion. *See* Am. Compl. ¶¶ 155-69. That claim alleges "[t]he conditions that Musk has stated must be met before the Buyout can go forward do not appear to be part of the contract he signed with Twitter" and requests "a declaration concerning these facts and issues and the parties' respective rights and obligations" and "appropriate injunctive relief." *Id.* ¶ 165. This is essentially identical to the relief sought by Twitter in Delaware. The other claims seek money damages against Musk for conduct relating to the Merger Agreement. *See id.* ¶¶ 155-69. While much of the Motion is dedicated to Musk's conduct and the claims for damages brought against him, Plaintiff does not even attempt to argue that expedited and coordinated discovery is warranted in connection with those claims.

IV. **Another Twitter shareholder has brought a putative class action in the Delaware Court of Chancery seeking to enforce the terms of the Merger Agreement.**

On July 29, another Twitter shareholder filed a putative class action complaint in the Delaware Court of Chancery seeking the same relief against the Musk Defendants as Plaintiff and Twitter – "an order of specific performance, requiring Defendants to comply with the Merger Agreement and effectuate the Merger." Anderson Decl., Ex. 4 at 33. The case is assigned to the same judge overseeing the Delaware action between Twitter and Musk – Chancellor McCormick. The plaintiff there has moved for coordinated discovery and asked for a schedule that mirrors the schedule in the action between Twitter and Musk. *See id.*, Exs. 5 and 6. The Musk Defendants have moved to dismiss the shareholder's claim on standing grounds. *See id.*, Ex. 7.

V. **Plaintiff requests expedited and coordinated discovery allowing him to participate in the Delaware action that Twitter has brought against Musk**

Plaintiff asks that discovery be expedited and that the Court force Defendants to allow him to participate in ongoing discovery in the Delaware action. When Plaintiff sought Defendants' position on the Motion, Defendants asked Plaintiff to identify the prejudice cured by that request and that he explain the basis for his standing and for filing in a California forum. *See id.*, Ex. 8. His counsel asserted that "Plaintiff needs and is entitled to coordinated/expedited discovery in order to support Plaintiff's anticipated motion for declaratory and injunctive relief" and then cited potential efficiencies for Defendants, but did not respond to the questions about standing or forum. *Id.*

## ARGUMENT

I. **Plaintiff is not entitled to expedited or coordinated discovery as a matter of right.**

A. **Plaintiff must show "good cause" for expedited discovery.**

Plaintiff is not entitled to expedited discovery as a matter of right. He must show "good cause." *Facebook, Inc. v. Various, Inc.*, 2011 WL 2437433, at *2 (N.D. Cal. June 17, 2011). In assessing "good cause," courts review "the entirety of the record" and examine "the reasonableness of the request in light of all the surrounding circumstances." *Id.* (citation omitted).

B. **Plaintiff has no right to coordinated discovery.**

Plaintiff is not entitled to "coordinated" discovery under any rule or statute. If he desires to participate in discovery for the Delaware action, the proper course would be to try to intervene in

that action or file suit in Delaware and move to consolidate the proceedings under Delaware rules. While courts handling related cases in different jurisdictions do sometimes coordinate schedules and discovery, it should involve the consent and cooperation of the parties and presiding judges and serve a useful purpose. *See generally* Coordinating Multijurisdiction Litigation: A Pocket Guide for Judges, Fed. Judicial Ctr., Nat'l Ctr. for State Courts (2013). Twitter opposes a coordination order and does not believe it is practical or useful given the threshold jurisdictional issues that should be resolved first, the schedule of the Delaware action, and the pendency of the separate shareholder action in Delaware seeking the same relief. Coordinated discovery in a case like this appears to be unprecedented. Plaintiff cites no authority to the contrary.

