QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Attorneys for Defendants Elon Musk,  X
Holdings I, Inc., and X Holdings II, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HERESNIAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., and TWITTER, INC.,<br><br>Defendant. | CASE NO. 3:22-CV-03074-CRB-SK<br><br>**DEFENDANTS X HOLDINGS I, INC. AND X HOLDINGS II, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND STAY DISCOVERY**<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom: 6, 17th Floor<br><br>Hearing Date: December 2, 2022<br>Time:     10 a.m. |

# TABLE OF CONTENTS

**Page(s)**

ARGUMENT ................................................................................5

I.      THE ACTION WAS FILED IN THE WRONG FORUM ....................................5

    **A.      Twitter's Bylaws Mandate That This Action Be Litigated In Delaware Chancery Court** ..........................................................6

        1.      Forum-Selection Clauses In Bylaws Are Enforceable Against Shareholders ............................................................6

        2.      Plaintiff's First Claim Falls Within The Bylaws' Forum-Selection Clause ..................................................................6

        3.      The Bylaws' Forum-Selection Clause Is Valid and Enforceable ................7

        4.      The Public Interest Weighs In Favor Of Enforcement ..............................8

    **B.      The Court Should Dismiss The Entire Action** ........................................9

II.     PLAINTIFF'S CLAIMS ARE DERIVATIVE ..............................................9

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING.................10

IV.     PLAINTIFF LACKS STANDING FOR DECLARATORY RELIEF ..............................10

    **A.      Plaintiff Cannot Enforce An Agreement To Which He Is Not A Party** ...........10

    **B.      Plaintiff's Request For Declaratory Relief Is Not Justiciable** ..........................11

V.      ALTERNATIVELY, THE COURT SHOULD STAY DISCOVERY ..............................12

    **A.      The Court Should Stay Discovery Pending Resolution Of Related Actions** ..............................................................12

        1.      A Discovery Stay Would Promote The Orderly Course Of Justice ............13

        2.      Plaintiff Will Not Be Damaged By A Stay ..................................13

        3.      Defendants Will Suffer Considerable Hardship Absent A Stay ................14

    **B.      Alternatively, Discovery Should Be Stayed Pending Pleading Motion Practice** ..............................................................14

CONCLUSION ................................................................................15

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**<u>Cases</u>**

4

*Arris Enterprises LLC v. Sony Corp.*,
5
　　No. 17-CV-02669-BLF, 2017 WL 3283937 (N.D. Cal. Aug. 1, 2017) ............................ 14

6

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
　　571 U.S. 49 (2013) ....................................................................................... 5, 7, 8, 9

7

*Bell Atl. Corp. v. Twombly*,
8
　　550 U.S. 544 (2007) ................................................................................................ 10

9

*Benerofe v. Cha*,
　　1998 WL 83081 (Del. Ch. Feb. 20, 1998) ................................................................ 11

10

*Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*,
11
　　73 A.3d 934 (Del. Ch. 2013) ...................................................................................... 6

12

*City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*,
　　625 F.2d 231 (9th Cir. 1980).................................................................................... 10

13

*CMAX, Inc. v. Hall*,
14
　　300 F.2d 265 (9th Cir. 1962).................................................................................... 13

15

*Cont'l Grain Co. v. The FBL-585*,
　　364 U.S. 19 (1960) ..................................................................................................... 8

16

*Crispo v. Musk et. al.*,
17
　　C.A. No. 2022-0666-KSJM ........................................................................................ 5

18

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*,
　　248 F. Supp. 3d 570 (D. Del. 2017) ......................................................................... 10

19

*Fortis Advisors LLC v. Medicines Co., & Melinta Therapeutics, Inc.*,
20
　　2019 WL 7290945 (Del. Ch. Dec. 18, 2019) ........................................................... 11

21

*Fuller v. Amerigas Propane, Inc.*,
　　No. 09-2616 TEH, 2009 WL 2390358 (N.D. Cal. Aug. 3, 2009) ............................... 13

22

*Gafcon, Inc. v. Ponsor & Assocs.*,
23
　　98 Cal. App. 4th 1388 (2002).................................................................................... 11

24

*In re Facebook, Inc. S'holder Derivative Priv. Litig.*,
　　367 F. Supp. 3d 1108 (N.D. Cal. 2019) ............................................................ 2, 6, 7, 8

25

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
26
　　No. CV 20-275-MN-JLH, 2022 WL 263312 (D. Del. Jan. 27, 2022),
　　*report and recommendation adopted*, No. CV 20-275 (MN) (JLH),
27
　　2022 WL 957761 (D. Del. Mar. 30, 2022) .............................................................. 6-7

28

*In re Rh S'holder Derivative Litig.*,
　　No. 18-CV-02452-YGR, 2019 WL 580668 (N.D. Cal. Jan. 23, 2019) ................. 13, 14

*In re STEC, Inc. Derivative Litig.*,
   No. CV 10-00667-JVS MLGX, 2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) ................ 14

*In re: CvtRx Corp. S'holder Derivative Litig.*,
   No. CV146414GHKPJWX, 2015 WL 9871275 (C.D. Cal. Oct. 30, 2015).................... 6, 8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .......................................................................... 12

