1   COTCHETT, PITRE & MCCARTHY, LLP
    Joseph W. Cotchett (SBN 36324)
2   jcotchett@cpmlegal.com
    Mark C. Molumphy (SBN 168009)
3   mmolumphy@cpmlegal.com
    Anne Marie Murphy (SBN 202540)
4   ammurphy@cpmlegal.com
    Tyson C. Redenbarger (SBN 294424)
5   tredenbarger@cpmlegal.com
    Julia Q. Peng (SBN 318396)
6   jpeng@cpmlegal.com
    San Francisco Airport Office Center
7   840 Malcolm Road, Suite 200
    Burlingame, California 94010
8   Telephone:   (650) 697-6000

9   BOTTINI & BOTTINI, INC.
    Francis A. Bottini, Jr. (SBN: 175783)
10  fbottini@bottinilaw.com
    Anne B. Beste (SBN 326881)
11  abeste@bottinilaw.com
    Albert Y. Chang (SBN 296065)
12  achang@bottinilaw.com
    Yury A. Kolesnikov (SBN 271173)
13  ykolesnikov@bottinilaw.com
    Nicholas H. Woltering (SBN 337193)
14  nwoltering@bottinilaw.com
    7817 Ivanhoe Avenue, Suite 102
15  La Jolla, California 92037
    Telephone:     (858) 914-2001

16
    *Co-Counsel for Plaintiff*
17
    *Counsel for defendants continued on the*
18  *following page*

19

20                  **UNITED STATES DISTRICT COURT**

21                **NORTHERN DISTRICT OF CALIFORNIA**

22  | **WILLIAM HERESNIAK**, on behalf of | Case No.: 3:22-CV-03074-CRB |
    | himself and all others similarly situated, | |
23  | | **JOINT CASE MANAGEMENT** |
    | | **CONFERENCE STATEMENT AND RULE** |
24  | Plaintiff, | **26(f) REPORT** |
    | | |
25  | vs. | CMC Date: September 30, 2022 |
    | | CMC Time: 8:30 a.m. |
26  | **ELON R. MUSK, X HOLDINGS I, INC., X** | |
    | **HOLDING II, INC., and TWITTER, INC.,** | Judge:      Hon. Charles R. Breyer |
27  | | Courtroom:  6 – 17th Floor |
    | Defendants, | |
28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendants Elon Musk,  X
Holdings I, Inc., and X Holdings II, Inc*

SHEARMAN & STERLING LLP
Daniel H.R. Laguardia (SBN 314654)
535 Mission Street, 25th Floor
San Francisco, CA  94105
Telephone:     (415) 616-1100
Fax:     (415) 616-1199
Email: Daniel.Laguardia@shearman.com

Adam S. Hakki (admitted *pro hac vice*)
Paula H. Anderson (admitted *pro hac vice*)
599 Lexington Avenue
New York, New York 10022
Telephone:     (212) 848-4000
Fax:     (212) 848-7179
Email: Adam.Hakki@shearman.com
        Paula.Anderson@shearman.com

*Counsel for Defendant Twitter, Inc.*

JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT;
Case No. 22-CV-03074-CRB

**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT**

Plaintiff William Heresniak ("Plaintiff"); Defendants Elon R. Musk, X Holdings I, Inc., and X Holdings II, Inc. (collectively, the "Holding Companies" and with Mr. Musk, the "Musk Defendants"); and Defendant Twitter, Inc. ("Twitter," and collectively with the Musk Defendants, "Defendants"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement and Rule 26(f) Report pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, and Federal Rule of Civil Procedure 26(f) in advance of the Case Management Conference scheduled in the above-captioned case for September 30, 2022.

1. **JURISDICTION AND SERVICE**

   **Plaintiff's Statement**

   This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332 because Plaintiff, putative class members, and Defendants are citizens of different states and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

   Defendants have been served or have accepted service of the complaint.

   Defendants' lengthy jurisdictional arguments, replete with legal citations, are inappropriate in a CMC Statement and, in any event, without merit.[1] Jurisdiction indisputably exists here because Twitter is headquartered in this District and Musk and X Holdings engaged in many acts in further of the proposed merger in San Francisco. Defendants merely argue the Court should decline to exercise its existing jurisdiction, noting the pendency of other actions. But Plaintiff's complaint seeks different relief than Twitter's lawsuit against Musk, and Twitter's lawsuit cannot and will not resolve the claims brought by Plaintiff. First, Twitter does not seek any damages for its shareholders in the Delaware Action and thus the Delaware Action cannot moot Plaintiff's class claims for damages in this case. Second, the Delaware Action will not necessarily moot Plaintiff's

---

[1] Plaintiff asked Defendants to withdraw their legal arguments, but they refused, making only minimal changes to their original draft. Plaintiff will address jurisdictional arguments in his opposition to Defendants' motions to dismiss due on October 11, 2022.[1] *See* Docket No. 20.

claims for declaratory relief. Plaintiff here has not yet filed his motion for declaratory and injunctive relief because he has not been afforded discovery given Defendants' opposition to Plaintiff's effort to coordinate discovery with the Delaware Action. The nature and scope of declaratory relief to be sought by Plaintiff may be affected by the outcome of the Delaware Action but will not necessarily be mooted by any potential outcome in Delaware. Plaintiff and the Class, not Twitter, have the right to receive the Merger consideration, as well as other separate and distinct rights that are derived from the Defendants' legal obligations under the common law to Plaintiff, above and apart any obligations that exist pursuant to the Merger Agreement. Thus, Plaintiff seeks relief from Musk and X Holdings for aiding and abetting breach of fiduciary duty, not a contract claim under the Merger Agreement as Defendants erroneously contend.[2]

Moreover, Defendants' arguments that this Court is not a proper forum for this case due to Twitter's forum selection clause are without merit. Twitter's forum clause is inapplicable here because Plaintiff only asserts claims against Musk and the X Holdings entities, who are not parties to Twitter's forum clause.

