QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendants Elon Musk,
X Holdings I, Inc.,
X Holdings II, Inc. and Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WILLIAM HERESNIAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., and TWITTER, INC.,<br><br>Defendant. | CASE NO. 3:22-CV-03074-CRB-SK<br><br>**DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br><br>Judge:       Hon. Charles R. Breyer<br>Courtroom: 6, 17th Floor<br><br>Hearing Date: February 3, 2022<br>Time:        10 a.m. |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT .................................................................................1

STATEMENT OF ISSUES TO BE DECIDED....................................................2

RELEVANT ALLEGATIONS AND BACKGROUND .....................................2

LEGAL STANDARD ............................................................................................3

ARGUMENT ..........................................................................................................3

I.  THE SECOND AMENDED COMPLAINT DOES NOT SOLVE THE VENUE
    PROBLEM CREATED BY BRINGING CLAIMS IN THE WRONG FORUM ................3

    A.  The Claims Here Fall Within The Forum-Selection Clauses.....................4

    B.  The Forum-Selection Clauses Are Valid and Enforceable .......................6

    C.  The Public Interest Weighs In Favor Of Enforcement................................6

    D.  The Whole of the Second Amended Complaint is Futile............................7

II. THE SECOND AMENDED COMPLAINT DOES NOT SOLVE THE
    STANDING PROBLEMS INHERENT IN PLAINTIFF'S CLAIMS .................7

    A.  Plaintiff's Claims Are Indistinguishable From Those of All Shareholders .............8

    B.  Plaintiff's "Mismanagement" Claims are Derivative.................................9

    C.  Plaintiff Cannot Bring a Direct Claim Under the Merger Agreement ......................9

    D.  Plaintiff Cannot Bring a Derivative Claim After The Merger Has Closed.............11

    E.  Plaintiff Does Not Attack The Fairness of the Merger—Only Its Timing..............11

III. THE SECOND AMENDED COMPLAINT DOES NOT SOLVE THE
     PREEMPTION PROBLEM CREATED BY BRINGING SECURITIES LAW
     CLAIMS UNDER STATE LAW ........................................................................13

CONCLUSION ......................................................................................................15

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013) ........................................................................ 4, 6

*Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*,
    73 A.3d 934 (Del. Ch. 2013) .............................................................. 4

*Brokerage Jamie Goldenberg Komen Rev Tru U/A 06/10/08 Jamie L Komen Tr. for Komen
    v. Breyer*, 2020 WL 3484956 (Del. Ch. June 26, 2020)...................... 12

*Chancery Court in Crispo v. Musk*,
    2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ....................................... 10

*Chiu v. Mann*,
    2003 WL 716247 (N.D. Cal. Feb. 24, 2003) ......................................... 3

*Comrie v. Enterasys Networks, Inc.*,
    2004 WL 293337 (Del. Ch. Feb. 17, 2004) ......................................... 10

*Denton v. Dep't Stores Nat. Bank*,
    2011 WL 3298890 (W.D. Wash. Aug. 1, 2011) ................................... 13

*FAS Techs., Ltd. v. Dainippon Screen Mfg. Co.*,
    2001 WL 637451 (N.D. Cal. May 31, 2001) ......................................... 3

*Feldman v. Cutaia*,
    951 A.2d 727 (Del. 2008) .................................................................... 8

*Fleming v. Charles Schwab Corp.*,
    878 F.3d 1146 (9th Cir. 2017) ..................................................... 13, 14

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................ 3

*Golaine v. Edwards*,
    1999 WL 1271882 (Del. Ch. Dec. 21, 1999) ................................. 12, 13

*Granite Re, Inc. v. N. Lines Contracting, Inc.*,
    478 F. Supp. 3d 772 (D. Minn. 2020) .................................................. 7

*Houseman v. Sagerman*,
    2014 WL 1600724 (Del. Ch. Apr. 16, 2014) ..................................... 12

*In re Apple Iphone Antitrust Litig.*,
    2021 WL 5181862 (N.D. Cal. Nov. 8, 2021).......................................... 3

*In re: CytRx Corp. S'holder Derivative Litig.*,
    2015 WL 9871275 (C.D. Cal. Oct. 30, 2015) .................................... 4, 7

*In re Facebook*,
    367 F. Supp. 3d 1108 (N.D. Cal. 2019) ...................................................................... 4, 5

*In re First Interstate Bancorp Consol. S'holder Litig.*,
    729 A.2d 851 (Del. Ch. 1998) ..................................................................................... 8, 9

*In re Gen. Motors Class H S'holders Litig.*,
    734 A.2d 611 (Del. Ch. 1999) ......................................................................................... 12

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
    160 A.3d 484 (Del. Ch. 2017) ......................................................................................... 11

*In re Match Grp., Inc. Derivative Litig.*,
    2022 WL 3970159 (Del. Ch. Sept. 1, 2022) ................................................................... 11

*In re NYMEX S'holder Litig.*,
    2009 WL 3206051 (Del. Ch. Sept. 30, 2009) ................................................................. 11

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
    2022 WL 263312 (D. Del. Jan. 27, 2022), *report and recommendation adopted by*,
    2022 WL 957761 (D. Del. Mar. 30, 2022) ........................................................................ 5

*In re Stillwater Cap. Partners Inc. Litig.*,
    851 F. Supp. 2d 556 (S.D.N.Y. 2012) ............................................................................... 8

*In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*,
    2018 WL 3120804 (Del. Ch. June 25, 2018) ................................................................... 12

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) ........................................................................................... 3

*Jaco v. Winco Holdings, Inc.*,
    2019 WL 1438069 (E.D. Cal. Mar. 31, 2019) ................................................................. 13

*Johnson v. Buckley*,
    356 F.3d 1067 (9th Cir. 2004) ........................................................................................... 3

*Kramer v. W. Pac. Indus., Inc.*,
    546 A.2d 348 (Del. 1988) ................................................................................................... 9

