QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendants Elon Musk, X Holdings I, Inc., X Holdings II, Inc., and Twitter, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HERESNIAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., and TWITTER, INC.,<br><br>Defendants. | CASE NO. 3:22-CV-03074-CRB-SK<br><br>**DEFENDANT ELON R. MUSK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge:        Hon. Charles R. Breyer<br>Courtroom: 6, 17th Floor<br><br>Hearing Date: May 12, 2023<br>Time:        10 a.m. |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT...........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED.............................................................3

RELEVANT ALLEGATIONS AND BACKGROUND.................................................3

ARGUMENT.................................................................................................................6

I.      PLAINTIFF LACKS STANDING TO BRING ANY OF HIS CLAIMS ..........................6

        A.      Plaintiff's Claims Are Derivative.....................................................6

        B.      Plaintiff Does Not Challenge The Merger Itself; No Exception Applies. ................7

        C.      Plaintiff Otherwise Has No Standing To Enforce The Merger Agreement.............9

II.     THE ACTION WAS FILED IN THE WRONG FORUM..................................9

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING .................9

        A.      Plaintiff Does Not Allege A Breach Of Fiduciary Duty By The Board ................10

        B.      Plaintiff Does Not Allege Mr. Musk Knowingly Participated In A Breach ..........11

IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF.................13

V.      THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.............................13

        A.      Plaintiff's Unjust Enrichment Claim Is Barred By SLUSA ...................13

        B.      Plaintiff Cannot Seek Unjust Enrichment For A Breach Of Contract...................15

CONCLUSION.............................................................................................................15

1
2

# TABLE OF AUTHORITIES

Page(s)

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007)..............................................................................6

*Brokerage Jamie Goldenberg Komen Rev Tru U/A 06/10/08*
    *Jamie L Komen Tr. for Komen v. Breyer*,
    2020 WL 3484956 (Del. Ch. June 26, 2020)........................................................2, 7

*Crispo v. Musk*,
    No. 2022-0666-KSJM, 2022 WL 6693660 (Del. Ch. Oct. 11, 2022)......................2, 9

*Feldman v. Cutaia*,
    951 A.2d 727 (Del. 2008) ....................................................................................7

*Fleming v. Charles Schwab Corp.*,
    878 F.3d 1146 (9th Cir. 2017)..........................................................................13, 14

*Golaine v. Edwards*,
    1999 WL 1271882 (Del. Ch. Dec. 21, 1999)........................................................8, 9

*Houseman v. Sagerman*,
    2014 WL 1600724 (Del. Ch. Apr. 16, 2014) .........................................................8

*Huff Energy Fund, L.P. v. Gershen*,
    2016 WL 5462958 (Del. Ch. Sept. 29, 2016) .......................................................10

*In re BJ's Wholesale Club, Inc. S'holders Litig.*,
    2013 WL 396202 (Del. Ch. Jan. 31, 2013)..........................................................11

*In re Essendant, Inc. S'holder Litig.*,
    2019 WL 7290944 (Del. Ch. Dec. 30, 2019).......................................................12

*In re First Interstate Bancorp Consol. S'holder Litig.*,
    729 A.2d 851 (Del. Ch. 1998) ..............................................................................7

*In re Gen. Motors Class H S'holders Litig.*,
    734 A.2d 611 (Del. Ch. 1999)..............................................................................11

*In re NYMEX S'holder Litig.*,
    2009 WL 3206051 (Del. Ch. Sept. 30, 2009) .......................................................8

*In re Stillwater Cap. Partners Inc. Litig.*,
    851 F. Supp. 2d 556 (S.D.N.Y. 2012)....................................................................7

*In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*,
    2018 WL 3120804 (Del. Ch. June 25, 2018)........................................................8, 9

*Jacobs v. Meghji*,
    2020 WL 5951410 (Del. Ch. Oct. 8, 2020) .........................................................12

*Johnson v. Nissan N. Am., Inc.*,
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................................................6

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kramer v. W. Pac. Indus., Inc.,*
    546 A.2d 348 (Del. 1988) ................................................................... 7

*Kuroda v. SPJS Holdings, L.L.C.,*
    971 A.2d 872 (Del. Ch. 2009) ........................................................... 15

*Lewis v. Anderson,*
    477 A.2d 1040 (Del. 1984) ............................................................. 6, 9

*McGowan v. Ferro,*
    2002 WL 77712 (Del. Ch. Jan. 11, 2002) ........................................ 12

*Malpiede v. Townson,*
    780 A.2d 1075 (Del. 2001) .......................................... 10, 11, 12, 13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
    547 U.S. 71 at 85 (2006) ................................................................. 14

*Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.,*
    2012 WL 6632681 (Del. Ch. Dec. 20, 2012) ................................... 7

*Morgan v. Cash,*
    2010 WL 2803746 (Del. Ch. July 16, 2010) ..................... 2, 10, 11, 12, 13

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC,*
    922 A.2d 417 (Del. Ch. 2007) ........................................................... 6

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    904 F.3d 821 (9th Cir. 2018) .......................................................... 14

*Orman v. Cullman,*
    794 A.2d 5 (Del. Ch. 2002) ............................................................ 10

*Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC,*
    191 Cal. App. 4th 357 (2010) ...................................................... 2, 13

*Parnes v. Bally Ent. Corp.,*
    722 A.2d 1243 (Del. 1999) ......................................................... 7, 8, 9

*Rabkin v. Philip A. Hunt Chem. Corp.,*
    547 A.2d 963 (Del. Ch. 1986) ......................................................... 11