## II.   The Motion should be denied because Plaintiff lacks standing.

Before considering the Motion, "the Court must determine, as a threshold matter, whether it has subject matter jurisdiction." *Boxer*, 906 F. Supp. 2d at 1015 n. 1 (denying expedited discovery). Even without a motion, "courts have an 'independent obligation' to police their own subject matter jurisdiction, including the parties' standing" that "mimics the standard on a motion to dismiss." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 935 F.3d 858, 866 (9th Cir. 2019). A party's inability to enforce the terms of a contract as a non-party raises a standing issue that defeats jurisdiction. *NovelPoster v Javitch Canfield Grp.*, 2014 WL 5687344, *4 (N.D. Cal. Nov. 4, 2014) (dismissing claims for lack of subject matter jurisdiction because a nonparty did not have standing to bring contract claims). Courts routinely deny discovery—expedited or otherwise—where the party seeking discovery does not have standing. *See, e.g.*, *Soto v. Castlerock Farm. & Transp., Inc.*, 282 F.R.D. 492, 503 (E.D. Cal. 2012) (denying discovery because plaintiff lacked standing); *Sladek v. City of Colo. Springs*, 2013 WL 5526582, at *2 (D. Colo. Oct. 7, 2013) ("Standing is a threshold requirement" and "stay of discovery is … appropriate until the standing issue is resolved.").

Plaintiff lacks standing to pursue claims under the Merger Agreement. Under applicable Delaware law, "only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions." *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007). Plaintiff is not a party to the Merger Agreement. Nor is Plaintiff a third-party beneficiary. Plaintiff has not alleged that he is a third-party beneficiary, and the "No Third Party

Beneficiaries" provision states that the Merger Agreement "is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies."[2] Ex. 1 § 9.7.

In limited circumstances, a shareholder may enforce a right to payment due to them under a merger agreement, but a shareholder has no standing to enforce such a right until all conditions to closing are satisfied and their shares actually convert to a right to payment. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (shareholders' contractual right to payment did not ripen until all conditions to closing were satisfied and "their tendered shares were accepted for payment."). Here, the parties are not at that stage. For example, a shareholder vote has not yet been held on the merger, and Plaintiff's shares have not yet converted to a right to payment under the process laid out in the Merger Agreement. *See* Ex. 1 §§ 2.3, 3.1(c) (Twitter shares "shall be converted into the right to receive $54.20 per share" at the time "the Certificate of Merger has been duly filed" or "such other date and time as may be agreed" by the parties and "as set forth in the Certificate of Merger.").

This outcome makes sense. Twitter has nearly 800 million shares of outstanding common stock held by thousands of stockholders. If they all had standing to enforce the Merger Agreement before closing, any one of them could hijack Twitter's control over the agreement to pursue a preferred outcome, take positions opposite to Twitter, and seek inconsistent relief, even though shareholders have no rights under the agreement other than a right to payment upon closing.

### III.   The Motion should be denied because Plaintiff filed suit in the wrong forum.

The Court should also deny the Motion because the suit does not belong here. The Merger Agreement's forum selection provision requires all actions relating to the Merger Agreement be brought in Delaware state or federal court. Plaintiff is bound by the forum selection provision as a non-signatory because his claim to enforce the Merger Agreement is "so closely related to the contractual relationship that the forum selection clause applies[.]" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988). Likewise, Plaintiff would be bound by the forum

---

[2] There is a limited exception to the "No Third Party Beneficiaries" provision that states: "[T]he Company Related Parties (with respect to Section 8.3) are third-party beneficiaries." The term "Company Related Parties" includes Twitter shareholders. Under Section 8.3(c), the Musk Defendants cannot seek damages from Company Related Parties in the event Twitter breaches the Merger Agreement. Section 8.3 does not extend any other right to Company Related Parties.

selection provision if he claims third-party beneficiary status because a forum selection clause "restrict[s] a third-party beneficiary to the designated forum." *TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc.*, 915 F. 2d 1351, 1354 (9th Cir. 1990); *accord Hadley v. Shaffer*, 2003 WL 21960406, at *6 (D. Del. Aug. 12, 2003) (Delaware law does not allow a third-party beneficiary to "avoid[] the burdens or limitations of … a forum selection clause."). Finally, Plaintiff is bound under a direct benefits estoppel theory because he "seeks to enforce terms of the contract [and] asserts claims that must be determined by reference to that contract." *Walters v. Famous Transp., Inc.*, 488 F. Supp. 3d 930, 936 (N.D. Cal. 2020). Plaintiff cannot avoid the forum provision while attempting to enforce other parts of the Merger Agreement.