*Lee v. Fisher*,
   34 F.4th 777 (9th Cir. 2022)............................................................... 6, 7

*Little v. City of Seattle*,
   863 F.2d 681 (9th Cir. 1988)................................................................. 12

*Lockman Found. v. Evangelical All. Mission*,
   930 F.2d 764 (9th Cir. 1991)................................................................... 9

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ............................................................................. 7, 8

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001)................................................................. 7, 10

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*,
   339 F.3d 1087 (9th Cir. 2003)................................................................ 11

*Minghong Inv., Inc. v. Felix Chac Chuo*,
   No. 2:21-CV-05979-SB-PD, 2022 WL 2189365 (C.D. Cal. Mar. 9, 2022) ...................... 9

*Moretti v. Hertz Corp.*,
   No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ............................ 8

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
   344 U.S. 237 (1952) .......................................................................... 12

*Rasella v. Musk*,
   S.D.N.Y. Case No. 1:22-cv-03026 .............................................................. 5

*Toolev v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004)...................................................................... 9

*Twitter, Inc. v. Musk, et al.*,
   C.A. No. 2022-0613 KSJM ................................................................... 1, 5

*Vance v. Google LLC*,
   No. 5:20-CV-04696-BLF, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021) .............. 12, 13, 14

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018)............................................................ 5, 7, 8

*Yiren Huang v. Futurewei Techs., Inc.*,
   No. 18-CV-00534-BLF, 2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) ........................... 15

## **Rules and Regulations**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ 1

Fed. R. Civ. P. 12(b)(3) ............................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1

Fed. R. Civ. P. 23.1 ................................................................................................................... 1

1    PLEASE TAKE NOTICE THAT, on December 2, 2022,[1] or as soon thereafter as the

2   matter may be heard, defendants X Holdings I, Inc. and X Holdings II, Inc. ("Holding

3   Companies") will hereby move the above entitled Court to dismiss Plaintiff's First Amended

4   Complaint ("FAC") (Dkt. 7) and for a discovery stay pending the resolution of related actions

5   pending in other courts, including *Twitter, Inc. v. Musk, et al.*, C.A. No. 2022-0613 KSJM, or the

6   resolution of pleadings motions, pursuant to the doctrine of forum non conveniens, Federal Rules

7   of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6), 23.1, and the Court's inherent authority.

8    The motion asks the Court to (1) dismiss the FAC in its entirety under the doctrine of

9   forum non conveniens, (2) dismiss the FAC in its entirety pursuant to Rules 12(b)(6) and 23.1

10   because its claims are derivative and fail to comply with Rule 23.1, (3) dismiss the first cause of

11   action for failure to state a claim, (3) dismiss the second cause of action pursuant to Rule 12(b)(1)

12   for lack of subject matter jurisdiction and for failure to state a claim, and (4) stay discovery.

13                              **SUMMARY OF ARGUMENT**

14    Plaintiff has filed this action in the wrong Court, in violation of a mandatory forum-

15   selection clause, seeking a declaration and injunction regarding a contract he has no standing to

16   enforce, and asserting a claim against the Holding Companies based on a single conclusory

17   allegation that they took unidentified "actions" constituting aiding and abetting breach of fiduciary

18   duty.  Plaintiff's defective First Amended Complaint should be dismissed in its entirety and

19   discovery should be stayed.

20    As a threshold matter, the Court need not reach the FAC's many substantive deficiencies.

21   Instead, it can and should simply dismiss the action pursuant to forum non conveniens.  Plaintiff, a

22   Twitter shareholder residing in Virginia, filed this putative class action alleging the Holding

23   Companies and Elon Musk aided and abetted two Twitter directors' breach of fiduciary duties to

24   the company.  But Twitter's Bylaws contain a mandatory forum-selection clause, binding on

25   _____

26   [1]  Before they were assigned to this Court, the parties entered and Judge Kim granted a
    scheduling stipulation which provided that "any hearing on any motion to dismiss will be noticed for
27   November 21, 2022 or as soon thereafter as the parties and the Court are available."  (Dkt. 20 at 2.)
    Because the Court hears civil motions on Fridays and the first Friday following November 21 is the
28   day after Thanksgiving, December 2 appears to be the earliest date on which all parties are available.

1   Plaintiff, requiring that the Court of Chancery for the State of Delaware ("Chancery Court") "be

2   the sole and exclusive forum" for "any action asserting a claim of breach of a fiduciary duty owed

3   by, or otherwise wrongdoing by, any director."  This clause applies to Plaintiff's aiding and

4   abetting claim since an underlying breach of fiduciary duty by a director is a necessary element.

5   Indeed, courts here and in Delaware have found that forum-selection clauses containing identical

6   language  cover aiding and abetting claims by shareholders. *See e.g., In re Facebook, Inc. S'holder*

7   *Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1121 (N.D. Cal. 2019).  Plaintiff—a Virginia

8   resident asserting Delaware law claims and seeking to enforce a contract governed by Delaware

9   law—lacks any credible argument under the Ninth Circuit's forum non conveniens factors to

10  prevent enforcement of the clause.  It should be enforced and wasteful parallel litigation avoided.