**Twitter's Statement**

Plaintiff's First Amended Complaint ("Amended Complaint" or "FAC") asserts three claims, but only one naming Twitter as a defendant. That claim seeks a declaratory judgment and injunctive relief to enforce the Musk Defendants' obligations under the Agreement and Plan of Merger dated April 25, 2022 (the "Merger Agreement") between the Musk Defendants and Twitter (the "Declaratory/Injunctive Claim"). Twitter has filed a motion to dismiss the Declaratory/Injunctive Claim under Rule 12(b)(1) for lack of standing. *See* Dkt. 41. Under

---

[2] Plaintiff's lawsuit here also cannot be mooted by the other shareholder case referenced by Defendants below that was filed in Delaware after the present case was filed (*Crispo v. Musk et al.*, C.A. No. 0666 (Del. Ch.). The shareholder in that case advances a completely different legal theory – *i.e.*, that Musk, the buyer, allegedly owed Twitter's shareholders a fiduciary duty. While Plaintiff believes that theory is fundamentally unsound, that action cannot moot Plaintiff's first-filed case here since no claim is asserted in that case for aiding and abetting and the shareholder's claim against Musk for breach of fiduciary duty is likely to be dismissed because the caselaw does not support the existence of a plenary fiduciary duty on the part of Mr. Musk because he is neither an officer, director, nor majority shareholder of Twitter.

Delaware law, which governs the Merger Agreement, only parties and third-party beneficiaries have standing to enforce a contract. Plaintiff is not a party to the Merger Agreement, the Amended Complaint does not claim Plaintiff has standing to pursue the claim as a third-party beneficiary, and there is an express "No Third-Party Beneficiaries" provision in the Merger Agreement. Accordingly, Twitter's position is that Plaintiff does not have standing and thus has not established that the Court has subject matter jurisdiction over the Declaratory/Injunctive Claim.

In its motion to dismiss, Twitter has separately requested that the Court decline to exercise jurisdiction over the Declaratory/Injunctive Claim under the *Brillhart* abstention doctrine. *See* Dkt. 41. Under the *Brillhart* abstention doctrine, "[a] district court has discretion to dismiss a federal declaratory judgment action when 'the questions in controversy ... can better be settled in' a pending state court proceeding." Dkt. 41 at 9 (quoting *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)). Twitter is pursuing a judgment against the Musk Defendants for essentially the same declaratory and injunctive relief in the Court of Chancery for the State of Delaware ("Delaware Chancery Court"). *See Twitter, Inc. v. Musk et al.*, C.A. No. 2022-0613 (Del. Ch.) (the "Delaware Action"). That case is set for trial on October 17, 2022—before briefing on Twitter's motion to dismiss is currently scheduled to conclude—and will almost certainly render the Declaratory/Injunctive Claim moot. In addition, another Twitter stockholder has brought a separate action in Delaware Chancery Court seeking substantially the same declaratory and injunctive relief against the Musk Defendants on behalf of a putative class of Twitter stockholders (including Plaintiff). *See Crispo v. Musk et al.*, C.A. No. 0666 (Del. Ch.) (the "Delaware Stockholder Action"). That action is before the same judge (Chancellor Kathaleen St. J. McCormick) hearing the Twitter action against the Musk Defendants, and a motion to dismiss that putative class action has already been fully briefed. If that case survives the motion to dismiss, the plaintiff there has asked that the case be tried on the same schedule as the Delaware Action. Twitter believes that it would not make sense for the Court to separately decide important issues of Delaware law raised by the Merger Agreement when Chancellor McCormick of the Delaware Court of Chancery will have resolved the same claim and issues in a matter of weeks.

JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT;
Case No. 22-CV-03074-CRB

In the alternative to its motion to dismiss under Rules 12(b)(1) and 12(b)(6), Twitter seeks dismissal on forum non conveniens grounds or to transfer this action to the District of Delaware under 18 U.S.C. § 1404(a). The Merger Agreement includes a forum selection provision that makes Delaware state or federal court the exclusive forum for any action relating to the Merger Agreement. "'[O]nly under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied." Dkt. 41 at 13 (quoting *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (citation omitted))). Twitter's position is that Plaintiff is bound by the forum selection provision, even as a non-party, because (1) his claim to enforce the Merger Agreement is "so closely related to the contractual relationship that the forum selection clause applies," (2) he claims third-party beneficiary status (assuming he attempts to proceed as such); and (3) he is bound under an estoppel theory. Dkt. 41 at 13-14 (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)).

While under normal circumstances, enforcement of the forum selection provision in the Merger Agreement might require transfer to the District of Delaware, a designated forum, and would not result in dismissal, Twitter's believes that the existence of two parallel actions proceeding in Delaware on a highly expedited schedule justifies dismissal on *forum non conveniens* grounds. *See* Dkt. 41 at 14. Further, transfer of the entire action to the District of Delaware is not available because at least one of Plaintiff's claims against the Musk Defendants is subject to a forum selection provision in Twitter's bylaws that grants exclusive jurisdiction to Delaware Chancery Court. *See* Dkt. 38, 39. In any case, Twitter's position is that this is not the appropriate forum for the Declaratory/Injunctive Claim, and at a minimum, this action and/or the Declaratory Injunctive Claim should be transferred to the District of Delaware under 28 U.S.C. § 1404(a).

**Musk Defendants' Statement**.

This is not the appropriate forum for this action. Plaintiff's FAC asserts (1) a cause of action against the Musk Defendants for aiding and abetting the breach of fiduciary duty by two Twitter directors; (2) a claim for declaratory and injunctive relief against all Defendants seeking to enforce the Merger Agreement; and (3) a claim for unjust enrichment against Mr. Musk.  (FAC ¶¶ 155-69.) The Musk Defendants have brought motions to dismiss this action under the doctrine of forum non

conveniens, for lack of standing, and for failure to state a claim and, in the alternative, to stay discovery.  Dkt. Nos. 38-39.

As explained in the motions, this action was filed in the wrong forum.  *See* Dkt. No. 39 at 5-9.  Plaintiff, a Twitter shareholder, is bound by the mandatory forum-selection clause in Twitter's Bylaws which provide that "the Court of Chancery of the State of Delaware…shall, to the fullest extent permitted by law, be the sole and exclusive forum for…any action asserting a claim of breach of a fiduciary duty owed by, or otherwise wrongdoing by, any director…of the corporation to the corporation…" (*Id.* at 4, 6; Bylaws as Art. VIII.); *See e.g., In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1121 (N.D. Cal. 2019) (enforcing forum-selection clause in corporate bylaws against shareholder). The valid forum-clause "should be given controlling weight," *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013), and this action should be dismissed under the doctrine of forum non conveniens in favor of the Delaware Chancery Court.