*Lee v. Fisher*,
    34 F.4th 777 (9th Cir. 2022) .............................................................................................. 4

*Lewis v. Anderson*,
    477 A.2d 1040 (Del. 1984) ............................................................................................... 11

*Lewis v. Ward*,
    852 A.2d 896 (Del. 2004) ................................................................................................. 11

*Lockman Found. v. Evangelical All. Mission*,
    930 F.2d 764 (9th Cir. 1991) ............................................................................................. 7

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ............................................................................................................... 6

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) ........................................................................... 5

*Manila Indus., Inc. v. Ondova Ltd. Co.*,
    334 F. App'x 821 (9th Cir. 2009) ..................................................................... 5

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 at 85 (2006) ................................................................................ 14

*Merzin v. Provident Fin. Grp., Inc.*,
    311 F. Supp. 2d 674 (S.D. Ohio 2004) ........................................................... 11

*Meyer v. Howmedica Osteonics Corp.*,
    2015 WL 728631 (S.D. Cal. Feb. 19, 2015) ..................................................... 6

*Miesen v. Munding*,
    822 F. App'x 546 (9th Cir. 2020) ..................................................................... 8

*Miletak v. Allstate Ins. Co.*,
    2008 WL 4291548 (N.D. Cal. Sept. 18, 2008) ................................................. 3

*Minghong Inv., Inc. v. Felix Chac Chuo*,
    2022 WL 2189365 (C.D. Cal. Mar. 9, 2022) ................................................... 7

*Morgan v. Cash*,
    2010 WL 2803746 (Del. Ch. July 16, 2010) ................................................. 13

*NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*,
    922 A.2d 417 (Del. Ch. 2007) ....................................................................... 10

*Nat. Res. Def. Council v. Pruitt*,
    2017 WL 5900127 (N.D. Cal. Nov. 30, 2017) ................................................. 3

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
    904 F.3d 821 (9th Cir. 2018) ......................................................................... 14

*Nunes v. Ashcroft*,
    375 F.3d 805(9th Cir. 2003) ............................................................................ 1

*Parnes v. Bally Ent. Corp.*
    722 A.2d 1243 (Del. 1999) .................................................................. 11, 12, 13

*Rasella v. Musk*,
    S.D.N.Y. Case No. 1:22-cv-03026 ................................................................. 14

*Saul v. United States*,
    928 F.2d 829 (9th Cir. 1991) ........................................................................... 3

*SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.*,
    2019 WL 13203776 (N.D. Cal. Oct. 10, 2019) ............................................... 9

*Sheldon v. Pinto Tech. Ventures, L.P.*,
    2019 WL 336985 (Del. Ch. Jan. 25, 2019), *aff'd*, 220 A.3d 245 (Del. 2019) ................... 9

iii          Case No. 3:22-CV-03074-CRB-SK

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

*State of Wisconsin Inv. Bd. v. Bartlett*,
    2000 WL 238026 (Del. Ch. Feb. 24, 2000) .................................................................... 12

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ............................................................................................... 10

*Vistage Worldwide, Inc. v. Knudsen*,
    2020 WL 71140 (S.D. Cal. Jan. 7, 2020) ........................................................................... 6

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ..................................................................................... 4, 5, 6

*Yue v. MSC Software Corp.*,
    2016 WL 3844366 (N.D. Cal. July 15, 2016) .............................................................. 7, 13

*Zoren v. Genesis Energy, L.P.*,
    195 F. Supp. 2d 598 (D. Del. 2002) ................................................................................ 15

**<u>Statutory Authorities</u>**

15 U.S.C. § 77p(b) .................................................................................................................. 14

15 U.S.C. § 77p(d) .................................................................................................................. 15

15 U.S.C. § 77p(f)(1) .............................................................................................................. 15

15 U.S.C. § 77p(f)(2)(A) ........................................................................................................ 14

**<u>Treatises</u>**

*L. of Corp. and Bus. Org.*, , § 13.10 (3d ed. 2019) .............................................................. 9

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

### SUMMARY OF ARGUMENT

Plaintiff's proposed Second Amended Complaint is an exercise in futility as it repeats (and otherwise does nothing to fix) the glaring holes in plaintiff's first two attempts to plead shareholder claims.  As previously outlined in defendants' respective motions to dismiss (*see* Dkt. 38, 39, 41) plaintiff's claims are fatally flawed—as this Court is not the correct venue to bring shareholder claims, plaintiff does not have standing as a shareholder to raise them in the first place, and federal securities law otherwise pre-empts his attempt to do so.  Even with this third bite at the apple, plaintiff continues to blithely ignore these threshold matters.[1]

As argued herein, *first*, plaintiff has filed in the wrong forum, violating the Twitter Bylaws' forum-selection clause, and a similar provision in the Twitter/Musk Merger Agreement. The former mandates Delaware Court of Chancery, and the latter, state and federal courts in Delaware, as the proper forum.  It is well established that such provisions are to be enforced on their terms.  Indeed, there is no reason not to do so here, as the claims are principally brought under Delaware law, the corporate defendants are all incorporated in Delaware and neither Mr. Musk nor Mr. Heresniak live in California.

*Second*, plaintiff has brought suit seeking to enforce an agreement to which *Twitter* is a party, seeking redress for alleged harm to the *Twitter* merger—under a theory that all shareholders have thus been injured.  With no distinct, direct allegation of harm alleged, this is therefore, at best, a derivative suit.  However, a derivative suit here is self-defeating because plaintiff has not complied with the derivative suit pleading requirements of Rule 23.1.  Further, plaintiff has otherwise pled himself out of standing by conceding that the merger has closed and he is no longer a derivative shareholder able to act on behalf of the company.

*Third*, plaintiff's state law claim for unjust enrichment is barred by the Securities Litigation Uniform Standards Act because it is a securities fraud claim dressed up as a state law

---

[1]  Plaintiff requests that ruling on the "merits" or "facts" wait.  Mot. at 11.  There is no reason to do so, especially as to **threshold** matters raised herein.  These defects "could not possibly be cured by the allegation of other facts." Mot. at 11 (*quoting Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003)).