*Sheldon v. Pinto Tech. Ventures, L.P.,*
    2019 WL 336985 (Del. Ch. Jan. 25, 2019) ...................................... 7

*State of Wisconsin Inv. Bd. v. Bartlett,*
    2000 WL 238026 (Del. Ch. Feb. 24, 2000) .................................... 10

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) ............................................................... 6

*Vichi v. Koninklijke Philips Elecs. N.V.,*
    62 A.3d 26 (Del. Ch. 2012) ......................................................... 3, 15

DEFENDANT ELON R. MUSK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1 | *Wood v. Coastal States Gas Corp.*,
2 |  401 A.2d 932 (Del. 1979) ........................................................................ 15

3 | *Zoren v. Genesis Energy, L.P.*,
 195 F. Supp. 2d 598 (D. Del. 2002) ............................................................ 14

4

5 | **Statutory Authorities**

6 | 15 U.S.C. § 77p(b) ..................................................................................... 1, 13

7 | 15 U.S.C. § 77p(d) ..................................................................................... 3, 14

8 | 15 U.S.C. § 77p(f)(1) ..................................................................................... 14

9 | 15 U.S.C. § 77p(f)(2)(A) ................................................................................ 13

10 | **Rules and Regulations**

11 | Fed. R. Civ. P. 5(b) ........................................................................................ 16

12 | Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 6

13 | Fed. R. Civ. P. 12(b)(3) ................................................................................... 1

14 | Fed. R. Civ. P. 12(b)(6) ................................................................................... 1

1    PLEASE TAKE NOTICE THAT, on May 12, 2023 or as soon thereafter as it may be
2    heard, Defendant Elon Musk will hereby move the above entitled Court to dismiss Plaintiff's
3    Second Amended Complaint ("SAC") (Dkt. 66) pursuant to the doctrine of forum non conveniens,
4    Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6) and the Court's inherent authority.[1]

5    The motion asks the Court to (1) dismiss the SAC in its entirety pursuant to Rule 12(b)(1)
6    and Rule 12(b)(6) because all of the causes of action are derivative and Plaintiff lacks standing to
7    bring them as he is no longer a shareholder of Twitter and, independently, because Plaintiff is
8    neither a party to nor a third-party beneficiary of the Merger Agreement between Defendants and
9    therefore lacks standing to bring any claim to enforce it; (2) dismiss the SAC in its entirety under
10   the doctrine forum non conveniens; (3) dismiss the first cause of action for failure to state a claim;
11   (4) dismiss the second cause of action pursuant for failure to state a claim; and (5) dismiss the
12   third cause of action under Rule 12(b)(3) as barred by 15 U.S.C. § 77p(b), the Securities
13   Litigation Uniform Standards Act ("SLUSA"), and Rule 12(b)(6) for failure to state a claim.

14                                    **SUMMARY OF ARGUMENT**

15   Plaintiff's Second Amended Complaint ("SAC") is a disjointed laundry list of—often
16   irrelevant—grievances against Elon Musk, asserting causes of action that Plaintiff has no standing
17   to bring, that are filed in the wrong forum, and that lack any viable legal theory. Plaintiff's
18   attempt to sling mud cannot obscure the truth: his SAC is fatally defective and should be
19   dismissed with prejudice.

20   At the threshold, the SAC should be dismissed because Plaintiff has no standing to bring
21   any of his claims. *First*, Plaintiff has brought a quintessential derivative suit seeking to enforce an
22   agreement to which *Twitter* is a party, seeking redress for alleged harm to *Twitter*—that the
23   purported delayed closing of the Merger deprived the company of interest on merger consideration
24   and therefore devalued Twitter's stock. Under Plaintiff's theory, all "stockholders are harmed
25   and would recover pro rata in proportion with their ownership [of Twitter stock] solely [as]

26

27   _____
     [1] Mr. Musk joins the Motion to Dismiss filed by X Holding I, Inc., X Holdings II, Inc., and
28   Twitter, Inc. (the "Companies' Motion") filed contemporaneously herewith.

stockholders," so his claims are "derivative in nature." *Brokerage Jamie Goldenberg Komen Rev Tru U/A 06/10/08 Jamie L Komen Tr. for Komen v. Breyer*, 2020 WL 3484956, at \*7 (Del. Ch. June 26, 2020).  As Plaintiff is not attacking the Merger itself—indeed he seeks to enforce the Merger Agreement against Mr. Musk—his action does not fall under the narrow exception to the derivative claim rule and must be dismissed because Plaintiff lost any right to bring a derivative claim when the Merger closed.  **Second**, Plaintiff lacks standing to pursue any claims purporting to "enforce" the Merger Agreement because he is not a party nor third-party beneficiary to that contract.  *See Crispo v. Musk*, No. 2022-0666-KSJM, 2022 WL 6693660, at \*1 (Del. Ch. Oct. 11, 2022) (rejecting shareholder standing under the **exact same** Merger Agreement at issue here).

Plaintiff's lack of standing is not the only case-dispositive defect in the SAC.  As discussed in the Companies' Motion, the SAC should be dismissed in its entirety under the doctrine of forum non conveniens because Plaintiff improperly filed this action in this Court, violating **two** separate forum-selection clauses mandating that his claims be brought in Delaware.