Whatever the applicable theory, Twitter expects to seek transfer of this action by motion in the alternative to dismissal. The Court would be obliged to grant the motion "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 52 (2013). Accordingly, any request for expedited discovery should be decided and managed by the court to which the case will be transferred. *See Roe v. Gray*, 165 F. Supp. 2d 1164, 1177 (D. Colo. 2001) (finding expedited discovery should be addressed by the court assigned the case after transfer). Courts routinely deny discovery—expedited or otherwise—where forum selection clauses require that the suit have been brought in another forum. *See Huang*, 2018 WL 1993503, at *4 (staying discovery pending motion to transfer); *Huene v. U.S. Dep't of Treas.*, 2013 WL 417747, *7 (E.D. Cal. Jan. 31, 2013) ("situations warranting a stay of discovery are those with preliminary issues of jurisdiction [and] venue").

Plaintiff did not file this case in the appropriate forum or transfer it after being confronted with the forum selection provision in the Merger Agreement. Having failed to do so, Plaintiff cannot seek expedited and coordinated discovery, particularly where the discovery sought is from the very forum that Plaintiff sought to circumvent. Nor can Plaintiff be heard to complain of any ensuing delay, as any such delay will have been caused by his own doing.

**IV.    The Motion should be denied because Plaintiff cannot establish "good cause."**

Plaintiff cannot show "good cause" to justify expedition or coordination of discovery. "While courts often find good cause when confronted with a pending motion for preliminary

injunction, they usually do not when presented with a party's mere inclination to file such a motion." *Facebook*, 2011 WL 2437433, at *3 (internal citation omitted); s*ee also Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 420 (D. Colo. 2003) (denying expedited discovery where there was no pending motion for preliminary injunctive relief). That is precisely the case here. Plaintiff references an "anticipated motions for declaratory and injunctive relief," Mot. at 2, as justification for expedited discovery, but has not actually moved for such relief or described in any detail what the anticipated motion entails, when he will file it, or how the requested relief will differ from the relief Twitter seeks in Delaware.[3] The Motion also does not identify any prejudice to Plaintiff absent expedition and coordination. Plaintiff claims that "failing to coordinate discovery … will potentially prevent Plaintiff from seeking declaratory and injunctive relief before the Merger closes." Mot. at 2. But if the merger closes, Plaintiff will have received in full the relief covered by his claim.

Plaintiff's own conduct also evidences that there is not "good cause" to expedite discovery. Plaintiff filed this suit nearly three months ago, waited over six weeks (and until Twitter announced that it would be pursuing its own action) to serve Defendants, then waited several more weeks before demanding expedited discovery.[4]

### V. Expedited and coordinated discovery would be inefficient and unnecessary.

Plaintiff asserts that coordinated discovery would be more "efficient." The opposite is true. Fact discovery in the Delaware action closes September 12. Most discovery will have already occurred by the time the Motion is decided, and the proceedings already involve incredibly complex logistics and coordination. To add Plaintiff, his counsel, and another court to the mix will cause

---

[3] The two cases cited in the Motion relating to anticipated motions for injunctive relief are inapposite. In each, the plaintiff sought expedited discovery to address imminent and irreparable harm, independent of preliminary injunctive relief. *See Apple Inc. v. Samsung Elecs. Co., Ltd*., 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011); *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010). Plaintiff here cannot show irreparable harm. Plaintiff also asserts that courts commonly require "early production of documents already exchanged in parallel matters because the associated burdens are so low," but none of the cases Plaintiff cited involved expedited discovery or directly support that proposition. *See Apple*, 2011 WL 1938154, at *2-3 (no discussion of burden); *In re High-Tech Emp. Antitrust Litig*., 856 F. Supp. 2d 1103, 1113 (N.D. Cal. 2012) (no expedited discovery); *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *1 (N.D. Cal. May 21, 2013) (no expedited discovery).