11       The FAC's deficiencies extend beyond the incorrect forum.  As explained in Mr. Musk's

12  Motion to Dismiss, which the Holding Companies join, the FAC should be dismissed because

13  Plaintiff's action is derivative in nature but was improperly brought as a direct action. Plaintiff

14  seeks to enforce the Merger Agreement on Twitter's behalf and seeks redress for injury—a

15  reduction in stock price—suffered by Twitter as a whole and not the shareholders individually.

16       Plaintiff's individual causes of action also fail.  Plaintiff asserts that the Holding

17  Companies aided and abetted a breach of fiduciary duty, which requires him to plead that they

18  conspired with Twitter's Board and directed (or participated) in its decisions with knowledge of

19  their wrongdoing.  Yet the only allegation against them is that they "took" some unidentified

20  "actions at Musk's direction to carry out his unlawful conduct." (FAC ¶ 160.)  Plaintiff's second

21  cause of action fares no better.  He seeks declaratory and injunctive relief related to the Merger

22  Agreement, but has no standing to enforce it because he is neither a party or third-party

23  beneficiary to it.  And in any event, the declaration he seeks is too vague and indefinite to sustain a

24  cause of action for declaratory relief.  The FAC should be dismissed.

25       Finally, the Court should stay discovery in this case pending the resolution of the Delaware

26  Action, which is set for trial on October 17, and a first-filed securities action in the Southern

27  District of New York asserting claims based on the same conduct giving rise to Plaintiff's unjust

28  enrichment claim.  Plaintiff seeks to enforce the Merger Agreement, the same relief Twitter is

pursuing in Delaware, and his action will likely be moot if Twitter prevails.  Proceeding with discovery would therefore be a waste of party and court resources and unnecessarily burden the Defendants, who are currently litigating these same issues in the Delaware Action.  A brief discovery stay would not harm the Plaintiff and promote the orderly course of justice, as would a stay pending the action in New York.  In the alternative, the Court should stay discovery pending resolution of the pleadings motions since they are likely to dispose of this entire action and do not require any discovery to be adjudicated.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Should the Court dismiss the FAC where Plaintiff filed this action in violation of the forum-selection clause in Twitter's Bylaws?

2.  Should the Court dismiss the FAC for failure to state a claim and failure to comply with Rule 23.1 where Plaintiff, a Twitter shareholder, seeks to recover for harm suffered by Twitter, the corporation, instead of the stockholders individually and thus are derivative in nature?

3.  Should the Court dismiss Plaintiff's aiding and abetting breach of fiduciary duty claim where Plaintiff failed to allege the elements of that claim?

4.  Should the Court dismiss Plaintiff's declaratory and injunctive relief claim where (1) Plaintiff is not a party or third-party beneficiary to the Merger Agreement, and (2) Plaintiff's requested relief is vague and indefinite?

5.  Should the Court stay discovery pending the resolution of ongoing actions in other courts involving Defendants, arising from the same issues, and seeking the substantially similar relief as the FAC or, alternatively, stay discovery pending the resolution of all pleadings motions where the FAC is likely to be dismissed and no discovery is required to adjudicate the motions?

## RELEVANT ALLEGATIONS AND BACKGROUND

<u>The FAC's allegations against the Holding Companies.</u>  Plaintiff, a Virginia resident and purported Twitter shareholder (FAC ⁋ 26), filed this putative class action against Elon Musk, Twitter, and the Holding Companies seeking damages and declaratory and injunctive relief relating to Mr. Musk's offer to acquire Twitter.  (*See generally,* FAC) The gist of Plaintiff's FAC is that Mr. Musk aided and abetted Twitter directors Jack Dorsey and Egon Durban's breaches of

1   their fiduciary duties to Twitter in connection with the negotiation of the Merger Agreement

2   governing the acquisition, wrongfully halted the completion of the transaction before closing,

3   made disparaging statements about Twitter following the execution of the Merger Agreement, and

4   damaged Plaintiff by causing Twitter's stock price to decline.  (FAC ¶¶ 155-69.)  Plaintiff seeks

5   damages, disgorgement, a declaration concerning "the parties' respective rights and obligations"

6   under the Merger Agreement, and unspecified injunctive relief.  (*Id.* ¶¶ 162,165, 169.)

7        As alleged in the FAC, the Holding Companies are Delaware corporations formed to

8   effectuate the purchase of Twitter.  (FAC ¶ 29.)  X Holdings II is the "Acquisition Sub" and X

9   Holdings I is its parent.  (*Id.*)  As of the date of this Motion, the proposed merger has not closed

10  and the Holding Companies have not acquired Twitter.

11       The FAC asserts two causes of action against the Holding Companies: (1) aiding and

12  abetting breach of fiduciary duty and (2) declaratory and injunctive relief relating to the Merger

13  Agreement.  (FAC ¶¶ 155-165.)  As to the first, the only allegation against the Holding Companies

14  is that they are "controlled by Musk and took actions at Musk's direction to carry out his unlawful

15  conduct."  (*Id.* ¶ 160.)  The FAC does not plead any facts establishing Mr. Musk's control over the

16  Holding Companies or identify any purported "actions" they allegedly took at Mr. Musk's

17  direction.  As to the second cause of action, the only allegations against the Holding Companies is

18  that they signed the Merger Agreement. (*Id.* ¶ 164.)