Plaintiff's first cause of action—aiding and abetting the breach of fiduciary duty by Twitter directors Jack Dorsey and Egon Durban—falls within the scope of the forum-selection clause since it requires the Court to find that Directors Dorsey and Durban breached their fiduciary duties to Twitter and engaged in wrongdoing in connection with the acquisition. Dkt. 39 at 7 (*citing e.g., In re Pattern Energy Grp. Inc. Sec. Litig.*, No. CV 20-275-MN-JLH, 2022 WL 263312, at *9–10 n. 8 (D. Del. Jan. 27, 2022), *report and recommendation adopted by*, No. CV 20-275 (MN) (JLH), 2022 WL 957761 (D. Del. Mar. 30, 2022) (dismissing aiding and abetting claim in shareholder action pursuant to forum-selection clause covering "any action asserting a claim of breach of fiduciary duty owed by, or other wrongdoing by, any director").  The forum non conveniens factors weigh heavily in favor of enforcement because there are already two related actions litigating many of the same issues presented in the FAC—the Delaware Action and Delaware Stockholder Action— pending in the Delaware Chancery Court and Plaintiff asserts claims under Delaware law, with which the Delaware Chancery Court is more familiar.  The motions ask the Court to enforce the forum-selection clause and dismiss not only the first cause of action but the entire case to avoid wasteful litigation in multiple forums.

Additionally, the Musk Defendants' motions assert that the second cause of action for declaratory judgment should be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing to assert a claim for declaratory or injunctive relief under the Merger Agreement. *See* Dkt. Nos. 38; 39 at 10-11. Under Delaware law, which governs the Merger Agreement (FAC ⁋ 88), that only parties to a contract and intended third-party beneficiaries have standing to enforce contracts. *See id (citing e.g., E.I. du Pont de Nemours & Co. v. MacDiermid Printing Sols. L.L.C.*, 248 F. Supp. 3d 570, 575 (D. Del. 2017).). Plaintiff is neither a party or a third-party beneficiary to the agreement and therefore lacks standing to enforce it.

Finally, Mr. Musk has moved to dismiss the third cause of action under Rule 12(b)(3) on the grounds that is precluded from bringing it in this Court by the Securities Law Uniform Standards Act ("SLUSA"), which bars plaintiffs from bringing securities fraud class actions under state common law theories. Dkt. No. 38 at 13 (*citing* 15 U.S.C. § 77p(b).) SLUSA "bar[s] jurisdiction over any claim that could give rise to liability under § 10(b) or Rule 10b–5," *Id.* at 14 (*citing Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1153 (9th Cir. 2017). Here, Plaintiff contends that Mr. Musk was unjustly enriched by allegedly purchasing Twitter stock at a lower price than he otherwise would have after allegedly failing to timely file a mandatory Form 13 disclosure and by engaging in "market manipulation" (FAC ⁋⁋ 112-13) after signing the Merger Agreement. The action purports to allege an omission of material fact and the employment of a manipulative device in connection with the sale of securities and is therefore barred by SLUSA. Dkt. No. 38 at 14, (*citing, e,g, Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 89 (2006) ("fraudulent manipulation of stock prices—unquestionably qualifies as fraud 'in connection with the purchase or sale' of securities").

## 2. FACTS

### Plaintiff's Statement:

On April 14, 2022, Elon Musk announced he was going to purchase Twitter. On April 25, 2022, Twitter confirmed that it had agreed to sell itself to Musk for $54.20 per share, or approximately $44 billion. Musk's offer was not conditioned on financing or subject to due diligence. Shortly thereafter, Musk began denigrating Twitter in contravention of the "anti-

disparagement" clause of the merger agreement, stating he needed more information about Twitter's user base and suggesting that Twitter's estimates of "bot" accounts on its platform were inaccurate. However, Musk was well aware that there were bots on Twitter, having publicly stated before the merger that he would fix the bot problem once he owned Twitter. Because Musk had specifically waived due diligence, Plaintiff alleges that his protestations about needing more information about the bots were pretextual and that the plunging price of Tesla stock (which Musk had pledged as collateral for a $12.5 billion loan to finance part of the merger) was the real reason for Musk's sudden change of heart. Plaintiff's complaint alleges that Musk's misconduct has caused severe damage to Twitter and its shareholders. On May 13, 2022, Musk issued a statement indicating "Twitter deal temporarily on hold," a statement Twitter disputed but which nonetheless caused Twitter's stock price to decline substantially. Then, approximately two months later, on July 8, 2022, Musk notified Twitter that he was terminating the merger.

Plaintiff seeks monetary damages in addition to declaratory and injunctive relief and alleges that two Twitter directors share the blame for the substantial harm to Twitter and its shareholders. Twitter directors Durban and Dorsey were loyal to Musk and catered to his desires. Durban is a principal at Silverlake, which invested $100 million in Musk's SolarCity company. Dorsey is good friends with Musk—in 2020, Musk came to Dorsey's defense after Elliot Management attempted to knock Dorsey out of his position as CEO of Twitter. Dorsey and Durban, eager to please Musk, failed to engage in adequate due diligence regarding Musk's sources of equity financing.

Dorsey and Durban also breached their fiduciary duties by failing to engage in a market check, failing to shop the Company to other potential suitors, and providing Musk with a no-shop agreement. The merger proxy admits that "The Twitter Board determined not to contact other parties" before agreeing to accept Musk's first and only offer. A mere ten days elapsed between the time Musk's offer was publicly announced on April 14, 2022 and the date the Twitter Board accepted his offer on April 24, 2022. At Twitter's recent Annual Meeting on May 25, 2022, Twitter's stockholders voted Durban off the Board, but the Board refused to get rid of Durban.

Plaintiff brings this class action on behalf of all stockholders of Twitter, who have been harmed by the actions of Defendants. Plaintiff asserts claims for aiding and abetting breach of fiduciary duty, unjust enrichment, and declaratory and injunctive relief.