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

tort. In sum, this is a lawsuit in the wrong forum, brought by the wrong person, asserting the wrong law.  It would be futile to allow an amendment that continues these claims.

## STATEMENT OF ISSUES TO BE DECIDED

Should plaintiff be granted leave to file his proposed Second Amended Complaint in the Northern District of California where the Complaint would be futile because (1) it is subject to dismissal under the doctrine of forum non conveniens because it violates multiple forum-selection clauses mandating that the action be brought in Delaware, (2) it brings claims and seeks relief that are derivative in nature and plaintiff lacks standing to bring a derivative suit, (3) it asserts a claim for unjust enrichment that is preempted by the Securities Litigation Uniform Standards Act.

## RELEVANT ALLEGATIONS AND BACKGROUND

The backdrop to the claims of the purported Second Amended Complaint is the well-publicized events leading up to Mr. Musk's ultimate purchase of Twitter in October 2022 pursuant to a "Merger Agreement" (*see* Dkt. 44-1).  The relevant timeline of the merger is outlined in defendants' respective prior motions to dismiss (*see e.g.*, Dkt. 38 at 3-6) and adopted herein.

The Second Amended Complaint asserts that plaintiff is a Virginia resident (SAC ¶ 39) who claims on his own as a Twitter stockholder (*id.*) and on "behalf of all stockholders of Twitter, Inc." (*id.* ¶ 43) damages for the "harm[] [caused] by Defendants' unlawful conduct in connection with Musk's buyout of Twitter" (*id.*).

The causes of action in the proposed Second Amended Complaint make: (1) a claim under Delaware law against Mr. Musk and the Holding Companies (*i.e.*, X Holdings I, Inc. and X Holdings II, Inc.), for allegedly aiding and abetting Twitter directors to breach their fiduciary duties to Twitter in connection with the merger (*id.* ¶¶ 195-202), (2) a claim for declaratory or injunctive relief against all defendants seeking a declaration of the parties' rights under the Merger Agreement (*id.* ¶¶ 203-205), and (3) a claim under Delaware law for unjust enrichment against Mr. Musk for unspecified "monies and benefits [he] unjustly acquired through his improper conduct" *(id.* ¶ 208).

Plaintiff's First Amended Complaint ("FAC") (Dkt. 7) proceeded on a theory that shareholders were damaged by Twitter's declining share price following the announcement of the

merger (FAC ¶¶ 155-62) and a theory that plaintiff was entitled to a declaration to enforce the Merger Agreement, presumably by forcing Mr. Musk to complete the purchase (*id.* ¶¶ 163-65). That issue is now moot, as plaintiff concedes the merger has gone ahead, and plaintiff (as well as other Twitter shareholders) received their buy-out in October 2022.  Mot. at 7.

Plaintiff's theory of damage in his proposed Second Amended Complaint has therefore shifted,  focusing now on a theory that plaintiff and shareholders have instead been damaged by a six-week delay in the closing of the Merger Agreement.  (SAC ¶¶ 201, 205, 207).  In other words, plaintiff was paid for his shares, but premises this action on allegations that it was untimely.

## LEGAL STANDARD

"[L]eave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). "Under Rule 15 the Court weighs the following factors in ruling on a motion for leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the movant has previously amended its pleadings to cure deficiencies." *In re Apple Iphone Antitrust Litig.*, 2021 WL 5181862, at \*3 (N.D. Cal. Nov. 8, 2021) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)).  Not all factors carry the same weight.  "Futility of amendment can, *by itself*, justify the denial of a motion for leave to amend[.]"  *Nat. Res. Def. Council v. Pruitt*, 2017 WL 5900127, at \*6 (N.D. Cal. Nov. 30, 2017) (internal quotations and citations omitted) (emphasis added).  "An amendment to a pleading is 'futile' when 'the amended complaint would be subject to dismissal.'"  *Miletak v. Allstate Ins. Co.*, 2008 WL 4291548, at \*2 (N.D. Cal. Sept. 18, 2008) (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

## ARGUMENT

### I.   THE SECOND AMENDED COMPLAINT DOES NOT SOLVE THE VENUE PROBLEM CREATED BY BRINGING CLAIMS IN THE WRONG FORUM

"It is plaintiff who bears the burden of demonstrating the . . . propriety of venue within the district in which he files his complaint."  *Chiu v. Mann*, 2003 WL 716247, at \*2 (N.D. Cal. Feb. 24, 2003).  Where plaintiff cannot meet this burden, a motion for leave to amend should be denied. *FAS Techs., Ltd. v. Dainippon Screen Mfg. Co.*, 2001 WL 637451, at \*6 (N.D. Cal. May 31, 2001)

1   ("an amendment would be futile [where plaintiff] has not demonstrated that the Court has venue

2   . . . with respect to [his] claims.")

3          Plaintiff here cannot overcome the fact that bringing suit in this forum ignores both the

4   Twitter By-Laws[2] and the Merger Agreement, that call for venue in Delaware.  These "forum-

5   selection clause[s] should be given controlling weight in all but the most exceptional cases," *Atl.*

6   *Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013), and "must [be]

7   enforc[ed] . . . unless the contractually selected forum affords the plaintiffs no remedies

8   whatsoever." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1092 (9th Cir. 2018).

9   Here, both clauses should be enforced on their terms because plaintiff will not be able to meet his

10  burden[3] of showing (1) the lawsuit does not fall within the scope of the forum-selection clauses,

11  (2) the clauses are invalid and unenforceable, and (3) that the public interest factors weigh against

12  enforcement.  *See id.* at 1086-88.