On top of all that, Plaintiff has not adequately pleaded **any** of his causes of action.  He failed to overcome the high pleading burden required to establish an aiding and abetting claim against a third-party bidder. His allegations that two of Twitter's eleven directors were supposedly self-interested—under Delaware law, they were not—in a decision voted on *unanimously* by the Board cannot establish a breach of fiduciary duty.  *See, e.g.*, *Morgan v. Cash*, 2010 WL 2803746, at \*5-8 (Del. Ch. July 16, 2010).  Moreover, he fails to allege that Mr. Musk knowingly participated in or conspired with the Board to breach a fiduciary duty or that the two directors at issue dominated or controlled the rest of the Board.  *Id.*  His second cause of action for declaratory relief fails because it seeks only redress for past wrongs and alleges no risk of future harm. *Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC*, 191 Cal. App. 4th 357, 366 (2010) ("there is no basis for declaratory relief where only past wrongs are involved").  The third cause of action for unjust enrichment should be dismissed because it is nothing more than an improper attempt to circumvent both the pleading standards of the PSLRA and basic contract law.  First, the SAC improperly pleads a securities fraud material omissions claim—for the alleged failure to timely file an SEC Form 13(G)—as a state law tort and is thus barred by the Securities Litigation

1   Uniform Standards Act ("SLUSA"). 15 U.S.C. § 77p(d).  Second, it contends that Mr. Musk was

2   unjustly enriched when he purportedly breached the Merger Agreement, but under Delaware law a

3   claim for unjust enrichment cannot arise from a breach of contract.  *Vichi v. Koninklijke Philips*

4   *Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012).

5                    **STATEMENT OF ISSUES TO BE DECIDED**

6       1.  Should the Court dismiss the SAC for lack of standing where all of Plaintiff's claims

7   (1) seek to recover for harm suffered by Twitter, the corporation, instead of the stockholders

8   individually and thus are derivative in nature and (2) seek to enforce and avail plaintiff of remedies

9   under the Merger Agreement to which he is not a party or third-party beneficiary?

10      2.  Should the Court dismiss the SAC where Plaintiff filed this action in violation of the

11  forum-selection clauses in Twitter's Bylaws and the Merger Agreement?

12      3.  Should the Court dismiss Plaintiff's aiding and abetting breach of fiduciary duty claim

13  where Plaintiff failed to allege the elements of that claim?

14      4.  Should the Court dismiss Plaintiff's declaratory and injunctive relief claim where it

15  seeks only a declaration regarding past alleged wrongs?

16      5.  Should the Court dismiss Plaintiff's unjust enrichment claim where it (1) is for alleged

17  omissions in connection with the sale of securities and thus barred by SLUSA, and (2) seeks to

18  recover for an alleged breach of contract?

19                    **RELEVANT ALLEGATIONS AND BACKGROUND**

20      Mr. Musk buys Twitter stock.  The SAC alleges Mr. Musk purchased a number of shares

21  in Twitter, eventually obtaining a 9.2 percent stake in the company.  (SAC ¶ 64.)  On April 4,

22  2022, Mr. Musk disclosed his ownership in a publicly filed Form 13(G).  (*Id.* ¶ 76.)  The SAC

23  alleges this form should have been filed on March 24 (*Id.* ¶ 65), and citing newspaper articles,

24  alleges Mr. Musk saved $156 million because Twitter's share price rose after April 4.  (*Id.*)

25      Mr. Musk makes a merger offer.  On April 13, 2022, Mr. Musk transmitted a non-binding

26  cash offer to Twitter's Board to take the company private at $54.20 per share.  The SAC alleges

27  that at the time of this offer, Mr. Musk had two "clos[e] friends and allies" on the Board, Jack

28  Dorsey and Egon Durban.  (SAC ¶ 51.)  The SAC alleges they both disclosed their relationships

with Mr. Musk to the rest of the Board. (*Id.* ¶ 55.) The SAC contains no allegations that Mr. Musk had similar relationships with any other member of the Board. In response to the offer, the Board adopted a poison pill. (SAC ¶ 92.) The following day, Dorsey publicly criticized the Board in a tweet. (*Id.* ¶ 93.) The SAC does not allege that Mr. Musk induced Dorsey to make his criticisms of the Board or even knew he planned to do so. Following adoption of the poison pill, the SAC alleges Mr. Musk approached various investment firms, including Durban's firm Silver Lake, to obtain financing for the potential acquisition. (SAC ¶ 94.) It does not allege Mr. Musk made any agreement with Silver Lake or that it provided any financing for the merger.

On April 21, Mr. Musk disclosed that he secured commitments to finance the acquisition. (SAC ¶ 95.) On April 24, the 11-member Board unanimously accepted Mr. Musk's offer. (Declaration of Michael Lifrak ("Lifrak") Ex. 1 (Proxy) at 53-54; Ex. 2.) On April 25, the Defendants executed the Merger Agreement which provided that Mr. Musk and the Holding Companies would purchase Twitter at $54.20 per share. (SAC ¶ 101.) The Merger Agreement did not specify a closing date. (Lifrak Ex. 4 ("Merger Agreement") at Art. II.) Plaintiff does not allege that he was a party to or third-party beneficiary of the Merger Agreement.