[4] The Motion criticizes Defendants for refusing to hold a Rule 26(f) conference. That is not true. Twitter has consistently told Plaintiff's counsel that it will comply with applicable deadlines. There is no reason for the Court to issue a separate order compelling an earlier Rule 26(f) conference than already required by this Court's previous orders (September 9).

1  disruption for remaining discovery and risk delay to a very tight schedule. Ultimately, any delay in
2  the Delaware action will prejudice Plaintiff and all Twitter shareholders as it will delay enforcement
3  of the Merger Agreement. Expedited discovery on Plaintiff's claim will accomplish little while
4  increasing costs and risking prejudice to the schedule of the Delaware action and thereby Twitter
5  and Twitter's shareholders.

6  Further, there are now two shareholder actions that seek the same relief on behalf of the
7  same class. It would make no sense for both shareholder actions to proceed simultaneously and for
8  discovery to be coordinated across three actions that all seek the same relief. If either shareholder
9  action were to move forward, it should be the one in Delaware, which is in the correct forum and
10 before the same judge. That would eliminate the possibility of inconsistent rulings and lend itself to
11 a more efficient process, while protecting any shareholder interest Plaintiff believes this lawsuit
12 serves.

13 In seeking to distinguish his claims against the Musk Defendants from Twitter's case against
14 them, Plaintiff highlights that he is pursuing money damages in addition to declaratory and
15 injunctive relief. Mot. at 1, 4, 6. 9. But this distinction makes no difference to the Motion. Plaintiff's
16 purported basis for coordinated and expedited discovery is the fact that he seeks declaratory and
17 injunctive relief. *See* Mot. at 6 (expedited discovery "*essential*" for "declaratory and injunctive
18 relief" but only "*relevant*" to claims for "damages"). Nor is a money damages claim a basis for
19 expediting proceedings. *EHang*, 2021 WL 3934325, at *1.[5]

## CONCLUSION

21 For the foregoing reasons, Twitter respectfully requests that this Court deny the Motion.

---

[5] In the alternative, Plaintiff purports to seek an order compelling production of all discovery from the Delaware action. This request is not ripe, and there is no reason for the Court to issue a premature order compelling discovery. Apart from the objections to discovery laid out herein, Twitter will have other objections. For example, to the extent Plaintiff's claims are premised in part on alleged breach of fiduciary duty of a Twitter director, as appears to be the case, the claims belong in the Delaware Court of Chancery under Twitter's bylaws. *See* Anderson Decl., Ex. 9, Art. VIII. Twitter would object to providing discovery on that basis. In any event, the objections should be first raised and briefed before the Court orders compelled production.

| | | |
|---|---|---|
| 1 | Dated: August 23, 2022 | SHEARMAN & STERLING LLP |
| 2 | | By: */s/ Adam S. Hakki* |
| | | Adam S. Hakki |

SHEARMAN & STERLING LLP
Daniel H.R. Laguardia (SBN 314654)
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 616-1100
Fax: (415) 616-1199

SHEARMAN & STERLING LLP
Adam S. Hakki (admitted *pro hac vice*)
Paula H. Anderson (admitted *pro hac vice*)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Fax: (212) 848-7179

*Attorneys for Defendant Twitter, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 23rd day of August 2022:

By: */s/ Daniel H.R. Laguardia*
Daniel H.R. Laguardia