19       <u>Plaintiff is not a party to the Merger Agreement.</u>  The FAC alleges that on April 25, 2022,

20  the Holding Companies, Twitter, and Mr. Musk executed the Merger Agreement. (FAC ¶¶ 86,

21  164.)  Plaintiff does not allege that he is a party to or a third-party beneficiary of the Merger

22  Agreement—to the contrary, it alleges the Merger Agreement is between ***Defendants***, not

23  Plaintiff. (*Id.*, ¶¶ 164-65.)

24       <u>The Twitter Bylaws contain a mandatory forum-selection clause.</u>   Twitter's Bylaws

25  include a forum-selection clause stating, in relevant part, "the Court of Chancery of the State of

26  Delaware…shall, to the fullest extent permitted by law, be the sole and exclusive forum for…any

27  action asserting a claim of breach of a fiduciary duty owed by, or otherwise wrongdoing by, any

28  director…of the corporation to the corporation…" (Sarles Ex. 4, Bylaws, Art. VIII.)

1       <u>There are multiple related actions currently pending in Chancery Court and one in</u>

2 <u>Southern District of New York.</u>  On July 12, 2022, Twitter sued Mr. Musk for specific

3 performance in Chancery Court; Mr. Musk asserted counterclaims on August 4, 2022 and moved

4 for leave to file amended counterclaims on August 29, 2022. (Sarles Ex. 4, *Twitter, Inc. v. Musk,*

5 *et al*., C.A. No. 2022-0613 KSJM ("Delaware Action").)  Additionally, a shareholder class action

6 was filed in the Chancery Court on July 29, 2022 seeking specific performance of the Merger

7 Agreement.  (*Id.*, Ex. 5, *Crispo v. Musk et. al.*, C.A. No. 2022-0666-KSJM.).

8       On April 12, 2022, a shareholder class action was filed in the Southern District of New

9 York against Mr. Musk asserting that he violated Section 10(b) of the Securities and Exchange

10 Act by allegedly failing to timely file a Form 13 when he acquired a certain amount of Twitter

11 stock—the same allegations giving rise to Plaintiff's *later-filed* unjust enrichment claim.

12 (*Compare* FAC ¶¶ 46, 166 *with* Sarles Ex. 6, *Rasella v. Musk*, S.D.N.Y. Case No. 1:22-cv-03026

13 ("S.D.N.Y. Action").)

14                                     **ARGUMENT**

15 **I.**     **THE ACTION WAS FILED IN THE WRONG FORUM**

16       Under forum non conveniens, "a valid forum-selection clause should be given controlling

17 weight in all but the most exceptional cases," *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist.*

18 *of Texas*, 571 U.S. 49, 63 (2013), and "must [be] enforc[ed]…unless the contractually selected

19 forum affords the plaintiffs no remedies whatsoever." *Yei A. Sun v. Advanced China Healthcare,*

20 *Inc.*, 901 F.3d 1081, 1092 (9th Cir. 2018).  To determine whether to dismiss an action, courts

21 consider (1) whether the lawsuit falls within the scope of the forum-selection clause, (2) whether

22 the clause is valid and enforceable, and (3) whether public interest factors weigh against

23 enforcement (they rarely do).  *See id.* at 1086-88.  Plaintiff "must bear the burden of showing

24 why" the clause should not be enforced.  *Atl. Marine*, 571 U.S. at 63.

25       The forum-selection clause in Twitter's Bylaws is valid, enforceable, and requires that

26 Plaintiff's first cause of action for aiding and abetting breach of fiduciary duty be pursued in

27 Chancery Court. (Bylaws at Art. VIII.)  The Court should enforce the forum-selection clause and

28 dismiss this action.

A.    **Twitter's Bylaws Mandate That This Action Be Litigated In Delaware Chancery Court**

1.    <u>Forum-Selection Clauses In Bylaws Are Enforceable Against Shareholders</u>

The Bylaws' forum-selection clause is enforceable against Plaintiff, a Twitter shareholder. When Plaintiff purchased stock, he agreed to be bound by Twitter's valid Bylaws—including the forum-selection clause.  *See Facebook*, 367 F. Supp. 3d 1108, 1121 (N.D. Cal. 2019) (enforcing forum-selection clause in certificate of incorporation); *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013) ("a forum selection clause adopted by a board with the authority to adopt bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses."); *In re: CytRx Corp. S'holder Derivative Litig.*, No. CV146414GHKPJWX, 2015 WL 9871275, at *4 (C.D. Cal. Oct. 30, 2015).  The selection clause is valid and enforceable against him here.  *See Lee v. Fisher*, 34 F.4th 777, 779 (9th Cir. 2022) (affirming dismissal of shareholder suit due to forum selection clause in corporate bylaws).