**__Twitter's Statement__**

Twitter is a publicly traded company that operates a social media platform. Starting in January of this year, Musk started acquiring shares of Twitter stock on the open market, and by March, owned approximately 9.2 percent of all outstanding shares. On April 13, he sent a proposal to Twitter's chairman offering to acquire 100 percent of outstanding Twitter shares at a substantial premium over the trading price on the New York Stock Exchange. After further negotiations over the course of the following weeks, Twitter and the Musk Defendants entered into the Merger Agreement. Under the Merger Agreement, the Musk Defendants agreed to acquire all outstanding shares of Twitter stock at an agreed upon price of $54.20 per share. The total consideration contemplated by the deal amounts to approximately $44 billion.

On July 8, Musk purported to terminate the Merger Agreement, alleging that Twitter was in breach. On July 12, Twitter filed suit in Delaware Chancery Court, seeking an order that requires the Musk Defendants "to specifically perform their obligations under the merger agreement and consummate the closing in accordance with the terms of the merger agreement" and "granting such injunctive relief as is necessary to enforce the decree of specific performance." On July 19, the Delaware Chancery Court granted Twitter's motion for expedition, and subsequently entered a condensed scheduling order, culminating in a trial commencing on October 17.

Twitter is only named as a defendant with respect to Plaintiff's Declaratory/Injunctive Claim. That claim alleges "[t]he conditions that Musk has stated must be met before the Buyout can go forward do not appear to be part of the contract he signed with Twitter," and asks for "a declaration concerning these facts and issues and the parties' respective rights and obligations" and "appropriate injunctive relief." FAC ¶ 165. In sum, the Declaratory/Injunctive Claims seeks relief that Twitter is already pursuing in the Delaware Action to enforce the Merger Agreement against the Musk Defendants.

Twitter provides this statement only with respect to the Declaratory/Injunctive Claim for which it is a named defendant. Plaintiff's allegations with respect to the two Twitter directors, and Musk's relationships with them, are not relevant to the Declaratory/Injunctive Claim, and Twitter is not providing any statement with respect to the facts alleged as to Plaintiff's other claims against the Musk Defendants. But for the avoidance of doubt, Twitter vigorously disputes any allegation or notion that a Twitter director breached any fiduciary duties in connection with the Merger Agreement.

**Musk Defendants' Statement**:

The Musk Defendants dispute the allegations and characterizations in the Plaintiff's statement of facts, and do not adopt or endorse any of Twitter's characterizations of the facts. The Musk Defendants have filed motions to dismiss the FAC asserting, in addition to the forum and jurisdictional arguments discussed above, that Plaintiff has improperly brought derivative claims seeking to recover for damages purportedly suffered by Twitter as direct claims without complying with Rule 23.1's pleading requirements and has failed to state a claim for aiding and abetting and unjust enrichment. Dkt. Nos. 38-39.

As discussed in the motions, (Dkt. No. 38 at 6-9), Plaintiff seeks to enforce a purported agreement to which Twitter, not Plaintiff, is a party and to recover damages for suffered by the drop in Twitter's stock price following the negotiation of the Merger Agreement, which Plaintiff contends was caused by the Musk Defendants' alleged aiding and abetting of directors breaches of fiduciary duty. These claims are brought for harms suffered by Twitter and any recovery would benefit Twitter as a whole. They are therefore derivative. *Id.* (*citing e.g.*, *Brokerage Jamie Goldenberg Komen Rev Tru U/A 06/10/08 Jamie L Komen Tr. for Komen v. Breyer*, No. CV 2018-0773-AGB, 2020 WL 3484956, at *7 (Del. Ch. June 26, 2020) ("Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.").). As Plaintiff has not pleaded his claims pursuant to Rule 23.1 and cannot plead demand futility—since Twitter is already suing Mr. Musk to recover for the harm Plaintiff alleges—the FAC should be dismissed.

Additionally, the Musk Defendants have moved to dismiss the first and third causes of action for failure to state a claim. The FAC does not allege a breach of fiduciary duty by directors Dorsey or

Durban, let alone a majority of the Twitter Board, as required to state a claim for aiding and abetting. Dkt. 38 No. at 9-11. The FAC also fails to allege that either Mr. Musk or the Holding Companies knowingly participated in any breach of fiduciary duties—as to Mr. Musk, the FAC fails to allege that he conspired with Twitter's Board or participated in any of the Board's decisions outside of his efforts to acquire the company as a third-party bidder through arm's length negotiations (Dkt. 39 at 11-12 ) and as to the Holding Companies, the FAC only alleges that they "took" some unidentified "actions at Musk's direction to carry out his unlawful conduct" (FAC ⁋ 160)—or that directors Dorsey or Durban dominated or materially influenced the remainder of the Board to unanimously approve the merger. Dkt. No. 38 at 11 (*citing Morgan v. Cash*, No. CIV.A. 5053-VCS, 2010 WL 2803746, at *5 (Del. Ch. July 16, 2010)). And the third cause of action fails to the extent that it's based on the FAC's defective aiding and abetting claim. Dkt. 38 at 15.

On July 12, 2022, Twitter sued the Musk Defendants for specific performance in the Delaware Chancery Court Mr. Musk asserted counterclaims on August 4, 2022 and moved for leave to file amended counterclaims on August 29, 2022. (Delaware Action) Magistrate Judge Kim, in her ruling denying Plaintiff's Motion to Expedite and Coordinate Discovery, recognized that Plaintiff's claims and requested relief overlap substantially with the Delaware Action and noted that "until the Delaware action concludes, it is difficult to determine what claims, if any, Plaintiff will have remaining." (Dkt. 37 at 5.)

Additionally, a shareholder class action was filed in the Delaware Chancery Court on July 29, 2022 seeking specific performance of the Merger Agreement. (Delaware Stockholder Action)

And on April 12, 2022, a shareholder class action was filed in the Southern District of New York against Mr. Musk asserting that he violated Section 10(b) of the Securities and Exchange Act by allegedly failing to timely file a Form 13 when he acquired a certain amount of Twitter stock—the same allegations giving rise to Plaintiff's later-filed unjust enrichment claim. (*Rasella v. Musk*, S.D.N.Y. Case No. 1:22-cv-03026 ("S.D.N.Y. Action").) The Delaware Action, Delaware Stockholder Action, and S.D.N.Y. Actions shall be referred to collectively as "Related Actions."