13          **A.      The Claims Here Fall Within The Forum-Selection Clauses**

14          The Bylaws' forum-selection clause states that Delaware Chancery Court "shall . . . be the

15  sole and exclusive forum for . . . any action asserting a claim of breach of fiduciary duty owed by,

16  or otherwise wrongdoing by, any director." (Dkt. 38-1 at 288 Bylaws at Art. VIII.)[4]   The First

17  Cause of Action asserting claims for aiding and abetting a breach of fiduciary duty by Twitter

18  directors (SAC ¶¶ 195-202) squarely falls within the ambit of this clause, as plaintiff has

19

20  [2]   When plaintiff purchased stock, he agreed to be bound by Twitter's valid Bylaws—including

21  the forum-selection clause.  *See In re Facebook*, 367 F. Supp. 3d 1108, 1121 (N.D. Cal. 2019)
    (enforcing forum-selection clause in certificate of incorporation); *Boilermakers Loc. 154 Ret.*

22  *Fund v. Chevron Corp*., 73 A.3d 934, 940 (Del. Ch. 2013) ("a forum selection clause adopted by a
    board with the authority to adopt bylaws is valid and enforceable under Delaware law to the same

23  extent as other contractual forum selection clauses."); *In re: CytRx Corp. S'holder Derivative*
    *Litig*., 2015 WL 9871275, at *4 (C.D. Cal. Oct. 30, 2015); *see Lee v. Fisher*, 34 F.4th 777, 779

24  (9th Cir. 2022) (affirming dismissal of shareholder suit due to forum selection clause in corporate
    bylaws).

25  [3]   Plaintiff "must bear the burden of showing why" the clause should not be enforced.  *Atl.*

26  *Marine*, 571 U.S. at 63.
    [4]    The clause contains a narrow exception for cases in which the Chancery Court lacks

27  jurisdiction.  (Dkt. 38-1 at 288 Bylaws at Art. VIII.)  The SAC includes no allegations suggesting
    such a bar exists.

28

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

specifically alleged wrongdoing by a director (*e.g.*, SAC ¶ 93), and to prove his claim, plaintiff must establish that the directors owed and breached a fiduciary duty to Twitter in the first place. *See In re Facebook*, 367 F. Supp. 3d at 1120 (dismissing aiding and abetting claim in shareholder action pursuant to forum-selection clause covering "any action asserting a claim of breach of fiduciary duty owed by, or other wrongdoing by, any director"); *In re Pattern Energy Grp. Inc. Sec. Litig.*, 2022 WL 263312, at *9–10 n. 8 (D. Del. Jan. 27, 2022), *report and recommendation adopted by*, 2022 WL 957761 (D. Del. Mar. 30, 2022) (same).

As for the Merger Agreement, it provides that the parties may "not bring any action relating to this Agreement or the transactions contemplated by this Agreement in any court other than the Delaware Court of Chancery, any other court of the State of Delaware or any federal court sitting in the State of Delaware."  (Dkt. 41-1 at 84, Merger Agreement § 9.10.)  Forum-selection clauses "covering disputes 'relating to' a particular agreement apply to any disputes that reference [] or have some 'logical or causal connection' to the agreement," and not just those that "grow out of" or "require interpretation of" the contract at issue.  *Yei A. Sun*, 901 F.3d at 1086; *Manila Indus., Inc. v. Ondova Ltd. Co*., 334 F. App'x 821, 823 (9th Cir. 2009) (forum selection provision covered plaintiff's claims because claims "relate[d] in some way" to the "rights and duties enumerated in the Agreement").  There can be no dispute that plaintiff's claim "relates" to the Merger Agreement—the First Cause of Action refers to misconduct under the Merger Agreement (SAC ¶¶ 195-202), the Second Cause of Action seeks declaratory relief under the Merger Agreement (*id.* ¶¶ 203-205) and the Third Cause of Action seeks damages because of a delay in closing under the Merger Agreement (*id.* ¶¶ 206-209).[5]

---

[5] Plaintiff cannot escape the enforcement of the Merger Agreement's forum-selection clause simply because he is not a signatory.  Non-parties to forum-selection clauses are nonetheless bound by them where their claims are "so closely related to the contractual relationship that the forum selection clause applies." *Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 514 n. 5 (9th Cir. 1988); *Manila Indus*., 334 F. App'x at 823 (forum selection provision applied to non-signatory because claims to rights under the agreement were "closely related" to the agreement).  Where, as here, a non-party's claim requires the determination of some aspect of the underlying agreement that contains the forum-selection clause, it is "closely related" and mandates the enforcement of the forum-selection clause against the non-party.  *Meyer v. Howmedica Osteonics*
(footnote continued)

**B.      The Forum-Selection Clauses Are Valid and Enforceable**

It is well established that forum selection clauses are "prima facie valid" *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972), and are enforced "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52.  In the Ninth Circuit, courts analyze three principles to determine if extraordinary circumstances exist: (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Yei A. Sun*, 901 F.3d at 1088.  Nothing extraordinary applies here.  Plaintiff alleges no fraud or overreaching as to the relevant contracts, nor are public policy arguments raised in plaintiff's pleadings.  As for convenience, the First and Third Causes of Action are brought under Delaware law, and the Second Cause of Action seeks declaratory relief regarding a contract governed by Delaware law. (Dkt. 41-1 at 82, Merger Agreement § 9.8.)  Further, the company defendants are all Delaware corporations (SAC ¶ 42) and plaintiff resides in Virginia (*id.* ¶ 39).  All told, ***this forum***, not the forum selected by contract, is inconvenient.

**C.      The Public Interest Weighs In Favor Of Enforcement**

Courts may consider "public interest" factors—court congestion and administration concerns, local interest, and which forum is more "at home" with the law at issue—in deciding enforceability of a forum-selection clause (albeit, this factor "rarely" defeats forum selection).  *Atl. Marine*, 571 U.S. at 64.  These factors weigh heavily against venue in California, as there is little nexus here.  Although plaintiff alleges that Twitter is headquartered in California (SAC ¶ 37), as noted above, three of the four defendants are Delaware corporations, and all defendants previously litigated related issues in Delaware Chancery Court, *see Twitter, Inc. v. Elon R. Musk et al.*, C.A.