The SAC alleges that Dorsey and Durban—and ***Dorsey and Durban alone***—failed to negotiate at arms' length with Musk, to conduct financial due diligence, to shop Twitter to other potential suitors, and to perform a market check. (SAC ¶¶ 122, 199.) It provides no support for these conclusions, including no facts about the Board's internal deliberations, no allegations about Dorsey and Durban's role and participation in the transaction (including their communications with other directors or even Mr. Musk about the Merger Agreement's terms), or any other director's position on or participation in the transaction, other than that Mr. Musk informed Board Chairman Bret Taylor of the initial offer and his plans to take his offer directly to shareholders. (SAC ¶ 98.) Nor does the SAC allege that Dorsey or Durban controlled, dominated, or even influenced any of the nine other Board members as to any aspect of the transaction. There are no allegations that Mr. Musk was involved in the Board's deliberations or conspired with it to prevent the Board from conducting due diligence, shopping Twitter, or performing a market check.

As to the terms themselves, the SAC does not allege the price was unfair.  To the contrary—and inconsistent with his allegations that Dorsey and Durban breached fiduciary duties to Twitter in negotiating the merger—Plaintiff seeks to *enforce* the Merger Agreement through his request for declaratory relief and demands interest on merger consideration.

The merger closes.  On October 27, 2022, following the settlement of litigation between Mr. Musk and Twitter, the merger closed and Mr. Musk acquired Twitter at the agreed upon price of $54.20 per share.  (SAC ¶ 189.)  Twitter shareholders received merger consideration on October 31, 2022. (*Id.* ¶ 34.)  After the Merger closed, Dorsey rolled over his Twitter stock into the private entity "in lieu of receiving cash merger consideration in the Merger," an option that had been previously disclosed to shareholders. (*Id.* ¶¶ 100, 189.)

Prior to closing, on September 13, 2022, Twitter's shareholders voted to approve the Merger.  (*Id.* ¶ 167.)  The SAC alleges that the shareholder vote "satifisf[ied] the last remaining condition for closing of the Merger" and that Mr. Musk was contractually obligated to close the Merger within two business days of the vote.  (*Id.*)  However, the Merger Agreement provides that closing was "subject to the satisfaction or waiver" by the Holding Companies that Twitter complied "in all material respects" with its obligations under the Agreement and that "no Company Material Adverse Effect shall have occurred and be continuing." (Merger Agreement, § 7.2.)  The SAC does not allege these conditions were satisfied at the time of the vote; as of September 9, 2022, the Holding Companies contended they had not been.  (SAC Ex. C.)

Plaintiff files this lawsuit seeking relief for harm allegedly suffered by Twitter.  Plaintiff, a Virginia resident and former Twitter shareholder, filed this putative class action on behalf of himself and the "hundreds, if not thousands, of [Twitter] stockholders." (SAC ¶ 44.)  Because the Merger closed and shareholders were paid merger consideration at the contracted price of $54.20 per share, Plaintiff's primary contention is that Mr. Musk wrongfully delayed closing by six weeks and that all Twitter shareholders suffered the diminution in the value of their stock, in proportion to their ownership, because they were deprived six weeks of interest.  He does not seek to unwind or challenge the fairness of the Merger.  He asserts: (1) a claim under Delaware law against Mr. Musk and the Holding Companies for allegedly aiding and abetting Dorsey and Durban's breach

1    of fiduciary duties to Twitter in connection with the merger, (2) a claim for declaratory or

2    injunctive relief under California law against all Defendants seeking a declaration that, under the

3    Merger Agreement, Mr. Musk was obligated to pay merger consideration by September 15, 2022,

4    and (3) a claim under Delaware law for unjust enrichment against Mr. Musk for disgorgement of

5    profits acquired from allegedly purchasing Twitter stock at deflated prices after failing to timely

6    disclose his five percent ownership of the company and disgorgement of profits from allegedly

7    failing to timely close the Merger. (SAC ¶¶ 195-209.)

8                                   **ARGUMENT**

9    **I.    PLAINTIFF LACKS STANDING TO BRING ANY OF HIS CLAIMS**

10          "Standing is a threshold matter central to [the Court's] subject matter jurisdiction." *Bates*

11   *v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "Under Federal Rule of Procedure

12   12(b)(1) a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the

13   claims alleged in the complaint." *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1173

14   (N.D. Cal. 2017).  Plaintiff cannot establish standing for two independent reasons.  First, each of

15   his claims allege harm suffered by Twitter, the corporation as a whole, and not individual

16   shareholders.  The claims are therefore derivative and were extinguished when the Merger closed

17   and Plaintiff sold his stock. *See Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984) ("A plaintiff

18   who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses

19   standing to continue a derivative suit." ).  Second, Plaintiff seeks to enforce and obtain remedies

20   under the Merger Agreement to which he is neither a party nor a third-party beneficiary. *See*

21   *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC,* 922 A.2d 417, 434 (Del. Ch. 2007).

22          **A.    Plaintiff's Claims Are Derivative**

23          Whether a claim is derivative or direct "must turn solely on the following questions: (1)

24   who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2)

25   who would receive the benefit of any recovery or other remedy (the corporation or the

26   stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033

27   (Del. 2004).  The Court must "look at the nature of the wrong alleged, not merely at the form of