2.    <u>Plaintiff's First Claim Falls Within The Bylaws' Forum-Selection Clause</u>

The Bylaws' forum-selection clause states that Delaware Chancery Court "shall…be the sole and exclusive forum for…any action asserting a claim of breach of fiduciary duty owed by, or otherwise wrongdoing by, any director". (Bylaws at Art. VIII.)[2]  Plaintiff asserts the Holding Companies and Mr. Musk aided and abetted a breach of fiduciary duty by two of Twitter's directors. (FAC ¶¶ 155-62.)  The claim is covered by this clause.  *See Facebook,* 367 F. Supp. 3d at 1120 (dismissing aiding and abetting claim in shareholder action pursuant to forum-selection clause covering "any action asserting a claim of breach of fiduciary duty owed by, or other wrongdoing by, any director"); *In re Pattern Energy Grp. Inc. Sec. Litig.*, No. CV 20-275-MN-JLH, 2022 WL 263312, at *9–10 n. 8 (D. Del. Jan. 27, 2022), *report and recommendation adopted by*, No. CV 20-275 (MN) (JLH), 2022 WL 957761 (D. Del. Mar. 30, 2022) (same).

---

[2]   The clause contains a narrow exception for cases in which the Chancery Court lacks jurisdiction.  (Bylaws at Art. VIII.)  The FAC includes no allegations suggesting such a bar exists.

Plaintiff's claim for aiding and abetting breach of fiduciary duty requires a finding that Directors Dorsey and Durban breached their fiduciary duties to Twitter and engaged in wrongdoing in connection with the acquisition. *See Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); (FAC ¶¶ 157-60.)  To establish this, Plaintiff must prove that the directors owed and breached a fiduciary duty to Twitter.  *Id.* ("the complaint must allege facts that satisfy the four elements of an aiding and abetting claim: '(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty…').  It is axiomatic that aiding and abetting "assert[s] a claim of breach of fiduciary duty,"  which is why courts in this District and in Delaware have found that language in forum-selection clauses identical to the one here apply to such claims.  *See Facebook*, 367 F. Supp. 3d at 1120; *Pattern Energy*, 2022 WL 263312, at * 10 n. 8.  On top of all that, Plaintiff's action also falls within the scope of the forum-selection clause because he alleges that Dorsey, a Twitter director, engaged in wrongdoing in connection with the merger (e.*g.,* FAC ¶ 78), which is also included in the clause.[3]

### 3.   The Bylaws' Forum-Selection Clause Is Valid and Enforceable

After establishing that the forum-selection clause applies to this action, the next step is to determine whether it is valid and enforceable.  Forum selection clauses are "prima facie valid" *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972), and are enforced "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52.  In the Ninth Circuit, courts analyze three principles to determine if extraordinary circumstances exist: (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement wou393 F.3d 1068ld contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court."  *Yei A. Sun,* 901 F.3d at 1088.  No such circumstance exists here.

---

[3]   As discussed in Section I(C), *infra*, because this claim is subject to the forum selection clause, the FAC's other related claims—declaratory relief and unjust enrichment—should likewise be dismissed.

1       ***First***,  Plaintiff has not alleged that the forum-selection clause is invalid due to fraud or

2   overreaching, nor can he contend that it cannot be enforced against him.  *E.g., Lee*, 34 F.4th at

3   779; *Boilermakers*, 73 A.3d at 940.  ***Second***, there are no public policy justifications that override

4   enforcement of the clause.  Plaintiff asserts no federal claims: two of his causes of action are

5   Delaware state claims and the third seeks declaratory relief regarding a contract governed by

6   Delaware law; the company defendants are all Delaware corporations; plaintiff resides in Virginia;

7   and the forum-selection bylaws promote public policy by helping to avoid "inefficient multi-

8   forum" litigation.  *See Facebook*, 367 F. Supp. 3d at 1120 citing *CytRx*, 2015 WL 9871275, at *5.

9   ***Finally***, the third principle is not implicated here.  Plaintiff cannot show that he precluded from

10  pursuing any of the same claims or remedies, all brought under Delaware law, in the contractual

11  forum.  *See Yei A. Sun*, 901 F.3d at 1092 (third *Bremen* principal does not bar enforcement of

12  forum-selection clause provided there is a "basically fair court system in that forum that would

13  allow the plaintiff to seek some relief").

14                 4.   <u>The Public Interest Weighs In Favor Of Enforcement</u>

15      Courts may consider "public interest" factors—court congestion and administration

16  concerns, local interest, and which forum is more "at home" with the law at issue—but they

17  "rarely" defeat a motion.  *Atl. Marine*, 571 U.S. at 64.  In fact, the factors weigh heavily in favor

18  of dismissal.  First, there are two actions in Chancery Court involving issues associated with the

19  merger that overlap with Plaintiff's claims.  "Permitting [the] situation," Plaintiff seeks, in which

20  multiple cases about the same issues "are simultaneously pending in different…[c]ourts leads to

21  the wastefulness of time, energy and money." *See Cont'l Grain Co. v. The FBL*-585, 364 U.S. 19,

22  26 (1960).  Dismissal of this action in favor of the mandatory forum where the issues in this case

23  are already being litigated would prevent this waste.  Local interest does not favor this forum.