**3. LEGAL ISSUES**

At this stage, the primary legal issues in this action include:

a. Whether Plaintiff has adequately alleged his causes of action;

b. Whether Defendants have valid defenses;

c. Whether class certification is appropriate.

d. Whether Plaintiff has standing to assert the Declaratory/Injunctive Claim. *See* Dkt. 38-39, 41.

e. Whether the Court has subject matter jurisdiction over Plaintiff's Declaratory/Injunctive Claim. *See* Dkt. 38-39, 41.

f. Whether the Court should decline to exercise jurisdiction over the Declaratory/Injunctive Claim under the *Brillhart* abstention doctrine. *See* Dkt. 41.

g. Whether the Court should dismiss this action and/or the Declaratory/Injunctive Claim on forum non conveniens grounds. *See* Dkt. 38-39, 41.

h. Whether the Court should transfer this action and/or the Declaratory/Injunctive claim to the District of Delaware under 28 U.S.C. § 1404(a). *See* Dkt. 41.

i. Whether the Court should dismiss the FAC on the grounds that it is a derivative action not pleaded in compliance with Rule 23.1. *See* Dkt. 38.

j. Whether the Court should dismiss the FAC for failure to state a claim. *See* Dkt. 38-39.

k. Whether the Court should dismiss the Unjust Enrichment cause of action pursuant to SLUSA, 15 U.S.C. § 77p(b). *See* Dkt. 38.

l. Whether discovery should proceed in this action or be stayed pending the resolution of the Related Actions, or, alternatively, stayed pending the resolution of all pleadings motions in this case. *See* Dkt. 38-39.

Defendants believe Plaintiff's Declaratory/Injunctive Claim, if adjudicated (which it should not be given the lack of standing and improper forum), would require that the Court decide a number of other issues of Delaware law relating to the Merger Agreement. At this time, however, it would be at the very least premature to consider those issues given the threshold issues of standing and forum that should be addressed first. Additionally, many of the legal issues relevant to the

JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT;
Case No. 22-CV-03074-CRB

Declaratory/Injunctive Claim will have already been resolved in the Delaware Action and, potentially, the Delaware Stockholder Action before this Court would need to address those issues.

## 4. MOTIONS

**Prior Motions:** On August 12, 2022, Plaintiff filed a Motion to Expedite and Coordinate Discovery, and a related motion to shorten the briefing schedule. Dkt. Nos. 26, 27. On August 16, 2022, the Court issued an order setting the briefing schedule (Dkt. No. 31), and on August 31, 2022, the Court denied the Motion to Expedite and Coordinate Discovery. Dkt. No. 37

**Pending Motions:** On September 9, Twitter filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), or in the alternative, Motion to Dismiss for Forum Non Conveniens or Transfer under 28 U.S.C. § 1404(a). Dkt. 41. Plaintiff's opposition is due October 11, and Twitter's reply is due November 10. Dkt. 20. The hearing is set for December 2. Twitter has also filed a joinder to the Musk Defendants' motions to stay discovery.

On September 9, Defendants Elon Musk, X Holdings I Inc., and X Holdings II Inc. ("Musk Defendants") filed Motions to Dismiss and Stay Discovery asserting that, among other things, the First Amended Complaint ("FAC") should be dismissed under forum non conveniens, the FAC should be dismissed as a derivative suit improperly filed without complying with Rule 23.1, Plaintiff's aiding and abetting claim should be dismissed for failure to state a claim, Plaintiff's declaratory relief claim should be dismissed for lack of standing, Plaintiff's unjust enrichment claim should be dismissed as barred by the Securities Litigation Uniform Standards Act ("SLUSA") and for failure to state a claim, and that discovery should be stayed pending the resolution of related actions or, alternatively, the resolution of all pleadings motions. Dkt. Nos. 38-39. Plaintiff's opposition is due October 11, and Twitter's reply is due November 10. Dkt. 20. The hearing is set for December 2.

**Anticipated Motions:**

Assuming discovery proceeds in a timely and cooperative manner, Plaintiff does not anticipate filing any motions at this time.

Twitter anticipates filing other dispositive motions at a later date should the Declaratory/Injunctive Claim survive the pending motion to dismiss.

The Musk Defendants anticipate that the Court will dismiss the FAC and accordingly do not plan to file any additional motions at this time. However, should this case proceed, the Musk Defendants anticipate that they will file motions for summary judgment and intend to oppose any motion for class certification. The Musk Defendants also anticipate, based in part on the fact that Plaintiff already filed a discovery motion before the parties conducted a Rule 26(f) conference, that some discovery motion practice may be necessary if the parties are unable to resolve disagreements regarding the scope and timing of discovery.

## 5. AMENDMENT OF PLEADINGS

### Plaintiff's Statement

Plaintiff does not anticipate amending his complaint at this time.

### Twitter's Statement

Twitter has filed a motion to dismiss under Rule 12, and its answer will not be due until the motion is decided. Twitter notes that Plaintiff has amended the complaint already, and his claims will likely be rendered moot by the Delaware Action and the Delaware Stockholder Action. Plaintiff filed this lawsuit four months ago and should not be afforded another opportunity to amend the complaint.

### Musk Defendants' Statement

The Musk Defendants have filed motions to dismiss under Rule 12 and forum non conveniens, and their answers will not be due until the motion is decided. The Musk Defendants assert that any amendment to the FAC, to the extent the entire action is not dismissed pursuant to forum non conveniens, would be futile.

## 6. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues in these actions.

7.  **DISCLOSURES**

**Plaintiff's Statement**

The parties conferred pursuant to Rule 26(f) on September 8, 2022. Initial disclosures are due on September 26, 2022, the deadline set by the Court. *See* Dkt. No. 5. There is no reason to deviate from this deadline.