---

*Corp*., 2015 WL 728631, at *13 (S.D. Cal. Feb. 19, 2015) ("Because resolution of Smith's issue requires determining the enforceability of a clause in the Employment Agreement, this Court finds that Smith is sufficiently closely related to the contract to bind Smith to the forum selection clause."); *see also Vistage Worldwide, Inc. v. Knudsen*, 2020 WL 71140, at *7 (S.D. Cal. Jan. 7, 2020) (collecting cases applying the "closely related" test).

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

1    No. 2022-0613 (Del. Ch.) (the "Twitter Delaware Action").  The public interest weighs heavily in

2    favor of the selected forum as every claim requires an application of Delaware law, with which

3    Delaware courts have more familiarity.  *See CytRx*, 2015 WL 9871275, at *6.

4         **D.    The Whole of the Second Amended Complaint is Futile**

5         Where, as here, a mandatory forum selection requires that at least one claim be litigated in

6    a state forum, judicial efficiency and the interests of justice provide that the entire action should be

7    adjudicated there.  *See e.g.*, *Minghong Inv., Inc. v. Felix Chac Chuo*, 2022 WL 2189365, at *6

8    (C.D. Cal. Mar. 9, 2022) (dismissing entire action where a minority of claims were covered by

9    forum-selection clause).  Enforcing forum-selection clauses (and preventing plaintiff from

10   avoiding them through artful pleading) prevents waste that would arise from trying a single case in

11   multiple forums. *See id.* (citing *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 770

12   (9th Cir. 1991) (affirming dismissal of entire action to "the only forum in which the entire case

13   may be tried")).  As discussed above, plaintiff can offer no credible justification why any claim—

14   let alone the entire action—should be litigated in this Court.

15        Moreover, all three of plaintiff's claims—which seek an adjudication of rights under and

16   interest on consideration paid pursuant to the Merger Agreement—"relate" to the Merger

17   Agreement and are subject to its forum-selection clause.  *See* Section I.A, *supra*. Where, as here,

18   there are non-conflicting, overlapping forum-selection clauses where one allows for an action to

19   be brought in a state or federal forum and the other requires it be filed in the state forum, courts

20   enforce the latter, more restrictive clause.  *Granite Re, Inc. v. N. Lines Contracting, Inc*., 478 F.

21   Supp. 3d 772, 780 (D. Minn. 2020) (citing cases).  So too here.

22   **II.    THE SECOND AMENDED COMPLAINT DOES NOT SOLVE THE STANDING
23             PROBLEMS INHERENT IN PLAINTIFF'S CLAIMS**

24        "The determinative issue in this motion is whether [plaintiff] has standing to bring [his]

25   claims . . . [i]f he does not, then granting leave to amend would be futile."  *Yue v. MSC Software

26   Corp.*, 2016 WL 3844366, at *4 (N.D. Cal. July 15, 2016).  Here plaintiff has no standing to

27   enforce the rights of Twitter and his asserted injury is suffered indirectly as a shareholder.  At best,

28   plaintiff's claims are derivative, which plaintiff does not have standing to assert unless Rule 23.1's

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

1   prerequisites are satisfied,[6] which plaintiff has not pled.  Rule 23.1 aside, the Merger has closed,

2   and plaintiff is no longer a Twitter shareholder, which under Delaware law extinguishes his

3   derivative rights.

4       **A.**    **Plaintiff's Claims Are Indistinguishable From Those of All Shareholders**

5       Plaintiff's scattershot of allegations all revolve around the value of his Twitter's shares at

6   various times, purportedly influenced by Mr. Musk's statements, actions and/or delays following

7   the announcement of the merger.  (SAC ¶¶ 17, 21, 125-151, 158.)

8       A claim of "diminution in the value of shares is *quintessentially* a derivative claim."  *In re*

9   *Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 568 (S.D.N.Y. 2012) (emphasis added).

10   Plaintiff unsuccessfully attempts to plead around this obvious bar with a theory that the *delay* in

11   the closing on the Merger Agreement diluted the ultimate pay-out value on those shares.  *See* SAC

12   ¶¶ 201, 205, 207.  That is a distinction without a difference—a claim for damages based on the

13   value of the ultimate pay out to shareholders in a merger is equally a derivative claim.  *Feldman v.*

14   *Cutaia*, 951 A.2d 727, 732 (Del. 2008); *see In re First Interstate Bancorp Consol. S'holder Litig.*,

15   729 A.2d 851, 861 (Del. Ch. 1998) ("Delaware law is well-settled that claims arising from

16   transactions involving corporate assets that allegedly operate to reduce the consideration received

17   by stockholders in a merger are . . . derivative in nature.").

18       Nowhere does plaintiff allege he suffered *any* injury distinct to all other shareholders by

19   virtue of the merger delay, which forecloses on any notion that this is a direct action.  "Where all

20   of a corporation's stockholders are harmed and would recover pro rata in proportion with their

21   ownership of the corporation's stock solely because they are stockholders, *then the claim is*

22   *derivative in nature*."  *Feldman*, 951 A.2d at 733 (emphasis added).  "The mere fact that the

23   alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the

24   stockholders does not make a claim direct . . . [i]n order to state a direct claim, the plaintiff must

25   have suffered some individualized harm not suffered by all of the stockholders at large."  *Id.*

---

6   Where a plaintiff's amended complaint asserts derivative claims but fails to plead basic Rule
27   23.1 requirements it is futile.  *Miesen v. Munding*, 822 F. App'x 546, 547 (9th Cir. 2020)
(affirming district court's denial of leave to amend derivative shareholder claims).

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff brings this action "on behalf of **all** stockholders of Twitter" (SAC ¶ 43) . . . and alleges that the undifferentiated whole of "Twitter stockholders suffered damages . . ." (SAC ¶ 201).  The Second Amended Complaint thus raises prototypically derivative claims, which plaintiff has no standing to pursue.