28   words used in the complaint. Where all of a corporation's stockholders are harmed and would

recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." *Komen*, 2020 WL 3484956, at *7; *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) ("In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large") (internal citation and quotation marks omitted). The gist of the action is that Mr. Musk's alleged wrongful conduct—violating his Merger Agreement with Twitter, aiding and abetting two of Twitter's eleven directors' breach of their fiduciary duties, and failing to timely close the Buyout—delayed the closing of the transaction and as a result all shareholders "lost interest and monies due to the wrongful delay in the closing of the Merger from September 15, 2022 to on or about October 31, 2022" (SAC ¶ 201). Plaintiff thus alleges the "diminution in the value of shares," which is the "*quintessential[]*…derivative claim." *In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 568 (S.D.N.Y. 2012); *see also In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 861 (Del. Ch. 1998). That Plaintiff appears to attribute some of the harm to Twitter's share price to the Board's alleged mismanagement of the merger makes no difference; that too is a derivative claim. *See Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) ("actions charging mismanagement which depress the value of stock allege a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action.") (cleaned up); *Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *13 (Del. Ch. Jan. 25, 2019), *aff'd*, 220 A.3d 245 (Del. 2019) ("[A]n an aiding and abetting claim premised on a derivative cause of action is necessarily derivative itself."); *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, 2012 WL 6632681, at *9 (Del. Ch. Dec. 20, 2012) (unjust enrichment claim was derivative). Because Plaintiff alleges that all shareholders have been "affect[ed]…alike" and damaged in a manner that is "common" to all of them (SAC ¶ 44(b), (e)), he has conceded that the harm sought to be redressed in each claim is not individualized but is instead derivative.

**B.     Plaintiff Does Not Challenge The Merger Itself; No Exception Applies.**

In an effort to avoid dismissal for lack of standing, Plaintiff attempts to wedge his claims into the narrow framework of *Parnes v. Bally Ent. Corp.* Under *Parnes*, a "stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the

1   corporation," and may file a direct claim. *Parnes v. Bally Ent. Corp.*, 722 A.2d 1243, 1245 (Del.

2   1999).  Under this standard, courts must distinguish between claims "challenging the merger

3   itself" (which are direct) from those challenging "wrongs associated with the merger" (which are

4   derivative). *Id.* "[M]entioning a merger in the complaint does not talismanically create a direct

5   action," *In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *10 (Del. Ch. Sept. 30, 2009)

6   (citations omitted), instead the shareholder cannot bring a direct claim unless he attacks the merger

7   for unfair price and "adequately pleads that the merger terms were tainted by unfair dealing,"

8   *Golaine v. Edwards*, 1999 WL 1271882, at *7 (Del. Ch. Dec. 21, 1999).

9       Courts have found that plaintiffs' claims are direct in limited circumstances, namely when

10  they allege that the board or powerful fiduciaries ***impeded*** the negotiation of the transaction to

11  extract an improper a side deal or obtained self-interested terms that improperly diverted merger

12  consideration to themselves. *Parnes*, 722 A.2d at 1245; *Houseman v. Sagerman*, 2014 WL

13  1600724, at *13 (Del. Ch. Apr. 16, 2014); *In re Straight Path Commc'ns Inc. Consol. S'holder*

14  *Litig.*, 2018 WL 3120804, at *13 (Del. Ch. June 25, 2018).  In *Parnes*, for instance, the target

15  company's Chairman and CEO allegedly threatened to withhold his consent to any merger unless

16  he was substantially compensated and received valuable company assets, demands which scared

17  off bidders "who might have paid a higher price." *Parnes*, 722 A.2d at 1246.

18      In contrast, courts have held claims are derivative where, as here, plaintiff neither pled any

19  causal link between a side deal and the material terms of the merger nor pled that the transaction

20  improperly diverted proceeds that would have been paid to the shareholders. *See, e.g.*, *Golaine*,

21  1999 WL 1271882, at 9.  Courts have also held claims to be derivative where the complaint failed

22  to allege that any fiduciaries impeded the transaction unless they received a side deal that was

23  material to the transaction as a whole. *Komen*, 2020 WL 3484956, at *12.

24      Plaintiff has not alleged a direct claim under *Parnes*.  First, Plaintiff is not seeking to

25  challenge or invalidate the merger but to ***enforce its terms*** on Twitter's behalf and collect interest

26  on merger consideration.  (SAC ¶¶ 203-05.)  He does not allege the merger price is unfair to

27  Twitter or that the directors "improperly diverted" any merger consideration. *See Golaine*, 1999

28  WL 1271882, at *9.  Unlike *Houseman* and *Straight Path*, he does not allege the existence of any

side transaction of a value material to the $44 billion merger.  *See e.g., Straight Path*, 2018 WL 3120804, at *13.  He alleges only that two of Twitter's eleven directors supported Mr. Musk's interests because (1) they are friends and one had a prior business relationship with Mr. Musk (SAC ¶ 51); and (2) one director purportedly was offered, after merger approval, and agreed to retain equity in Twitter "in lieu of receiving cash merger consideration."  (*Id.* ¶ 189.)  Unlike *Parnes*, the SAC does not allege facts showing that the two directors scared off any potential bidders, conditioned the merger on the receipt of a side deal, directed or were responsible for any of the aspects of the merger Plaintiff objects to, or influenced the other nine directors to approve the Merger Agreement unanimously.  722 A.2d at 1245.  Plaintiff does not allege unfair dealing by a majority of the Board or a link between the conclusory allegation that Durban and Dorsey acted out of allegiance to Musk and the terms of the merger.  *See Golaine*, 1999 WL 1271882, at *9. The only harm alleged is that closing was delayed and interest was deprived as a result of Mr. Musk's **post-April 25** actions.  The action is derivative, and should be dismissed with prejudice because Plaintiff is no longer a Twitter shareholder. *Lewis*, 477 A.2d  at 1049.

      **C.**      **Plaintiff Otherwise Has No Standing To Enforce The Merger Agreement**

      As discussed in the Companies' Motion, which Mr. Musk joins, Plaintiff's claims to enforce the Merger Agreement also fail because he is neither a party nor a third-party beneficiary of the Agreement and therefore lacks standing to sue under it.  *Crispo*, 2022 WL 6693660, at *11.