24  Although Plaintiff alleges that some of the actions occurred in California, three of the four

25  defendants are Delaware corporations, all Defendants are ***already*** litigating related issues in

26  Delaware Chancery Court, and Plaintiff is a Virginia resident.  *See Moretti v. Hertz Corp.*, No. C

27  13-02972 JSW, 2014 WL 1410432, at *5 (N.D. Cal. Apr. 11, 2014).  The third factor weighs

28

1   heavily in favor of dismissal as every claim requires an application of Delaware law, with which

2   Delaware courts have more familiarity.  *See CytRx*, 2015 WL 9871275, at *6.

3       **B.      The Court Should Dismiss The Entire Action**

4           Because the Bylaws mandate that Delaware Chancery Court, a Delaware state court, be

5   "the sole and exclusive forum" to adjudicate Plaintiff's aiding and abetting claim, the entire action

6   should be dismissed under forum non conveniens.  *Atl. Marine*, 571 U.S. at 60 (dismissal under

7   forum non conveniens is "the appropriate way to enforce a forum-selection clause pointing to a

8   state or foreign forum").  Where, as here, a mandatory forum-selection requires that at least one

9   claim be litigated in a state forum, judicial efficiency and the interests of justice provide that the

10  entire action be dismissed and adjudicated there.  *See e.g.*, *Minghong Inv., Inc. v. Felix Chac*

11  *Chuo*, No. 2:21-CV-05979-SB-PD, 2022 WL 2189365, at *6 (C.D. Cal. Mar. 9, 2022) (dismissing

12  entire action where a minority of claims were covered by forum-selection clause).  Enforcing

13  forum selection clauses (and preventing plaintiffs from avoiding them through artful pleading)

14  prevents waste that would arise from trying the case in multiple forums.  *See id.* (*citing Lockman*

15  *Found. v. Evangelical All. Mission*, 930 F.2d 764, 770 (9th Cir. 1991) (affirming dismissal of

16  entire action to "the only forum in which the entire case may be tried")).

17          As discussed above, Plaintiff can offer no credible justification why any claim—let alone

18  the entire action—should be litigated in this Court.  Each of the claims in the FAC arise under

19  Delaware law and can therefore be resolved in that state's courts.  Plaintiff is not a resident of this

20  state and the only party that is, Twitter, affirmatively assented to have all of the claims heard in

21  Delaware.  And every party here except Plaintiff is ***already*** litigating these and related issues in

22  Chancery Court.  Dismissal of this action in this Court in favor of the Chancery Court is therefore

23  not only mandated by the Bylaws, but prudent and more efficient.

24  **II.      PLAINTIFF'S CLAIMS ARE DERIVATIVE**

25          The Holding Companies join Mr. Musk's Motion to Dismiss the FAC on the grounds that

26  Plaintiff's claims seek recovery for harms suffered by Twitter and are therefore derivative in

27  nature and cannot be brought as a direct action. *See* Musk Motion; *Tooley v. Donaldson, Lufkin &*

28  *Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

III.   **PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING**

Plaintiff's aiding and abetting claim should also be dismissed for failure to state a claim. As discussed in Mr. Musk's Motion, the FAC fails to allege an underlying breach of fiduciary duty, knowing participation in the breach by Mr. Musk, and damages proximately caused by the breach. *Malpiede*, 780 A.2d at 1096.  The Holding Companies join that Motion.

The claim should also be dismissed against the Holding Companies specifically because Plaintiff alleges no facts giving rise to any liability against them.  To plead aiding and abetting, Plaintiff must allege (1) that the Holding Companies "participated in the board's decisions, conspired with the board, or otherwise caused the board to board to make the decisions at issue," (2) with actual or constructive knowledge that the conduct was legally improper.  *Malpiede*, 780 A.2d at 1098.  The FAC does not come close to meeting these requirements.  All Plaintiff alleges is that the Holding Companies "took" some unidentified "actions at Musk's direction to carry out his unlawful conduct."  (FAC ¶ 160.)  This allegation, pleaded without any underlying facts to support it, is a vague conclusion insufficient to establish Plaintiff's "high" burden to plead that the Holding Companies "knowingly participated" in any breach. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions"); *Malpiede*, 780 A.2d at 1098 (plaintiff must plead specific facts that third party knowingly participated in breach).

IV.   **PLAINTIFF LACKS STANDING FOR DECLARATORY RELIEF**

A.    **Plaintiff Cannot Enforce An Agreement To Which He Is Not A Party**

Plaintiff's second cause of action for declaratory relief should be dismissed because he is not a party to the Merger Agreement and lacks standing to enforce it.  Standing is a "threshold question in every federal case" and Plaintiff must allege "such a personal stake in the outcome of a controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980).  It is well-settled under Delaware law, which governs the Merger Agreement (FAC ¶ 88), that only parties to a contract and intended third-party beneficiaries have standing to enforce contracts. *See, e.g., E.I. du Pont de Nemours & Co. v.*

1  *MacDermid Printing Sols. L.L.C.*, 248 F. Supp. 3d 570, 575 (D. Del. 2017).

2      As Plaintiff does not allege that he is either a party or third-party beneficiary to the Merger

3  Agreement, his claim fails as a matter of law.  *See id.* (party "lack[ed] standing to enforce the

4  Settlement Agreement, because it is neither a signatory to nor an intended beneficiary of that

5  agreement").  Plaintiff's status as a purported Twitter shareholder does not confer standing either.