**Twitter's Statement**

Twitter objects to initial disclosures taking place on September 26, 2022. Twitter believes that initial disclosures at this stage would be premature and should await resolution of the pending motions to dismiss regarding subject matter jurisdiction, standing, and forum, and the pending motion to stay discovery. Twitter also believes initial disclosures, and any further discovery, should await the resolution of the Delaware Action and the Delaware Stockholder Action, which are almost certain to render Plaintiff's Declaratory/Injunctive Claim moot and resolve many of the isssues relevant to this action, making initial disclosures an unnecessary exercise at this stage. Further, Twitter believes initial disclosures would be improper because Plaintiff has improperly attempted to circumvent the automatic stay of discovery under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), by bringing certain claims within this action that are barred by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1). Initial disclosure requirements are subject to the automatic stay of discovery under the PSLRA. *Medhekar v. U.S. Dist. Ct.*, 99 F. 3d 325, 329 (9th Cir. 1996).[3]

**Musk Defendants' Statement**.

The Musk Defendants object to making initial disclosures on September 26, 2022 as unnecessary and premature. The pleadings are not settled in this matter and the Court is not scheduled to hear motions to dismiss until December 2, 2022, and the Musk Defendants believe it is

---

[3] Twitter asked that Plaintiff stipulate that initial disclosures not take place until after the case management conference, which is set only four days after the initial disclosure deadline identified by Plaintiff, so that the Court could address threshold issues that will necessarily impact the case schedule and that relate to and impact initial disclosures. Plaintiff declined. Twitter has set forth its objection to initial disclosures taking place prior to a decision on the pending motions to dismiss to comply with Rule 26(a)(1)(C).

highly likely the case will be dismissed or stayed as a result. It is unclear which, if any, of Plaintiff's claims will proceed in this action or what the scope of those claims may be. Additionally, certain of Plaintiff's claims—if not his entire action—are contingent on the outcomes of the Related Actions, including the Delaware Action, which is set for trial on October 17. The Musk Defendants take the position that initial disclosures should not be made until after the Related Actions (or at the very least the Delaware Action) are resolved or until the conclusion of all pleadings motions in this matter. At the very earliest, Initial Disclosures should be due 14 days after the issuance of the Delaware Chancery Court's final decision in the Delaware Action.

**8. DISCOVERY**

**Pending Discovery Motions**

The Musk Defendants have moved to stay discovery pending resolution of the Delaware Action and the Delaware Stockholder Action, or alternatively, a decision on Defendants' motions to dismiss. Dkt. 39, 40. Twitter has filed a joinder to the motion.

**Plaintiff's Statement**

Plaintiff is opposed to any stay of discovery. A stay of discovery is unwarranted and would not result in any efficiencies since Defendants have already produced a large volume of documents in the Delaware Action and issued subpoenas to over 90 third parties in the Delaware Action. At a minimum, those documents should be promptly produced to Plaintiff here since Defendants repeatedly emphasize the overlapping factual and legal issues that supposedly exist in both this case and the Delaware Action. Doing so will not involve any undue burden and will facilitate the narrowing of the additional discovery that needs to take place in the present action.

**Twitter's Statement**

For the reasons set forth in Twitter's joinder to the Musk Defendants' motions to stay discovery, Twitter believes discovery should be stayed pending resolution of the Delaware Action and Delaware Stockholder Action, or in the alternative, pending a decision on Defendants' motions to dismiss. Twitter believes that the threshold issues relating to jurisdiction and forum should be decided before discovery proceeds in this case. Twitter also believes that Plaintiff should not be permitted to seek discovery, if as Musk contends, Plaintiff's claims are derivative in nature and

belong to Twitter. *See* Dkt. 38, 39. Plaintiff cannot pursue the claim derivatively, or any related discovery, until he satisfies Rule 23.1. Additionally, Twitter believes discovery should be stayed because Plaintiff has improperly attempted to circumvent the automatic stay of discovery under the PSLRA by bringing claims that the Musk Defendants argue are barred by SLUSA. "SLUSA's purpose is to prevent plaintiffs from circumventing the PSLRA discovery stay." *Salameh v. Tarsadia Hotels*, 2012 WL 12941995, at *2 (S.D. Cal. July 2, 2012). If Plaintiff were allowed to proceed with discovery for claims barred by SLUSA while a motion to dismiss based on SLUSA is pending, it would undermine SLUSA's purpose.

**Musk Defendants' Statement**

The Musk Defendants have moved for a stay of discovery in this matter pending the resolution of the Related Actions or, alternatively, the conclusion of all pleadings motions in this matter. This action arises from the same transaction and seeks the same relief as the Related Actions—i.e., enforcement of the Merger Agreement and damages allegedly suffered as a result of Mr. Musk's purported failure to timely make allegedly required disclosures. A stay of discovery pending the resolution of the Related Actions would promote the orderly course of justice by avoiding unnecessary duplicative litigation in multiple forums. Plaintiff would not be harmed by a stay—the Delaware Action is set for trial in less than two weeks from this Case Management Conference and all evidence in that matter relevant to Plaintiff's claims has been preserved in connection with the ongoing litigation—but on the other hand, proceeding with discovery would be an unnecessary distraction from the rapidly approaching trial and other pending litigation and would cause considerable hardship to the Musk Defendants. The Musk Defendants are not proposing an indefinite stay, but rather propose that the parties and the Court schedule a status conference for early next year to assess the progress of the Related Actions and determine when it would be appropriate to open discovery.

**Discovery taken to date:**

Plaintiff served Requests for the Production of Documents on the Defendants. The responses to those requests are due on October 10, 2023.

**Scope of anticipated discovery:**

Plaintiff believes that discovery should commence immediately and the Defendants should begin producing documents in short order given the fact that much of the relevant discovery has (likely) already been collected, reviewed, and produced in the related Delaware Action. . The targeted areas of document discovery may include but are not limited to, negotiations leading up to the execution of the merger agreement and all of the related subsequent events , including Defendant Musk's attempt to walk away from the deal and the resulting litigation in Delaware.  As mentioned above, Plaintiff anticipates that discovery including depositions will overlap significantly with the discovery currently taking place in the Delaware Action.  Plaintiff also anticipates subpoenas to numerous third parties relating to Musk's reasons for the merger, his demand for due diligence despite waiving due diligence in the Merger Agreement, and financing issues surrounding the Merger.