### B.   Plaintiff's "Mismanagement" Claims are Derivative

Plaintiff attributes (at least in part) the harm to Twitter's share price to the Board's alleged mismanagement of the merger—but that too is a derivative claim.  *See Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) ("actions charging mismanagement which depress the value of stock allege a wrong to the corporation; i.e., the stockholders collectively, to be enforced by a derivative action"); *SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.*, 2019 WL 13203776, at *6 (N.D. Cal. Oct. 10, 2019) (identifying "an action charging mismanagement which depresses the value of stock" as a derivative claim).  Framing it, as plaintiff does, as a "breach of fiduciary duty" does not change that analysis as "[a] claim that seeks relief for alleged breaches of fiduciary duty which caused injury to the corporation and its stockholders as a whole remains derivative." Del. L. of Corp. and Bus. Org., § 13.10 (3d ed. 2019) (collecting cases).

By that same token the claim that defendants "aided and abetted" breaches of fiduciary duty are also derivative.  "Prior decisions of [Delaware] court[s] have validated the unsurprising proposition that an aiding and abetting claim premised on a derivative cause of action is necessarily derivative itself."  *Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *13 (Del. Ch. Jan. 25, 2019), *aff'd*, 220 A.3d 245 (Del. 2019); *see, e.g.*, *In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 864 (Del. Ch. 1998) ("If, as [the court has] found to be the case, the claims of primary liability against the [company] directors belong to the corporation and could only be maintained by [the plaintiff] in a derivative capacity, that finding logically applies with equal force to the alleged claims of secondary liability against [an alleged aider and abettor].").

### C.   Plaintiff Cannot Bring a Direct Claim Under the Merger Agreement

To plead a direct claim a "stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

1    *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).[7]  In other words,

2    plaintiff must show an injury "*independent* of any alleged injury to the corporation."  *Id.*  Plaintiff

3    cannot do so here, because his claim is predicated on rights under the Merger Agreement, under

4    which plaintiff is neither a party or third-party beneficiary.[8]

5           It is beyond dispute that Twitter (not its shareholders) are the relevant counter-parties to

6    the Merger Agreement.  *See* Dkt. 44-1 at 14.  Thus, plaintiff's claims under the Merger Agreement

7    are not independent, and only exist as a follow on if there is an injury (if any) to Twitter as the

8    contracting party.

9           Nor can plaintiff claim to be an independent "third-party beneficiary" under the Merger

10   Agreement.  Beyond dispute, Section 9.7 of the Merger Agreement disclaims such rights.  (*See*

11   Dkt. 44-1 at 82, Merger Agreement § 9.7).[9]  This **same** disclaimer language in this **same** Merger

12   Agreement was enforced on its terms by the Chancery Court in *Crispo v. Musk*, 2022 WL

13   6693660, at *5 (Del. Ch. Oct. 11, 2022).  The Chancery Court denied that shareholders had

14   standing under the Merger Agreement, making clear that: "the plain language of Section 9.7

15   supports a holding that the parties to the Merger Agreement did **not** intend to confer third-party

16   beneficiary standing to Twitter's stockholders."  *Id.* (emphasis added)*.

17          Indeed in *Tooley* the court affirmed the trial court's finding that the relevant merger

18   agreement which disclaimed third party beneficiary rights could not be used to assert direct rights.

19   845 A.2d at 1034, 1039.  Where "[p]laintiffs were not third-party beneficiaries to the merger

20   _____

21   [7]   In *Tooley*, the Delaware Supreme Court held that a minority shareholder, who claimed that
     majority shareholders improperly delayed the merger for their own benefit had (in theory) a direct

22   claim.  That ruling is distinguishable from the case at hand, as plaintiff is not seeking a remedy on

23   behalf of a distinct minority of shareholders, but *all of the stockholders at large*.  In any event the
     Court otherwise held that even if a direct claim, plaintiffs did not have standing because their
     direct claim relied upon a merger agreement they were not a party to.  So too here.

24   [8]   Under Delaware law, only parties to a contract and intended third-party beneficiaries have

25   standing to sue for breach of the contract.  *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*,
     922 A.2d 417, 434 (Del. Ch. 2007) (citing *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337,

26   at *2 (Del. Ch. Feb. 17, 2004)).

27   [9]   Section 9.7 provides under the heading, "No Third-Party Beneficiaries" that "this Agreement is
     not intended to and shall not confer upon any Person other than the parties hereto any rights or

28   remedies hereunder."

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

agreements . . . their **only** recourse . . . is a derivative claim." *Merzin v. Provident Fin. Grp., Inc.*, 311 F. Supp. 2d 674, 686 (S.D. Ohio 2004) (emphasis added).

### D.     Plaintiff Cannot Bring a Derivative Claim After The Merger Has Closed

Under Delaware law, "[i]n order to bring a derivative claim a plaintiff 'must hold shares not only at the time of the alleged wrong, but continuously thereafter throughout the litigation.'" *In re Match Grp., Inc. Derivative Litig.*, 2022 WL 3970159, at *11 (Del. Ch. Sept. 1, 2022) (citing *In re Massey Energy Co. Deriv. & Class Action Litig.*, 160 A.3d 484, 497–98 (Del. Ch. 2017)). Thus "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit." *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984); *Lewis v. Ward*, 852 A.2d 896, 901 (Del. 2004) ("When a merger eliminates a plaintiff's shareholder status in a company, it also eliminates her standing to pursue derivative claims on behalf of that company. Those derivative claims pass by operation of law to the surviving corporation, which then has the sole right and standing to prosecute the action."). Here, plaintiff concedes the merger closed and he received the merger consideration. (Mot. at 7, SAC ¶ 34). This has extinguished plaintiff's ability to bring derivative claims.