**II.**      <u>**THE ACTION WAS FILED IN THE WRONG FORUM**</u>

      Mr. Musk joins the Companies' Motion to dismiss under forum non conveniens.  As discussed in the Companies' Motion, Plaintiff filed his action in violation of the forum-selection clause in Twitter's Bylaws mandating that the Court of Chancery of Delaware "be the sole and exclusive forum" for his aiding and abetting the breach of fiduciary duty claim and the forum-selection clause in the Merger Agreement requiring that "any action relating to this Agreement" be filed in Delaware.  (Lifrak Decl. Ex. 3-4, Twitter Bylaws, Article VIII; Merger Agreement § 9.10 )

**III.**      <u>**PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING**</u>

      The SAC fails to state a claim for aiding and abetting breach of fiduciary duty.  The "long-standing rule" is "that arm's-length bargaining is privileged and does not, absent actual collusion

and facilitation of fiduciary wrongdoing, constitute aiding and abetting." *Morgan*, 2010 WL 2803746, at \*8. Thus, the burden to plead aiding and abetting against third-party bidders is high. *Id.* Plaintiff must allege (a) the existence of a fiduciary relationship, (b) a breach of the fiduciary's duty, (c) knowing participation in the breach by a non-fiduciary defendant, and (d) damages proximately caused by the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

### A.   Plaintiff Does Not Allege A Breach Of Fiduciary Duty By The Board

The crux of Plaintiff's claim is that two of the eleven Twitter directors breached their duty of loyalty and favored Mr. Musk's interests over the company's. (SAC ¶¶ 197-99, Lifrak Ex. 2.) Under Delaware law, the Court's role here is not to second guess Twitter's boardroom as the "business judgment rule" presumes that board decisions are made in good faith. *Orman v. Cullman*, 794 A.2d 5, 19 (Del. Ch. 2002). To overcome this presumption, a plaintiff must plead that a majority of the board was materially interested or was dominated or controlled by a materially interested director. *Huff Energy Fund, L.P. v. Gershen*, 2016 WL 5462958, at \*\*11-12 (Del. Ch. Sept. 29, 2016). Plaintiff does not and cannot do so here—the SAC does not even **attempt** to plead that a majority of the Board was materially interested or that the other nine directors that approved the Merger Agreement were dominated or controlled by Dorsey and Durban. That failing alone requires dismissal. *See id.* (dismissing fiduciary duty claim for failure to allege majority of board was interested or dominated by interested director); *Morgan,* 2010 WL 2803746, at 5 (no aiding and abetting where interested minority did not sway decision making).

Plaintiff fails even to adequately allege that either Durban or Dorsey were self-interested. As to Durban, Plaintiff contends he favored Mr. Musk due to a prior business relationship and previously worked on unrelated matters together. (SAC ¶ 51.) This does not establish self-interest. *See e.g.*, *State of Wisconsin Inv. Bd. v. Bartlett*, 2000 WL 238026, at \*6 (Del. Ch. Feb. 24, 2000) ("Evidence of personal and/or past business relationships does not raise an inference of self-interest."). As to Dorsey, Plaintiff alleges self-interest based on his friendship with Mr. Musk, the rollover of his stock in lieu of merger consideration, and "speculat[ion]" that Mr. Musk "*may*" reinstate him as Twitter's CEO. (SAC ¶¶ 51,187, 189.) This too is insufficient. To establish self-interest, Plaintiff must plead that the side benefit Dorsey received is not equally shared by other

stockholders and is material "in the context of the director's economic circumstances." *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999). The supposed benefit at issue—retaining his stock instead of selling it—does not confer any financial gain not equally shared by other stockholders or materially change Dorsey's economic circumstances. He just kept what he had. And the "speculat[ion]" that Mr. Musk may reinstate Dorsey as CEO is just that, speculation. It cannot create self-interest and would not improperly bias Dorsey even if true. *C.f. Morgan*, 2010 WL 2803746, at *5 (retaining management is a "routine occurrence").

To the extent Plaintiff contends he alleged a breach of the duty of disclosure or care, those claims fail too. Under a disclosure claim, the Board is only obligated to disclose "material" facts related to the merger. *Malpiede*, 780 A.2d at 1087. The SAC claims the Proxy did not disclose the reason why Mr. Musk's margin loan commitment for financing reduced to $6.25 billion, but the reason is immaterial as a matter of law since it disclosed both the reduction and the risk associated with increasing the equity financing commitment. *See id.* (reason for rejecting bid immaterial where bid itself was disclosed); (SAC ¶ 117.) The same logic defeats any claim based on the purported failure to disclose Dorsey's rollover agreement as that prospect was also disclosed to shareholders. (*Id.* ¶ 100.) Any duty of care claim fails because the SAC does not allege "gross negligence" or "reckless indifference" to the shareholders "without the bounds of reason." *Rabkin v. Philip A. Hunt Chem. Corp.*, 547 A.2d 963, 971 (Del. Ch. 1986). That Plaintiff does not seek to rescind the Merger belies any claim of "reckless indifference" to shareholders.

### B. Plaintiff Does Not Allege Mr. Musk Knowingly Participated In A Breach

The SAC also fails to allege Mr. Musk "knowingly participated" in any breach. To do so, it must plead facts that he (1) "participated in the board's decisions, conspired with the board, or otherwise caused the board to make the decisions at issue," and (2) did so with actual or constructive knowledge that the conduct was legally improper. *Malpiede*, 780 A.2d at 1098.