6  Holding stock in a corporation does not render a shareholder a party to that company's contracts; a

7  shareholder's rights under any agreement a company enters into are limited to "those clearly

8  provided by the [a]greement." *See Benerofe v. Cha*, 1998 WL 83081, at *6 n.22 (Del. Ch. Feb.

9  20, 1998); *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087,

10  1091 (9th Cir. 2003) (applying Delaware law to hold that shareholders were not parties or third-

11  party beneficiaries to merger agreement ).  Since Plaintiff does not identify any provision in the

12  Merger Agreement entitling him to enforce or seek a declaratory judgment about it, he has no

13  standing to bring this claim.[4]

14      **B.      Plaintiff's Request For Declaratory Relief Is Not Justiciable**

15      Plaintiff's claim for declaratory or injunctive relief should also be dismissed because he

16  does not articulate any request for specific and conclusive relief.  Declaratory relief  "must be of a

17  character which admits of specific and conclusive relief by judgment within the field of judicial

18  determination," the judgment "must decree, not suggest, what the parties may" do, and "set

19  controversies at rest".  *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1403–04 (2002).

20  Plaintiff does not ask the Court to issue a specific and conclusive declaration, but rather a general

21  and unspecified declaration "concerning" Mr. Musk's statements about the Merger "and the

22  parties respective rights and obligations." (FAC ¶ 165.)  But declaring what?  And to what end?

23  Plaintiff does not ask the Court to order specific performance or mandate that the parties do

24  anything after opining on his purported unspecified "rights and obligations." (*See id.*)  Where, as

25  here, a plaintiff "does not request an adjudication that it has a right to do, or to have, anything in

26

27  _____

28      [4]  The Holding Companies also join Twitter's Motion to Dismiss the Second Cause of Action.

1   particular," the action is for an improper advisory opinion and should be dismissed.  *See Pub.*

2   *Serv. Comm'n of Utah v. Wycoff Co*., 344 U.S. 237, 243–44 (1952).

3   **V.      ALTERNATIVELY, THE COURT SHOULD STAY DISCOVERY**

4            **A.      The Court Should Stay Discovery Pending Resolution Of Related Actions**

5            Alternatively, if the Court does not dismiss the FAC outright, discovery should be stayed

6   pending final resolution of the ongoing Chancery Court and S.D.N.Y. actions.  The FAC seeks to

7   enforce the Merger Agreement and obtain monetary relief for alleged harm suffered by Twitter

8   following the merger.  (FAC ¶ 165.)  But Twitter and the Musk Defendants are already litigating

9   the enforceability of the Merger Agreement in the Delaware Action.  It is currently is set for trial

10  on October 17; Plaintiff's claims may be resolved in a matter of months.  Conducting distracting

11  and burdensome discovery in the meantime would be a waste of Defendants' and the Court's time

12  and resources.  The unjust enrichment claims—which, as explained in Mr. Musk's motion, are

13  barred by SLUSA—overlap with the securities claims in the first-filed S.D.N.Y. Action.  Since

14  this case depends almost entirely on the outcome of multiple actions, the Court should exercise its

15  inherent authority to stay discovery pending their resolution.

16           "The district court has wide discretion in controlling discovery." *Little v. City of Seattle*,

17  863 F.2d 681, 685 (9th Cir. 1988).  The power to stay "is incidental to the power inherent in every

18  court to control the disposition of the causes on its docket with economy of time and effort for

19  itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936).  It is

20  appropriate to issue a stay pending the resolution of a parallel action involving similar claims,

21  indeed, "[c]ourts in this district have routinely granted stays where there are overlapping issues of

22  fact or law with a case before different" courts.  *Vance v. Google LLC*, No. 5:20-CV-04696-BLF,

23  2021 WL 534363, at *3 (N.D. Cal. Feb. 12, 2021) (collecting cases).  In determining whether to

24  grant a stay, the Court should weigh the following interests: "possible damage which may result

25  from the granting of a stay, the hardship or inequity which a party may suffer in being required to

26  go forward, and the orderly course of justice measured in terms of the simplifying or complicating

27  of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc.*

28

*v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (affirming stay of proceedings).  These interests all support a discovery stay pending final resolution of the related actions.

> 1.   A Discovery Stay Would Promote The Orderly Course Of Justice

Judicial economy is "the primary basis courts consider when ruling on motions to stay." *Vance*, 2021 WL 534363, at *6; *see also Fuller v. Amerigas Propane, Inc.*, No. 09-2616 TEH, 2009 WL 2390358, at *2 (N.D. Cal. Aug. 3, 2009) ("Duplication of case management tasks by multiple courts is not an economical use of judicial resources.").  Thus, in determining whether a stay promotes the orderly course of justice, courts "may consider the degree of overlap in factual allegations between parallel cases in order to avoid unnecessary duplicative litigation." *See* ."  *In re Rh S'holder Derivative Litig.*, No. 18-CV-02452-YGR, 2019 WL 580668, at *2 (N.D. Cal. Jan. 23, 2019).