For the same reasons, Defendants believe discussions regarding the scope of discovery should await resolution of the two pending Delaware actions and a decision on Defendants' pending motions to dismiss in this case. The resolution of the Delaware Action and the Delaware Stockholder Action will likely render the claims and issues in this action moot, meaning discovery in this action would serve no practical purpose. Even if some portion of Plaintiff's claims still present live issues, the resolution of the Delaware Action and the Delaware Stockholder Action could significantly narrow the scope of discovery. Such an approach would also avoid extensive, unnecessary, and duplicative third-party discovery that Plaintiff intends to seek.

**Proposed limitations or modifications of the discovery rules:**

Plaintiff anticipates needing more than 10 depositions.

Defendants believe that it is premature to discuss proposed limitations or modifications to discovery rules as Plaintiff's claims could be rendered moot or significantly narrowed upon resolution of the Delaware Action and the Delaware Stockholder Action and after a decision on Defendants' motions to dismiss. To the extent there is any discovery, presumptive limits on depositions under the rules should apply. Twitter also believes any written discovery should be limited to 25 interrogatories and 25 requests for production per party.

**Whether the parties have considered entering into a stipulated e-discovery order:**

Plaintiff anticipates a protocol governing ESI discovery in this matter.

Defendants believe that it is premature to discuss the scope of an ediscovery order while the motions to dismiss and the motions to stay are pending and until the Delaware Action and the Delaware Stockholder Action are resolved. However, to the extent discovery moves forward, Defendants would work towards a stipulation with Plaintiff on a protocol governing ESI discovery in this matter.

**9.    CLASS ACTIONS**

Plaintiff anticipates filing a motion for class certification.  The parties have reviewed the Procedural Guidance for Class Action Settlements.

Defendants believe that this action should not proceed further until the pending motions to dismiss on threshold issues of jurisdiction and forum are resolved. If a schedule is entered, class certification should be addressed on a schedule that precedes the close of fact discovery.

**10.    RELATED CASES**

**The Delaware Action**

As noted above, Twitter brought a lawsuit against the Musk Defendants seeking specific performance of the Merger Agreement. The case has been set to proceed on a highly expedited schedule, with trial beginning on October 17, 2022.

**The Delaware Stockholder Action**

The Delaware Stockholder Action is pending before the same judge (Chancellor Kathaleen St. J. McCormick) hearing the Delaware Action, and a motion to dismiss that putative class action has already been fully briefed. The plaintiff in the Delaware Stockholder Action has asked that his claims relating to the enforcement of the Merger Agreement be tried on a class-wide basis on the same schedule as the Delaware Action.

There are no related cases in this District.

**Musk Defendants' Statement**

In addition to the Delaware Action and Delaware Stockholder Action, the Musk Defendants' contend that the S.D.N.Y. Action, described below, is a related case.

### The S.D.N.Y. Action

On April 12, 2022, a shareholder class action was filed in the Southern District of New York against Mr. Musk asserting that he violated Section 10(b) of the Securities and Exchange Act by allegedly failing to timely file a Form 13 when he acquired a certain amount of Twitter stock—the same allegations giving rise to Plaintiff's later-filed unjust enrichment claim.

### Plaintiff's Statement

Plaintiff does not believe the SDNY action is related. It is brought on behalf of a completely different class -- persons who bought Twitter stock during a short time period, and who may no longer own the stock. The present case is brought on behalf of current holders of Twitter stock. Further, the SDNY action asserts a completely different legal claim (a statutory fraud claim under Section 10b-5) and is limited to facts concerning Musk's failure to timely file a Form 13D. The present case alleges much more comprehensive wrongdoing by Musk in connection with the pending Merger.

**11. RELIEF**

The relief sought by the Plaintiff and putative class, includes but is not limited to:

a. Monetary damages against Defendants Musk, X Holdings I, and X Holdings II, to be determined at trial;

b. Declaratory relief as to all Defendants, including Twitter;

c. Injunctive relief as to all Defendants, including Twitter;

d. Plaintiff's costs in connection with these actions, including attorneys' fees, consultant and expert fees, and other expenses; and

e. Any other relief that the Court deems just and proper.

**12. SETTLEMENT AND ADR**

Pursuant to ADR Local Rule 3-5 and Civil Local Rule 16-8, on September 8, the parties met and conferred regarding the available dispute resolution options.

Plaintiff believes that settlement discussions would be productive, and that discovery will inform the parties' evaluation and negotiations.

Twitter believes that Plaintiff's request for declaratory and injunctive relief is covered by the claim brought by Twitter against the Musk Defendants in the Delaware Actiona, and for that reason, does not believe ADR would be productive with respect to Plaintiff's sole claim against Twitter under the circumstances. In any event, Twitter believes that settlement discussions and ADR would be premature while the motions to dismiss are pending and before the Delaware Action and the Delaware Stockholder Action reach resolution.

**13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The Defendants have declined to proceed before a Magistrate Judge.

**14.    OTHER REFERENCES**

The parties agree that these cases are not suitable for reference to binding arbitration or a special master.

**15.    NARROWING OF ISSUES**

The parties have not identified any issues that may be narrowed at this time.

**16.    EXPEDITED TRIAL PROCEDURE**

Plaintiff believes this case is appropriate for an expedited pre-trial procedure given the quickly moving Delaware Action and the amount of discovery that will be completed in that litigation.  The coordination and sharing of discovery from the Delaware Action will allow discovery in this case to move forward on a faster schedule than typical.  Plaintiff's proposed schedule below reflects such an expedited schedule.

Defendants do not believe expedition is warranted and note that Plaintiff's motion for expedited and coordinated discovery has already been denied.