### E.     Plaintiff Does Not Attack The Fairness of the Merger—Only Its Timing

In an effort to avoid the fact that he lost standing when the merger was consummated, plaintiff attempts to squeeze his claims into the narrow framework of *Parnes v. Bally Ent. Corp.* Under *Parnes*, a "stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation," and may file a direct claim. 722 A.2d 1243, 1245 (Del. 1999). Under this standard, courts must distinguish between claims "challenging the merger itself" (which are direct) from those challenging "wrongs associated with the merger" (which are derivative). *Id.* "[M]entioning a merger in the complaint does not talismanically create a direct action," though. *In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *10 (Del. Ch. Sept. 30, 2009). Rather, the shareholder must "adequately plead[] that the merger terms were tainted by

1    unfair dealing," *Golaine v. Edwards*, 1999 WL 1271882, at *7 (Del. Ch. Dec. 21, 1999).[10]

2    Plaintiff does not do so.

3          Indeed, plaintiff is not seeking to challenge or invalidate the merger but to ***enforce its***

4    ***terms*** on Twitter's behalf.  (SAC ¶¶ 203-205.)  He does not allege the merger price is unfair to

5    Twitter or that the directors "improperly diverted" any merger consideration.  *See Golaine*, 1999

6    WL 1271882, at *9.  Unlike *Houseman* and *Straight Path*, (*see supra* fn. 10 & 11), plaintiff does

7    not allege the existence of any side transaction of a value material to the $44 billion merger.  *See*

8    *e.g., Straight Path* 2018 WL 3120804, at *13.[11]  Plaintiff alleges only that two of Twitter's eleven

9    _____

10   [10]   Courts have found that plaintiffs' claims are direct when they allege that the board or powerful
     fiduciaries ***impeded*** the negotiation of the transaction to extract an improper a side deal or

11   obtained self-interested terms that "improperly diverted" merger consideration to themselves.
     *Parnes*, 722 A.2d at 1245; *Houseman v. Sagerman*, 2014 WL 1600724, at *13 (Del. Ch. Apr. 16,

12   2014); *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3120804, at *13 (Del.
     Ch. June 25, 2018).  In *Parnes*, for instance, the target company's Chairman and CEO allegedly

13   threatened to withhold his consent to any merger unless he was substantially compensated and
     received valuable company assets, demands which scared off bidders "who might have paid a

14   higher price."  *Parnes*, 722 A.2d at 1245. In contrast, courts have held claims are derivative where,
     as here, plaintiff neither pled any causal link between the side deal and the material terms of the

15   merger nor pled that the transaction improperly diverted proceeds that would have been paid to the
     shareholders.  *See, e.g.*, *Golaine*, 1999 WL 1271882, at 9.  Courts have also held claims to be

16   derivative where the complaint failed to allege that any fiduciaries impeded the transaction unless
     they received a side deal that was material to the transaction as a whole. *Brokerage Jamie*

17   *Goldenberg Komen Rev Tru U/A 06/10/08 Jamie L Komen Tr. for Komen v. Breyer*, 2020 WL
     3484956, at *12 (Del. Ch. June 26, 2020).

18
     [11]   Plaintiff fails to adequately allege that either Durban or Dorsey had some sort of self-interested

19   side-deal.  As to Durban, plaintiff contends he favored Mr. Musk due to a prior business
     relationship and previously worked on unrelated matters together.  (SAC ¶ 74.)  This does not

20   establish self-interest.  *See e.g.*, *State of Wisconsin Inv. Bd. v. Bartlett*, 2000 WL 238026, at *6
     (Del. Ch. Feb. 24, 2000) ("Evidence of personal and/or past business relationships does not raise

21   an inference of self-interest.").  As to Dorsey, plaintiff alleges self-interest based on his friendship
     with Mr. Musk, his discussions with Mr. Musk about retaining equity post-merger "in lieu of

22   receiving merger consideration," and "speculat[ion]" that Mr. Musk "***may***" reinstate him as
     Twitter's CEO.  (SAC ¶¶ 100, 187)  This too is insufficient.  To establish self-interest, plaintiff

23   must plead that the side benefit Dorsey received is not equally shared by other stockholders and is
     material "in the context of the director's economic circumstances."  *In re Gen. Motors Class H*

24   *S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999).  The supposed benefit at issue—retaining his
     stock instead of selling it (SAC ¶ 198)—does not confer any financial gain not equally shared by

25   other stockholders or materially change Dorsey's economic circumstances.  He would just keep
     what he has.  And the "speculat[ion]" that Mr. Musk may reinstate Dorsey as CEO is just that,

26   speculation.  It cannot create self-interest and would not improperly bias Dorsey even if true.

27

28       (footnote continued)

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

directors supported Mr. Musk's interests because (1) they are friends and one had a prior business relationship with Mr. Musk (SAC ¶ 74); and (2) one director retained equity in Twitter "in lieu of merger consideration." (*Id.* ¶ 100.) Unlike *Parnes*, the SAC does not allege facts showing that the two directors scared off any potential bidders, conditioned the merger on the receipt of a side deal, directed or were responsible for any of the aspects of the merger Plaintiff objects to, or influenced the other nine directors to approve the Merger Agreement unanimously. 722 A.2d at 1245. Plaintiff does not allege unfair dealing by a majority of the Board or a "link between the conclusory allegation" that "Durban and Dorsey acted out of allegiance to Musk" and the terms of the merger. *See Golaine*, 1999 WL 1271882, at *9. The only harm alleged is the delay in closing, which as shown above, is a derivative claim.

## III.   THE SECOND AMENDED COMPLAINT DOES NOT SOLVE THE PREEMPTION PROBLEM CREATED BY BRINGING SECURITIES LAW CLAIMS UNDER STATE LAW

Plaintiff's Unjust Enrichment claim is pre-empted by the Securities Litigation Uniform Standards Act ("SLUSA") and permitting amendment to assert this preempted claim would be futile. *Jaco v. Winco Holdings, Inc.*, 2019 WL 1438069, at *6 (E.D. Cal. Mar. 31, 2019); *see Denton v. Dep't Stores Nat. Bank*, 2011 WL 3298890, at *6 (W.D. Wash. Aug. 1, 2011) ("The Court will not grant leave to amend the claims that are preempted because any amendment would be futile.").