Plaintiff fails to allege that Mr. Musk played any role in the Board's decision, other than hard bargaining as a third-party bidder to execute the sale. *See In re BJ's Wholesale Club, Inc. S'holders Litig.*, 2013 WL 396202, at *14–15 (Del. Ch. Jan. 31, 2013) (alleging that bidder pressured the company to engage in a hasty sale could not give rise to aiding and abetting).

1   Plaintiff must allege facts showing that Mr. Musk either conspired with the Board to breach

2   fiduciary duties or he created or exploited conflicts of interest for his own benefit. *Malpiede*, 780

3   A.2d at 1097-98. There are no facts showing that Mr. Musk conspired with the Board or was

4   involved in its internal decisions. *See id; In re Essendant, Inc. S'holder Litig.*, 2019 WL 7290944,

5   at *17 (Del. Ch. Dec. 30, 2019) (complaint "lack[ed] non-conclusory communications between

6   [bidder] and the [] Board that would support an inference of concerted activity").

7          Instead, the SAC contends Dorsey and Durban were Mr. Musk's allies on the Board (SAC

8   ¶ 51), but it pleads no facts showing that either of them wrongfully influenced the Board's

9   decision making, let alone that Mr. Musk induced or encouraged them to engage in any wrongful

10  act. *See Morgan*, 2010 WL 2803746, at *6–7 (dismissing claim where complaint failed to allege

11  bidder exploited conflicts on the board). The SAC makes much of Dorsey's public criticisms of

12  the Board (*id.* ¶ 93), but does not allege that they made any difference to the transaction or that

13  Mr. Musk encouraged him to make them. (*Id.*) And while the SAC blames Dorsey and Durban

14  for Twitter's purported failure to conduct adequate diligence, shop Twitter to other bidders, or

15  perform a market check (*Id.* ¶ 122), it does not allege any facts showing that they were responsible

16  for those decisions or that Mr. Musk pressed the Board to make them. (*Id.*) Nor is it apparent that

17  these decisions were wrongful since the SAC is not alleging unfair price. At most, the SAC

18  alleges that Mr. Musk involved Durban and Dorsey in the bidding process to increase the

19  likelihood of reaching a deal, which is not enough to establish participation with the Board's

20  deliberations. *Jacobs v. Meghji*, 2020 WL 5951410, at *10 (Del. Ch. Oct. 8, 2020) (declining to

21  "infer knowing participation where an otherwise arm's-length bidder has recruited or involved" a

22  target's director "in the bidding process to increase the likelihood of effectuating a deal.").

23         Plaintiff also fails to allege scienter. Where, as here, a complaint does not plainly allege

24  that a third-party bidder conspired with the board to breach a fiduciary duty, a court can infer the

25  bidder's knowing participation "only if a fiduciary breaches its duty in an inherently wrongful

26  manner, and the plaintiff alleges specific facts from which that court could reasonably infer

27  knowledge of the breach." *McGowan v. Ferro*, 2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002).

28  The SAC fails to allege any "inherently wrongful" breaches. There are no allegations that the

1  price or any of the material terms of the transaction are "so egregious" as to be inherently

2  wrongful. *See Morgan*, 2010 WL 2803746, at \*4.  Nor are there sufficient allegations of excessive

3  side deals of "inherently wrongful…magnitude"—the only "side deal" alleged is Dorsey retention

4  his equity in lieu of merger consideration. (SAC ⁋ 189).  But even if the Court could infer that Mr.

5  Musk knew of the alleged wrongdoing—and it cannot—the claim would still fail because there are

6  no allegations that either director swayed the other nine directors.  *See Malpiede*, 780 A.2d at

7  1098; *Morgan*, 2010 WL 2803746, at \*5 (dismissing aiding and abetting claim where complaint

8  failed to allege the board "was influenced materially" by the allegedly interested director).

9  **IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF**

10  Mr. Musk also joins the Companies' Motion to Dismiss the second cause of action because

11  Plaintiff only seeks a declaration regarding alleged past wrongs that are now moot and fails to

12  allege any risk of future harm, rendering it an improper declaratory relief claim. *Osseous*, 191 Cal.

13  App. 4th at 366 ("[T]here is no basis for declaratory relief where only past wrongs are involved.").

14  **V.     THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED**

15  **A.     Plaintiff's Unjust Enrichment Claim Is Barred By SLUSA**

16  Plaintiff claims Mr. Musk was unjustly enriched when he allegedly failed to timely file an

17  SEC Form 13 before April 4, 2022. (SAC ⁋⁋ 76; 77; 207.)  This claim is barred by SLUSA.

18  SLUSA prohibits class action plaintiffs from evading the Private Securities Litigation

19  Reform Act by pleading securities fraud actions under state law theories. *See Fleming v. Charles*

20  *Schwab Corp.*, 878 F.3d 1146, 1153 (9th Cir. 2017).  It bars any (1) "covered class action" (2)

21  "based upon the statutory or common law" of any state (3) maintained by "any private party," if

22  the action alleges (4) either "an untrue statement or omission of material fact" or "that the

23  defendant used or employed any manipulative or deceptive device or contrivance" (5) "in

24  connection with the purchase or sale" (6) of a "covered security."  15 U.S.C. § 77p(b).

25  There is no dispute that the first, second, third, and sixth elements are met here.  This is a

26  covered class action, *compare* 15 U.S.C. § 77p(f)(2)(A) *with* SAC ⁋⁋ 43-44, based on Delaware

27  common law (SAC ⁋⁋ 206-09), brought by a private party (*id.* ⁋ 39), concerning a security listed

28  on the Nasdaq at the time the alleged misconduct occurred,  (*id.* ⁋ 15.)  Elements four and five are

1   also met.  The falsity element is interpreted to "bar jurisdiction over any claim that could give rise

2   to liability under § 10(b) or Rule 10b–5," *Fleming*, 878 F.3d at 1153, and the "connection with"

3   requirement applies broadly to any misrepresentation that "'coincide' with a securities

4   transaction," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 at 85 (2006).

5   Thus, Plaintiff's claim is barred by SLUSA because he alleges Mr. Musk omitted information he

6   was required to disclose in connection with his purchase of Twitter securities that, had it been

7   disclosed, allegedly would have caused the stock price to rise.  (SAC ¶ 77); *Fleming*, 878 F.3d at

8   1156 ("SLUSA requires only that 'the misrepresentation makes a significant difference to

9   someone's decision to purchase or to sell a covered security.'").  These allegations, while not

10   literal elements of unjust enrichment, "are fact[s] on which the proof of that state cause of action

11   depends."  *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 830 (9th Cir. 2018).

12          Plaintiff attempts to avoid SLUSA preemption by casting the alleged misconduct as an

13   action that qualifies for the so-called "Delaware carve-out," which excludes certain actions from

14   SLUSA that are "based upon the statutory or common law of the State in which the issuer is…

15   organized," and involve either (1) the purchase or sale of securities by the issuer or an affiliate

16   "***exclusively*** from or to holders of the issuer's securities" or (2) any "communication with respect

17   to the sale of securities" made by the issuer or an affiliate to its holders "concern[ing] decisions of

18   those equity holders with respect to voting their securities, acting in response to a tender or

19   exchange offer, or exercising dissenters or appraisal rights." 15 U.S.C. § 77p(d) (emphasis added).

20          The carve-out does not apply here.  First, at the time of the alleged omission Mr. Musk was

21   not Twitter's affiliate—he neither controlled nor was controlled by it.  *See* 15 U.S.C. § 77p(f)(1)

22   (defining "affiliate").   The claim involves securities listed on an open market—not sold

23   exclusively to existing shareholders—and therefore does not fall under the first exclusion.  *See*

24   *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del. 2002).  The second exclusion

25   does not apply either since Plaintiff alleges a failure to timely file an SEC disclosure, not

26   communications with shareholders about a pending offer.  *See* 15 U.S.C. § 77p(d).

27

28

**B.      Plaintiff Cannot Seek Unjust Enrichment For A Breach Of Contract**

Plaintiff's second theory of unjust enrichment—that Mr. Musk was enriched after failing to timely close the Merger—should be dismissed because it arises from an alleged breach of the Merger Agreement and, under Delaware law, a claim for unjust enrichment is unavailable if a contract governs the obligation giving rise to the claim. *Vichi*, 62 A.3d at 58, n.193 (citing *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979) ("Because the contract is the measure of plaintiffs' right, there can be no recovery under an unjust enrichment theory independent of it.")). Here, Plaintiff claims that he had the right under the Merger Agreement to receive merger consideration as of September 15, 2022 and that right was breached when Mr. Musk failed to close the transaction as of that date.  (SAC ¶ 207).  This is a breach of contract pled as unjust enrichment, which is prohibited by law. *Vichi*, 62 A.3d at 58. That Plaintiff is not a party to the Merger Agreement is irrelevant; a claim for unjust enrichment "cannot be used to circumvent basic contract principles" and cannot be used "to extend the obligations of a contract" to those who are not parties to it. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009). Just as a claim for unjust enrichment cannot be used to impose obligations on a non-party, it cannot be used to confer benefits to one either. *See id.*  "Because the [Merger Agreement] is the measure of plaintiff's right, there can be no recovery under an unjust enrichment theory independent of it" and the claim must accordingly be dismissed. *See Wood*, 401 A.2d at 942.

## CONCLUSION

For the reasons stated herein, the Defendant Elon Musk respectfully requests that the Court grant his motion and dismiss the Second Amended Complaint with prejudice.

DATED:  March 3, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Michael T. Lifrak*

Alex Spiro
Michael T. Lifrak
Joseph C. Sarles

*Attorneys for Elon Musk,  X HOLDINGS I, INC., and X HOLDINGS II, INC, and Twitter, Inc.*

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that the foregoing document was served on all counsel of record electronically or

3    by another manner authorized under FED. R. CIV. P. 5(b) on this the 3rd day of March 2023.

4
                                        QUINN EMANUEL URQUHART &
5                                       SULLIVAN, LLP

6

7                                  By  /s/ Michael T. Lifrak
8                                      Alex Spiro
                                       Michael T. Lifrak
9                                      Joseph C. Sarles
                                       Alex Bergjans
10                                     Aubrey L. Jones

11                                     *Attorneys for Elon Musk,  X HOLDINGS I, INC.,*
12                                     *and X HOLDINGS II, INC, and Twitter, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                      Case No. 3:22-CV-03074-CRB-SK
DEFENDANT ELON R. MUSK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**<u>ATTESTATION</u>**

I, Alex Bergjans, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(h)(3), I hereby attest that Michael T. Lifrak has concurred in the filing of the above document.

*/s/ Alex Bergjans*

Alex Bergjans