The degree of overlap between the FAC and the related actions is significant.  The Delaware Action involves the same parties (except for Plaintiff), relates to the same transaction, and seeks much of the same relief—enforcement of the Merger Agreement.  It cannot be disputed that a stay of discovery pending its resolution would preserve judicial resources since, as Judge Kim noted in denying Plaintiff's Motion to Coordinate and Expedite Discovery, "until the Delaware action concludes, it is difficult to determine what claims, if any, Plaintiff will have remaining." (Dkt. 37 at 5.)  The FAC also overlaps with the first-filed S.D.N.Y. Action which asserts securities claims for the same alleged failure to timely file a Form 13 that gives rise to the FAC's unjust enrichment claim.  Proceeding with discovery would require the Court and parties to spend considerable time and resources on claims that are in limbo.  The stay should be granted.

> 2.   Plaintiff Will Not Be Damaged By A Stay

Courts may issue a stay if "it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Rh S'holder Derivative Litig.*, 2019 WL 580668, at *2 (finding plaintiff would be "minimally damaged" where trial in parallel action was set ten months after the stay request).  The Delaware Action is on a highly expedited schedule currently set to go to trial in weeks.  Plaintiff is unlikely to suffer any damage in the meantime.  There is no risk of loss of evidence here either because the parties will

complete discovery in the Delaware Action this month and are obligated to preserve all relevant evidence. *See id.*  Moreover, although styled a putative class action, Plaintiff cannot argue that all of Twitter's shareholders will suffer harm from a discovery stay because no class has been certified.  *See Vance*, 2021 WL 534363, at *5.  A discovery stay presents no real risk of harm and therefore this interest weighs in its favor.  *See id.*; *Rh S'holder Derivative Litig.*, 2019 WL 580668, at *2.

### 3.     Defendants Will Suffer Considerable Hardship Absent A Stay

On the other hand, Defendants will be harmed if forced to conduct costly and time consuming discovery regarding claims that may be resolved or mooted by the Delaware Action or S.D.N.Y. Action.  Proceeding with discovery "would cause both parties to incur significant expenses on litigation that may be rendered moot," which weighs in favor of a stay.  *See Vance*, 2021 WL 534363, at *5.  That there are overlapping issues only compounds the potential cost and burden suffered by Defendants.  *Arris Enterprises LLC v. Sony Corp.*, No. 17-CV-02669-BLF, 2017 WL 3283937, at *3 (N.D. Cal. Aug. 1, 2017) (stay justified by potential substantial discovery costs incurred by overlapping issues).  The Musk Defendants will be further prejudiced because conducting discovery while these actions pend would necessarily divert their financial and management resources away from their defense in that case.  *See In re STEC, Inc. Derivative Litig.*, No. CV 10-00667-JVS MLGX, 2012 WL 8978155, at *5 (C.D. Cal. Jan. 11, 2012); *Rh S'holder Derivative Litig*, 2019 WL 580668, at 3.

### B.     Alternatively, Discovery Should Be Stayed Pending Pleading Motion Practice

At minimum, given the numerous fatal deficiencies in the FAC, discovery should be stayed pending resolution of Defendants' motions to dismiss both the FAC and any subsequent amended complaint should Plaintiff be granted leave to amend.  The Northern District applies a two part test to determine whether discovery should be stayed pending resolution of a dispositive motion: (1) is the motion potentially dispositive of the entire case and (2) can the motion be decided absent further discovery.  *Yiren Huang v. Futurewei Techs., Inc.*, No. 18-CV-00534-BLF, 2018 WL 1993503, at *2 (N.D. Cal. Apr. 27, 2018) (staying discovery where plaintiff filed action in violation of a forum-selection clause).  In applying this test, "the court must take a 'preliminary

1   peek' at the merits of the pending dispositive motion to assess whether a stay is warranted.  *Id.*

2   Both steps are satisfied here.  Defendants' motions to dismiss will dispose of the entire action

3   because it was filed in the wrong forum, is derivative, and fails to state any claims, for all the

4   reasons described in Defendants' motions to dismiss.  And because the Musk Defendants moved

5   on the grounds of forum non conveniens, lack of standing, and Rule 12(b)(6), no discovery is

6   necessary to resolve those motions.  Plaintiff has not presented any viable theory that could be

7   cured by any amendment to the FAC (much less in this forum), but nonetheless, if leave were to

8   be granted, a stay while further pleading motions are resolved would likewise further judicial

9   economy and could be resolved without any discovery.  Accordingly, there is ample good cause

10  here to stay discovery pending resolution of pleading motions at a minimum.

11                                    **CONCLUSION**

12          For the reasons stated herein, the Holding Companies respectfully request that the Court

13  grant the Holding Companies' Motion and dismiss the FAC in its entirety.

14
15  DATED:  September 9, 2022                QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
16

17                                          By  */s/ Joseph C. Sarles*
18                                              Alex Spiro
                                                Michael T. Lifrak
19                                              Joseph C. Sarles
                                                Alex Bergjans
20                                              Aubrey L. Jones

21                                              *Attorneys for Elon Musk,  X Holdings I, Inc., and*
22                                              *X Holdings II, Inc.*

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 9th day of September 2022.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By  /s/ Joseph C. Sarles
    Alex Spiro
    Michael T. Lifrak
    Joseph C. Sarles
    Alex Bergjans
    Aubrey L. Jones

    *Attorneys for Elon Musk,  X HOLDINGS I, INC.,*
    *and X HOLDINGS II, INC.*