**17.    SCHEDULING**

**Plaintiff's Statement**

Based on a proposed trial date of June 5, 2023, Plaintiff proposes the following deadlines, pending the parties being cooperative in discovery:

|  | **Plaintiff's Proposal** | **Defendants' Proposal** |
|---|---|---|
| Initial Disclosures | September 30, 2022 | |

| Motion to Dismiss[4] | September 9, 2022 | |
|---|---|---|
| - Opposition | October 11, 2022 | |
| - Reply | November 10, 2022 | |
| - Proposed Hearing Date | December 2, 2022 | |
| Fact Discovery Cutoff | May 31, 2023 | |
| Expert Disclosures | July 31, 2023 | |
| Last Day to File Dispositive and *Daubert* Motions | August 31, 2023 | |
| Final Pretrial Conference | October 23, 2023 | |
| Jury Trial | October 30, 2023 | |

### **Twitter's Statement**

Twitter believes it is premature to enter a case schedule through trial before the pending motions to dismiss are decided and before the Delaware Action and Delaware Stockholder Action are fully resolved. Twitter proposes that the Court order the parties to meet and confer on a scheduling order within 14 days after the pending motions to dismiss are decided. The motions to dismiss will likely result in dismissal of this action or significant narrowing of the relevant issues. Further, the Delaware Action, which is scheduled for trial on October 17, and the Delaware Stockholder Action, in which the plaintiff has asked for the same trial date, are all but certain to render the Declaratory/Injunctive Claim moot before briefing on the motions to dismiss conclude. It would be a significant waste of the parties' and the court's resources to proceed on a fixed schedule before then. It would also be difficult to devise a reasonable schedule without the motions having been decided, particularly if this case is transferred to the District of Delaware. Further, if the request for a stay of discovery is granted, this will impact the case schedule. In any event, the schedule proposed by Plaintiff is unworkable. As a preliminary matter, it is missing key deadlines, including appropriate deadlines for class certification proceedings, rebuttal expert reports, and reply

---

[4] The parties have stipulated to this schedule and the Court has approved the stipulation. Dkt. No. 20.

JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT;
Case No. 22-CV-03074-CRB

expert reports. Further, for an action of this magnitude, the schedule fails to include sufficient time for fact and expert discovery.

**Musk Defendants' Statement**

The Musk Defendants object to Plaintiff's request for Expedited Trial Procedure and his unrealistic case management schedule. The existence of the pending Delaware Action provides a compelling justification to stay discovery in this case, not speed it up. Since the relief Plaintiff seeks may be mooted or precluded based on the outcome of the Delaware Action, there is no reason to proceed with this case until it is resolved. Otherwise, Plaintiff would have the parties scramble to complete discovery while Defendants simultaneously conduct a trial on similar issues that is likely to moot or preclude Plaintiff's claims.

Plaintiff's proposed schedule and request for an October 2023 trial date is unreasonable. For example, Plaintiff seeks to end fact discovery on May 31, 2023 despite the fact that motions to dismiss will not even be heard until December 2, 2022. Even if the Court denies the Defendants' motions to dismiss in their entirety on December 2—which is very unlikely—Plaintiff proposes to have the parties complete discovery in less than six months after Defendants answer the FAC. On the other hand, if the Court grants Defendants' motions to dismiss with leave to amend, the parties will still be engaged in pleadings motions during much of the limited period that Plaintiff has allowed for discovery. Additionally, Plaintiff seeks class certification but does not build in any time for briefing or opposing such a motion in his schedule.

Instead of adopting the Plaintiff's schedule, the Court should stay discovery pending resolution of the Related Actions—at the very least the Delaware Action—or all pleadings motions and set a status conference for early next year to schedule trial and discovery.

**18.    TRIAL**

Plaintiff has requested a jury trial. Plaintiff believes that the trial will last approximately 15 court days.

Twitter believes it is premature to discuss the length of any trial at this stage, but notes that a jury trial is not available for Plaintiff's Declaratory/Injunctive Claim because it seeks relief that is equitable in nature. *See Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993)

JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT;
Case No. 22-CV-03074-CRB

1    The Musk Defendants believe that it is premature to estimate a length of trial because the

2    pleadings are not resolved and it is unclear which, if any, of Plaintiff's claims will be at issue.

3    **19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

4         Twitter has filed a Certificate of Interested Parties.

5         X Holdings II, Inc. is a subsidiary of X Holdings I, Inc. There are no other related entities.

6    **20.    PROFESSIONAL CONDUCT**

7         All attorneys of record for the parties have reviewed the Guidelines for Professional

8    Conduct for the Northern District of California.

9    **21.    OTHER**

10        The parties have no other issues to raise at this time.

11   Dated: September 16, 2022

12   **COTCHETT, PITRE & MCCARTHY, LLP**          **BOTTINI & BOTTINI, INC.**
     */s/ Tyson C. Redenbarger*                    */s/ Francis A. Bottini, Jr.*

13   Joseph W. Cotchett (SBN 36324)               Francis A. Bottini, Jr. (SBN: 175783)
     jcotchett@cpmlegal.com                       fbottini@bottinilaw.com
14   Mark C. Molumphy (SBN 168009)                Anne B. Beste (SBN 326881)
     mmolumphy@cpmlegal.com                       abeste@bottinilaw.com
15   Anne Marie Murphy (SBN 202540)               Albert Y. Chang (SBN 296065)
     ammurphy@cpmlegal.com                        achang@bottinilaw.com
16   Tyson C. Redenbarger (SBN 294424)            Yury A. Kolesnikov (SBN 271173)
     tredenbarger@cpmlegal.com                    ykolesnikov@bottinilaw.com
17   Julia Q. Peng (SBN 318396)                   Nicholas H. Woltering (SBN 337193)
     jpeng@cpmlegal.com                           nwoltering@bottinilaw.com
18
19   *Counsel for Plaintiff William Heresniak*

20   **SHEARMAN & STERLING LLP**
21   */s/ Paula H. Anderson*

22   Daniel H.R. Laguardia (SBN 314654)
     535 Mission Street, 25th Floor
23   San Francisco, CA  94105
     Telephone:   (415) 616-1100
24   Fax:  (415) 616-1199

25   Adam S. Hakki (admitted *pro hac vice*)
     Paula H. Anderson (admitted *pro hac vice*)
26   599 Lexington Avenue
     New York, New York 10022
27   Telephone:  (212) 848-4000
     Fax:  (212) 848-7179
28   *Counsel for Defendant Twitter, Inc.*

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
*/s/ Joseph C. Sarles*
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:      (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Elon Musk,  X Holdings I, Inc., and X*
*Holdings II, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatory.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of September 2022, at Burlingame, California.


*/s/ Tyson C. Redenbarger*
Tyson C. Redenbarger

JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT;
Case No. 22-CV-03074-CRB