Plaintiff asserts a claim for unjust enrichment against Mr. Musk based (at least in part) on failure to timely file an SEC Form 13(D) or 13(G) between March 14 and April 4 (SAC ¶¶ 60-77, 207) ("Form 13 Claim").[12]   This claim is pre-empted as SLUSA prevents class action plaintiffs from pleading securities fraud actions under state law theories. *See Fleming v. Charles Schwab*

---

*Morgan v. Cash*, No. CIV.A. 5053-VCS, 2010 WL 2803746, at *5 (Del. Ch. July 16, 2010) (retaining management is a "routine occurrence").

[12]   Plaintiff also alleges that Mr. Musk was "unjustly enriched due to his failure to timely close the Buyout on or about September 15, 2022" and "earned unjust interest on his monies and unjustly deprived Plaintiff and the Class of interest on the Merger proceeds." (SAC ¶ 207). As discussed above, plaintiff lacks standing to bring a claim for interest on merger consideration. *See* Section II, *supra*. Accordingly, this theory of unjust enrichment is futile too. *See e.g., Yue*, 2016 WL 3844366, at *4 (N.D. Cal. July 15, 2016).

1   *Corp.*, 878 F.3d 1146, 1153 (9th Cir. 2017).  It bars any (1) "covered class action" (2) "based upon

2   the statutory or common law" of any state (3) maintained by "any private party," if the action

3   alleges (4) either "an untrue statement or omission of material fact" or "that the defendant used or

4   employed any manipulative or deceptive device or contrivance" (5) "in connection with the

5   purchase or sale" (6) of a "covered security." 15 U.S.C. § 77p(b).

6       There is no dispute that the first, second, third, and sixth elements are met here.  This is a

7   covered class action, *compare* 15 U.S.C. § 77p(f)(2)(A) *with* SAC ¶¶ 43-44, based on Delaware

8   common law (SAC ¶¶ 206-209), brought by a private party (*id.* ¶ 39), concerning a security listed

9   on the Nasdaq at the time the alleged misconduct occurred, (*id.* ¶ 15).  Elements four and five are

10  also met.  The falsity element is interpreted to "bar jurisdiction over any claim that could give rise

11  to liability under § 10(b) or Rule 10b-5," *Fleming*, 878 F.3d at 1153, and the "connection with"

12  requirement applies broadly to any misrepresentation that "coincides with a securities transaction,"

13  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 at 85 (2006).

14      Plaintiff's Form 13 Claim is barred by SLUSA because he alleges Mr. Musk omitted

15  information he was required to disclose in connection with his purchase of Twitter securities that,

16  had it been disclosed, allegedly would have caused the stock price to rise.  (SAC ¶ 64); *Fleming*,

17  878 F.3d at 1156 ("SLUSA requires only that 'the misrepresentation makes a significant

18  difference to someone's decision to purchase or to sell a covered security.'").  These allegations,

19  while not literal elements of unjust enrichment, "are fact[s] on which the proof of that state cause

20  of action depends." *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 830 (9th Cir.

21  2018).[13]

22      Plaintiff attempts to avoid SLUSA preemption by casting the alleged misconduct as an

23  action that qualifies for the so-called "Delaware carve-out," which excludes certain actions from

24  SLUSA that are "based upon the statutory or common law of the State in which the issuer is . . .

---

[13]   Indeed, there is currently an action pending in the Southern District of New York alleging **a violation of federal securities laws** against Mr. Musk based on the exact same activity giving rise to this action, demonstrating the redundant nature of the this claim here.  *See Rasella v. Musk*, S.D.N.Y. Case No. 1:22-cv-03026.

DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

organized," and involve either (1) the purchase or sale of securities by the issuer or an affiliate "***exclusively*** from or to holders of the issuer's securities" or (2) any "communication with respect to the sale of securities made by the issuer or an affiliate to its holders "concern[ing] decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters or appraisal rights." 15 U.S.C. § 77p(d) (emphasis added).

The carve-out does not apply here.  First, at the time Mr. Musk purportedly failed to make appropriate disclosures, he was not Twitter's affiliate—he neither controlled nor was controlled by it.  *See* 15 U.S.C. § 77p(f)(1) (defining "affiliate"); SAC ¶¶ 60-66.  Moreover, the Form 13 Claim involves securities listed on an open market—not sold exclusively to existing shareholders—and therefore does not fall under the first exclusion.  *See Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del. 2002).  The second exclusion does not apply either. The Form 13 Claim alleges a failure to timely file an SEC disclosure, not communications with shareholders about a pending offer—indeed no offer to purchase Twitter was even on the table at the time plaintiff alleges Mr. Musk was obligated to make the disclosure.  *See* 15 U.S.C. § 77p(d); *compare* SAC ¶ 60 *with* ¶ 89.

## CONCLUSION

For the reasons stated herein, defendants respectfully request that the Court deny plaintiff's motion to amend in its entirety.

DATED:  January 6, 2023

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By _/s/ Joseph C. Sarles_
Alex Spiro
Michael T. Lifrak
Joseph C. Sarles
Alex Bergjans
Aubrey L. Jones

*Attorneys for Elon Musk,*
*X Holdings I, Inc.,*
*X Holdings II, Inc. and Twitter Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 6th day of January, 2023.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By /s/ Joseph C. Sarles
    Alex Spiro
    Michael T. Lifrak
    Joseph C. Sarles
    Alex Bergjans
    Aubrey L. Jones

    *Attorneys for Elon Musk,*
    *X Holdings I, Inc.,*
    *X Holdings II, Inc. and Twitter Inc.*

Case No. 3:22-CV-03074-CRB-SK
DEFENDANT ELON MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT