QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Elon Musk, X HOLDINGS I, INC.,*
*X HOLDINGS II, INC. and Twitter Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HERESNIAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., and TWITTER, INC.,<br><br>Defendants. | CASE NO. 3:22-CV-03074-CRB-SK<br><br>**DEFENDANTS X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge:       Hon. Charles R. Breyer<br>Courtroom:  6, 17th Floor<br><br>Hearing Date: May 12, 2023<br>Time:       10 a.m. |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ...................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................3

FACTUAL AND PROCEDURAL BACKGROUND ................................................................3

ARGUMENT ............................................................................................................................6

I.     PLAINTIFF LACKS STANDING TO BRING MERGER CLAIMS................................6

       A.     Plaintiff Is Not A Party To Or A Third-Party Beneficiary Of The Merger
              Agreement.............................................................................................................7

       B.     Plaintiff Has No Standing To Bring His Claims Because They Are
              Derivative.............................................................................................................8

II.    PLAINTIFF FILED THIS ACTION IN THE WRONG FORUM.....................................8

       A.     The Action Falls Within the Forum Selection Clauses. ............................................9

              1.     Twitter's Bylaws Mandate That This Action Be Litigated In
                     Delaware.....................................................................................................9

              2.     The Merger Agreement Requires That All Of Plaintiff's Claims Be
                     Brought in Delaware...................................................................................11

       B.     The Forum-Selection Clauses Are Valid And Enforceable....................................12

       C.     Public Interest Factors Weigh In Favor Of Enforcement.......................................12

       D.     Because The Forum Selection Clauses Apply To At Least One Cause of
              Action, Forum Non Conveniens Applies To All....................................................13

III.   PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING
       AGAINST THE HOLDING COMPANIES....................................................................14

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF. ...............14

CONCLUSION .......................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*,
    992 A.2d 1239 (Del. Ch. 2010) ............................................................... 11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013) ................................................................... 9, 12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................... 14

*Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*,
    73 A.3d 934 (Del. Ch. 2013) ...................................................... 12

*Colwell v. Dep't of Health & Human Servs.*,
    558 F.3d 1112 (9th Cir. 2009) ..................................................... 6

*Cont'l Grain Co. v. The FBL-585*,
    364 U.S. 19 (1960) .................................................................... 13

*Crispo v. Musk*,
    No. 2022-0666-KSJM, 2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ........... 1, 5, 6, 7, 8, 12

*Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*,
    2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) ................................... 11

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*,
    248 F. Supp. 3d 570 (D. Del. 2017) ............................................... 8

*Granite Re, Inc. v. N. Lines Contracting, Inc.*,
    478 F. Supp. 3d 772 (D. Minn. 2020) ........................................ 13, 14

*Hadley v. Shaffer*,
    2003 WL 21960406 (D. Del. Aug. 12, 2003) ................................... 11

*Hart v. Facebook Inc.*,
    2022 WL 1427507 (N.D. Cal. May 5, 2022) ...................................... 6

*In re Facebook, Inc. S'holder Derivative Priv. Litig.*,
    367 F. Supp. 3d 1108 (N.D. Cal. 2019) .................................... 2, 9, 10, 12

*In re First Interstate Bancorp Consol. S'holder Litig.*,
    729 A.2d 851 (Del. Ch. 1998) .................................................... 1, 2

*In re Match Grp., Inc. Derivative Litig.*,
    2022 WL 3970159 (Del. Ch. Sept. 1, 2022) ...................................... 2

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
    2022 WL 263312 (D. Del. Jan. 27, 2022), *report and recommendation adopted by*,
    2022 WL 957761 (D. Del. Mar. 30, 2022) ..................................... 9, 10

*In re CytRx Corp. S'holder Derivative Litig.*,
    2015 WL 9871275 (C.D. Cal. Oct. 30, 2015) ................................. 12, 13

*Lewis v. Anderson*,
    477 A.2d 1040 (Del. 1984) ........................................................ 6, 8

*MAI Systems Corp. v. UIPS*,
    856 F. Supp. 538 (N.D. Cal. 1994) ................................................ 7

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ...................................................... 10, 14

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988)..................................................................................... 11

*Manila Indus., Inc. v. Ondova Ltd. Co.*,
    334 F. App'x 821 (9th Cir. 2009).............................................................................. 11

*Martinez v. GPB Cap. Holdings, LLC*,
    2020 WL 3054001 (Del. Ch. June 9, 2020)................................................................ 8

*Meyer v. Howmedica Osteonics Corp.*,
    2015 WL 728631 (S.D. Cal. Feb. 19, 2015)............................................................. 12

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009)............................................................................................. 15

*Minghong Inv., Inc. v. Felix Chac Chuo*,
    2022 WL 2189365 (C.D. Cal. Mar. 9, 2022)............................................................ 13

*Moretti v. Hertz Corp.*,
    No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)........................ 13

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
    922 A.2d 417 (Del. Ch. 2007).................................................................................... 8

*Ocegueda on behalf of Facebook v. Zuckerberg*,
    526 F. Supp. 3d 637 (N.D. Cal. 2021) ................................................................. 2, 10

*Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC*,
    191 Cal. App. 4th 357 (2010)............................................................................... 3, 14

*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Zonko Builders, Inc.*,
    No. CV 21-437-MAK, 2021 WL 4061564 (D. Del. Sept. 7, 2021) ............................. 8

*San Diego Cnty. Gun Rts. Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996).................................................................................... 15

*Simon v. Navellier Series Fund*,
    2000 WL 1597890 (Del. Ch. Oct. 19, 2000) ............................................................ 11

*Skold v. Galderma Lab'ys, L.P.*,
    99 F. Supp. 3d 585 (E.D. Pa. 2015) ......................................................................... 10

*Travers v. Louden*,
    254 Cal. App. 2d 926 (1967).................................................................................... 14

*Vistage Worldwide, Inc. v. Knudsen*,
    2020 WL 71140 (S.D. Cal. Jan. 7, 2020) ................................................................ 12

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018)................................................................................ 9, 11

**Rules and Regulations**

Fed. R. Civ. P. 5(b).................................................................................................... 16

Rule 12(b)(1)............................................................................................................ 1, 6

Rule 12(b)(6) ..................................................................................................... 1, 2, 6, 7

**Additional Authorities**

5 *Witkin, Cal. Procedure* (5th ed. 2008) ...................................................................... 3

PLEASE TAKE NOTICE THAT, on May 12, 2023, or as soon thereafter as it may be heard, Defendants X Holdings I, Inc., X Holdings II, Inc. ("Holding Companies") and Twitter, Inc. ("Twitter") will hereby move the above entitled Court to dismiss Plaintiff's Second Amended Complaint ("SAC") (Dkt. 66).[1]

This motion asks the Court to: (1) dismiss the SAC in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) because Plaintiff is neither a party to nor third-party beneficiary of the Merger Agreement between Twitter and the Holding Companies and therefore lacks standing to bring any claim to enforce it and, independently, because Plaintiff's claims are derivative in nature and he lacks standing to bring them as he is no longer a shareholder of Twitter; (2) dismiss the SAC in its entirety under the doctrine of forum non conveniens as it was filed in violation of the forum-selection clause in Twitter's Bylaws and the Merger Agreement; (3) dismiss, pursuant to Rule 12(b)(6), the First Cause of Action for aiding and abetting breach of fiduciary duty against the Holding Companies for failure to state a claim; and (4) dismiss, pursuant to Rule 12(b)(6) the Second Cause Action for declaratory relief against all Defendants for failure to state a claim.

## SUMMARY OF ARGUMENT

Plaintiff has filed this action in the wrong Court, violating two applicable forum-selection clauses, seeking a declaration and injunction regarding a contract he has no standing to enforce, and asserting a claim against the Holding Companies based on a single conclusory allegation that they took unidentified "actions" constituting aiding and abetting breach of fiduciary duty. The defective Second Amended Complaint should be dismissed in its entirety, with prejudice.

***First,*** Plaintiff lacks standing to pursue claims relating to enforcement of the Twitter Merger Agreement for a simple reason: Plaintiff is not a party nor third-party beneficiary to that contract. *See Crispo v. Musk*, No. 2022-0666-KSJM, 2022 WL 6693660, at *1 (Del. Ch. Oct. 11, 2022) (rejecting Twitter shareholder standing under the ***exact same*** Merger Agreement at issue in this case). Plaintiff also seeks damages pro rata for shareholders based on the Merger consideration they received. That is a quintessential shareholder derivative claim, *In re First*

---

[1]   In relevant part, the Holding Companies and Twitter also join in the motion filed contemporaneous herewith by Defendant Elon R. Musk (the "Musk Motion").

*Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 861 (Del. Ch. 1998), which Plaintiff likewise lacks standing to bring because he is no longer a Twitter shareholder. *In re Match Grp., Inc. Derivative Litig.*, 2022 WL 3970159, at *11 (Del. Ch. Sept. 1, 2022).

**Second**, even if Plaintiff had standing to bring these claims, he is barred from bringing them in this Court by two separate forum-selection clauses. The action should be dismissed under the doctrine of forum non conveniens. Plaintiff, a former Twitter shareholder, is bound by the mandatory forum-selection clause in Twitter's Bylaws requiring that the Court of Chancery for the State of Delaware ("Chancery Court") "be the sole and exclusive forum" for "any action asserting a claim of breach of a fiduciary duty owed by, or otherwise wrongdoing by, any director." This clause applies to Plaintiff's aiding and abetting claim since an underlying breach of fiduciary duty by a director is a necessary element. Indeed, courts here and in Delaware have found that forum-selection clauses containing identical language apply to aiding and abetting claims by shareholders. *See e.g., In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1121 (N.D. Cal. 2019); *Ocegueda on behalf of Facebook v. Zuckerberg*, 526 F. Supp. 3d 637, 648 (N.D. Cal. 2021). On top of all that, the Merger Agreement—the ***very contract Plaintiff seeks to enforce***—has a forum-selection clause mandating that all claims relating to it be filed in Delaware. Plaintiff—a Virginia resident asserting Delaware law claims and seeking to enforce a contract governed by Delaware law—lacks any credible argument under the Ninth Circuit's forum non conveniens factors to prevent enforcement of these clauses. They should be enforced and wasteful parallel litigation avoided.

**Finally,** Plaintiff's individual causes of action against the Holding Companies and Twitter fail on the merits and should be dismissed pursuant to Rule 12(b)(6). Plaintiff asserts that the Holding Companies aided and abetted a breach of fiduciary duty, which requires him to plead that they conspired with Twitter's Board and directed (or participated) in its decisions with knowledge of their wrongdoing. Yet the only allegation against them is that they "took" some unidentified "actions at Musk's direction to carry out his unlawful conduct." (SAC ¶ 200.) Plaintiff's second cause of action fares no better. Plaintiff seeks a declaratory judgment on the moot question of when the conditions for closing Mr. Musk and the Holding Companies' acquisition of Twitter

were satisfied.  But the transaction has already closed, Plaintiff has already received merger consideration, and there are no allegations of future harm or that this declaration will have any impact on Plaintiff's ongoing relationship with the Defendants—indeed, there is no relationship between the parties.  The demand for declaratory relief therefore is moot, as it seeks only redress for past alleged wrongs, and "there is no basis for declaratory relief where only past wrongs are involved." *Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC*, 191 Cal. App. 4th 357, 366 (2010) (citing 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 869, p. 284).  Accordingly, this claim should be dismissed independently.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Should the Court dismiss the SAC for lack of standing where Plaintiff, a former Twitter shareholder, (1) seeks to enforce a Merger Agreement to which he is neither a party nor third-party beneficiary and (2) brings claims to recover damages on behalf of Twitter as a whole that are derivative in nature?

2.      Should the Court dismiss the SAC where Plaintiff filed this action in California in violation of the forum-selection clause in Twitter's Bylaws and the forum-selection clause in the Merger Agreement on which Plaintiff sues?

3.       Should the Court dismiss Plaintiff's aiding and abetting breach of fiduciary duty claim where Plaintiff failed to allege the elements of that claim?

4.      Should the Court dismiss Plaintiff's declaratory and injunctive relief claim pertaining to the Merger Agreement where Plaintiff only seeks to redress past harm?

## FACTUAL AND PROCEDURAL BACKGROUND

The Merger Agreement and Twitter Transaction.  On April 25, 2022, Mr. Musk and the Holding Companies executed an agreement to acquire Twitter at $54.20 per share.  (SAC ¶ 101); *see also* Declaration of Michael T. Lifrak ("Lifrak Decl.") Ex. 4, "Merger Agreement")  The Merger Agreement did not set a closing date for the transaction.  (Merger Agreement § 2.2.) Following the settlement of brief and well-publicized litigation between Mr. Musk, the Holding Companies, and Twitter, the transaction closed on October 27, 2022 and Twitter's shareholders

were paid merger consideration at the $54.20 per share price set in the Merger Agreement.  (SAC ¶ 34.)

The First Amended Complaint.  Before the transaction closed, Plaintiff, a Virginia resident and purported Twitter shareholder (SAC ¶ 39), filed this putative class action against Elon Musk, Twitter, and the Holding Companies.  Plaintiff filed a First Amended Complaint ("FAC") on July 1, 2022 asserting causes of action for (1) aiding and abetting breach of fiduciary duty against Mr. Musk and the Holding Companies, (2) declaratory and injunctive relief against Twitter, the Holding Companies, and Mr. Musk, and (3) unjust enrichment against Mr. Musk.  (FAC ¶¶ 155-169.)  Plaintiff initially sought damages arising from Twitter's declining share price following the announcement of the merger, some unspecified declaration and injunctive relief seeking to enforce some aspect of the Merger Agreement on Twitter's behalf, and disgorgement of profits and money earned by Mr. Musk in connection with Twitter stock.  (*Id*.)

The Second Amended Complaint.  After the transaction closed and Plaintiff was paid $54.20 in merger consideration in exchange for his Twitter stock, Plaintiff amended his Complaint.  The SAC asserts the exact same causes of action as the FAC but now seeks damages for lost interest on merger consideration, a *post facto* declaration concerning the closing conditions of the already-closed Merger Agreement (and unspecified injunctive relief), and disgorgement arising from Mr. Musk and the Holding Company's acquisition of Twitter ("Merger").  (SAC ¶¶ 195-209.)  The SAC does not seek to challenge the validity or fairness of the Merger, nor does it allege that Twitter's shareholders were deprived of the $54.20 per share merger consideration as provided by the Merger Agreement.  Instead, the gist of Plaintiff's SAC is that Mr. Musk wrongfully delayed the closing of the transaction by a month-and-a-half and thereby damaged Plaintiff by depriving shareholders of six weeks of interest on merger consideration, (SAC ¶¶ 195-209.).  In addition, the SAC asserts that Mr. Musk aided and abetted Twitter directors Jack Dorsey and Egon Durban's breaches of their fiduciary duties to Twitter in connection with the negotiation of the Merger Agreement governing the acquisition and made disparaging statements about Twitter following the execution of the Merger Agreement (*id.*).

1    The SAC asserts two causes of action against the Holding Companies[2]:  (1) aiding and

2    abetting breach of fiduciary duty and (2) declaratory and injunctive relief relating to the Merger

3    Agreement.  (SAC ¶¶ 195-205.)  As to the first, the only allegation against the Holding Companies

4    is that they are "controlled by Musk and took actions at Musk's direction to carry out his unlawful

5    conduct." (*Id.* ¶ 200.)  The SAC does not plead any facts establishing Mr. Musk's control over the

6    Holding Companies or identify any purported "actions" they allegedly took at Mr. Musk's

7    direction.  As to the second cause of action, the only allegations against the Holding Companies is

8    that they signed the Merger Agreement. (*Id.* ¶ 204.)  The SAC also asserts a single cause of action

9    against Twitter for declaratory and injunctive relief, alleging only that Twitter was a party to the

10   Merger Agreement. (SAC ¶ 205.)

11   The SAC alleges that on April 25, 2022, the Holding Companies, Twitter, and Mr. Musk

12   executed the Merger Agreement.  (SAC ¶¶ 101, 204.)  Plaintiff does not allege that he is a party to

13   or a third-party beneficiary of the Merger Agreement—to the contrary, he alleges the Merger

14   Agreement is between the ***Defendants***, not Plaintiff.  (*Id.*, ¶¶ 204-05.)

15   <u>Relevant Beneficiary Provisions in the Merger Agreement.</u> The Merger Agreement

16   contains a "No Third-Party Beneficiaries" provision which states that the agreement "is not

17   intended to and shall not confer upon any Person other than the parties hereto any rights or

18   remedies hereunder" except for limited carve outs—D&O Indemnified Parties, Company Related

19   Parties[3], and Parent Related Parties—that do not apply—and are not alleged in the SAC to

20   apply—to Plaintiff in this case.  (Merger Agreement, § 9.7; *see generally* SAC).

21   Notably, the Chancery Court has already held in *Crispo v. Musk*, C.A. No. 2022-0666-

22   KSJM, another shareholder class action lawsuit brought to enforce the Merger Agreement that,

23   _____

24   [2]  As alleged in the SAC, the Holding Companies are Delaware corporations formed to effectuate
     the purchase of Twitter, a Delaware corporation.  (SAC ¶ 42.)  X Holdings II is the "Acquisition

25   Sub" and X Holdings I is its parent.  (*Id.*)  Twitter is a Delaware corporation too.  (*Id.* ¶ 40.)

26   [3]  The term "Company Related Parties" is defined to include Twitter stockholders.  (Merger
     Agreement, § 8.3(c)(i).)  However, this provision only serves to protect Twitter shareholders from

27   liability in the event of a failure to consummate the Merger Agreement by limiting the Holding
     Companies' remedy.  Thus, it would only apply in a situation where the Holding Companies

28   sought damages from Twitter shareholders.

under Section 9.7, Twitter shareholders do not have "third-party beneficiary standing to specifically enforce the Merger Agreement." *Crispo v. Musk*, No. 2022-0666-KSJM, 2022 WL 6693660, at *11 (Del. Ch. Oct. 11, 2022).

Relevant Forum Selection Provisions in the Twitter Bylaws and Merger Agreement. Plaintiff's claims in the SAC are subject to the forum-selection clauses in Twitter's Bylaws and the Merger Agreement.  Twitter's Bylaws contain a forum-selection clause stating, in relevant part, "the Court of Chancery of the State of Delaware . . . shall, to the fullest extent permitted by law, be the sole and exclusive forum for . . . any action asserting a claim of breach of a fiduciary duty owed by, or otherwise wrongdoing by, any director. . . of the corporation to the corporation . . . " (Lifrak Decl. Ex. 3, Bylaws, Art. VIII.)  The Bylaws also mandate that "any derivative action" also be brought in Chancery Court.  (*Id*.)

The Merger Agreement contains a forum-selection clause that provides that "each of the parties … agree that it will not bring any action relating to this Agreement … in any court other than the Delaware Court of Chancery, any other court of the State of Delaware or any federal court sitting in the State of Delaware." (Merger Agreement, § 9.10(a)(iii).)

## ARGUMENT

## I.   PLAINTIFF LACKS STANDING TO BRING MERGER CLAIMS

First, and fundamentally, Plaintiff's causes of action against the Holding Companies and Twitter should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6) because Plaintiff lacks standing to enforce the terms of the Merger Agreement.  He thus cannot bring his claim for declaratory relief regarding the Merger Agreement or his derivative claims for aiding and abetting breach of fiduciary duties against the Holding Companies, *see Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984) ("A plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit.").

"Under Rule 12(b)(1), a defendant may move to dismiss for lack of standing and thus lack of subject matter jurisdiction." *Hart v. Facebook Inc.*, 2022 WL 1427507, at *5 (N.D. Cal. May 5, 2022) (Breyer, J.). "The burden of establishing … standing rests on the party asserting the claim." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). And the failure

1   to adequately plead standing warrants dismissal under Rule 12(b)(6) for failure to state a claim.

2   *MAI Systems Corp. v. UIPS*, 856 F. Supp. 538, 540 (N.D. Cal. 1994) ("Failure to properly allege

3   standing is ground for dismissal under Rule 12(b)(6).").

4           **A.**        **Plaintiff Is Not A Party To Or A Third-Party Beneficiary Of The Merger**

5                    **Agreement**

6           Each of Plaintiff's claims seek to enforce or obtain relief under the Merger Agreement

7   between the Defendants.  Plaintiff's first cause of action for aiding and abetting seeks "damages,

8   including lost interest and monies due to the wrongful delay in the closing of the Merger" and

9   Plaintiff's second cause of action for declaratory and injunctive relief seeks to enforce the Merger

10  Agreement through a "declaratory judgment that all conditions necessary for the closing of the

11  Merger were satisfied as of September 13, 2022" and "appropriate injunctive relief" to effectuate

12  that declaration. (SAC ¶¶ 201, 205).  But Plaintiff has not alleged that he is a party to or a third-

13  party beneficiary of the Merger Agreement and the Chancery Court has already held that former

14  Twitter shareholders—like Plaintiff—have no standing to enforce it.  *Crispo*, 2022 WL 6693660,

15  at *5 ("the plain language of Section 9.7 supports a holding that the parties to the Merger

16  Agreement did not intend to confer third-party beneficiary standing to Twitter's stockholders").

17          In *Crispo*, the Chancery Court held that Section 9.7 of the Merger Agreement—which

18  expressly states that it is "not intended to and shall not confer upon any Person other than the

19  parties hereto any rights or remedies"—is a blanket prohibition that "signals an intent to disclaim

20  stockholders as third-party beneficiaries" and barred Twitter shareholders from bringing suit to

21  enforce the Merger Agreement. *Crispo*, at *4.  Moreover, the Chancery Court noted that the fact

22  that the Merger Agreement included a limited carve-out to this prohibition to protect shareholders

23  from liability in any action brought by the Holding Companies indicated that Twitter

24  "stockholders are not third part[y] [beneficiaries] in other contexts." *Id.* at *5.  As confirmed by

25  the Chancery Court, the plain language of the Merger Agreement makes clear that Plaintiff is not a

26

27

28

1    third-party beneficiary and therefore has no standing to assert claims pursuant to the Agreement.[4]

2        It is well-settled under Delaware law, which governs the Merger Agreement (SAC ¶ 103),

3    that only parties to a contract and intended third-party beneficiaries have standing to enforce

4    contracts.  *See, e.g., E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*, 248 F.

5    Supp. 3d 570, 575 (D. Del. 2017); *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC,* 922

6    A.2d 417, 434 (Del. Ch. 2007).  Accordingly, Plaintiff simply lacks standing to bring a claim for

7    declaratory relief or damages under the Merger Agreement, and his claims must be dismissed with

8    prejudice.  *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Zonko Builders, Inc.*, No. CV 21-437-

9    MAK, 2021 WL 4061564, at *12 (D. Del. Sept. 7, 2021) (ruling that plaintiffs "lack standing to

10   seek declaratory judgment regarding [a contract] to which they are not parties . . .");  *Martinez v.*

11   *GPB Cap. Holdings, LLC*, 2020 WL 3054001, at *6 (Del. Ch. June 9, 2020) (non-party had no

12   standing to seek specific performance of an agreement with no third-party beneficiary status).

13        **B.    Plaintiff Has No Standing To Bring His Claims Because They Are Derivative**

14        As articulated in the Musk Motion, Plaintiff also lacks standing to bring his claims because

15   they are derivative—as they seek to obtain relief on behalf of Twitter and not individual

16   shareholders—and Plaintiff's standing to bring the claims were extinguished when the Merger

17   closed.  *See Lewis*, 477 A.2d at 1049.  The Holding Companies and Twitter accordingly join the

18   Musk Motion on those grounds and incorporate all argument by reference herein.

19   **II.    PLAINTIFF FILED THIS ACTION IN THE WRONG FORUM**

20        Even apart from the dispositive standing issues, Plaintiff improperly filed his action in the

21   Northern District of California in violation of two separate and binding forum-selection clauses:

22   (1) the forum selection clause in Twitter's Bylaws, which requires that any action "asserting a

23   claim of breach of a fiduciary duty owed by, or otherwise wrongdoing by, any director" of Twitter

---

24   [4]  Nor can Plaintiff rely on Section 8.2 of the Merger Agreement to manufacture an argument that
     it provides him with standing to pursue a claim for damages for a delayed closing.  That provision
25   only applies to claims for damages arising from the "termination" of the Merger Agreement, not a
     delayed closing.  (Merger Agreement § 8.2.)  Moreover, as the Chancery Court in *Crispo* noted,
26   the language in Section 8.2 "mimics . . . provisions that are not intended to grant third-party
     beneficiary status to stockholders" and thus would not confer standing even if applicable.  *See*
27   *Crispo*, at *11.

28

1    be brought in the Chancery Court, and (2) the Merger Agreement's forum-selection clause, which

2    requires that any "action relating to this Agreement" be filed in Delaware.  Under the doctrine of

3    forum non conveniens, these "forum-selection clause[s] should be given controlling weight in all

4    but the most exceptional cases," *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571

5    U.S. 49, 63 (2013), and "must [be] enforc[ed]…unless the contractually selected forum affords the

6    plaintiffs no remedies whatsoever."  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d

7    1081, 1092 (9th Cir. 2018).

8         To determine whether to dismiss an action to enforce the parties' agreed upon forum,

9    courts consider (1) whether the action falls within the scope of the forum-selection clause, (2)

10   whether the clause is valid and enforceable, and (3) whether public interest factors weigh against

11   enforcement (they rarely do).  *See id.* at 1086-88.  Plaintiff "must bear the burden of showing

12   why" the clause should not be enforced.  *Atl. Marine*, 571 U.S. at 63.  The forum-selection clauses

13   in Twitter's Bylaws and the Merger Agreement are valid, enforceable, and require that Plaintiff's

14   claims be pursued in Delaware.  The Court should enforce the clauses and dismiss this action.

**A.      The Action Falls Within the Forum-Selection Clauses**

1.      Twitter's Bylaws Mandate That This Action Be Litigated In Delaware.

17        The Bylaws' forum-selection clause states that the Chancery Court "shall…be the sole and

18   exclusive forum for…any action asserting a claim of breach of fiduciary duty owed by, or

19   otherwise wrongdoing by, any director." (Bylaws at Art. VIII.)  Plaintiff asserts the Holding

20   Companies and Mr. Musk aided and abetted a breach of fiduciary duty by two of Twitter's

21   directors. (SAC ¶¶ 195-202.)  The claim is covered by this clause.  *See In re Facebook,* 367 F.

22   Supp. 3d at 1119 (dismissing aiding and abetting claim in shareholder action pursuant to forum-

23   selection clause covering "any action asserting a claim of breach of fiduciary duty owed by, or

24   other wrongdoing by, any director"); *In re Pattern Energy Grp. Inc. Sec. Litig.*, 2022 WL 263312,

25   at *9–10 n. 8 (D. Del. Jan. 27, 2022), *report and recommendation adopted by* 2022 WL 957761

26   (D. Del. Mar. 30, 2022) (same).

27        Plaintiff's claim for aiding and abetting breach of fiduciary duty requires a finding that

28   Directors Dorsey and Durban breached their fiduciary duties to Twitter and engaged in

wrongdoing in connection with the acquisition. *See Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); (SAC ¶¶ 195-205.)  To establish this, Plaintiff must prove that the directors owed and breached a fiduciary duty to Twitter.  *Id.*  ("the complaint must allege facts that satisfy the four elements of an aiding and abetting claim:  '(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty…'").  It is axiomatic that aiding and abetting "assert[s] a claim of breach of fiduciary duty," which is why courts in this District and in Delaware have found that language in forum-selection clauses identical to the one here apply to such claims.  *See In re Facebook*, 367 F. Supp. 3d at 1120; *Pattern Energy*, 2022 WL 263312, at * 10 n. 8.  Plaintiff's action also falls within the scope of the clause because he alleges that Dorsey, a Twitter director, engaged in wrongdoing in connection with the merger (*e.g.*, ¶ 93), which is also included in the clause.

Plaintiff attempts to plead around this latter clause by ***foregoing*** a direct claim for breach of fiduciary duty—and arguing that Article VIII only pertains to a "claim for breach of fiduciary duty" and "cannot be read to cover [his] claim for *aiding and abetting* a breach of [that] fiduciary duty." Dkt. 61 at 4 (emphasis added).  Plaintiff's argument is atextual.  The language of Article VIII is ***not*** limited to a bare breach of fiduciary duty claim, but applies to ***any action*** that asserts a breach of that duty (or ***any other wrongdoing*** by a company director).  Nor does Article VIII limit itself to an action brought ***against*** the company director directly.  On its face, aiding and abetting a breach of a director's fiduciary duty is contemplated by the forum-selection clause.

Plaintiff's argument also ignores the weight of cases in this judicial district that have examined the ***exact same forum-selection language*** as found in Twitter's Bylaws and determined that it applies as much to aiding and abetting a breach of fiduciary claims as it does to bare fiduciary duty claims.  *See In re Facebook.*, 367 F. Supp. 3d at 1122; *Ocegueda*, 526 F. Supp. 3d at 650. Plaintiff's argument also ignores that courts look at "the substance of [] plaintiff's claims, stripped of their labels" in determining whether the claim falls within the scope of the forum selection clause.  *Skold v. Galderma Lab'ys, L.P.*, 99 F. Supp. 3d 585, 609 (E.D. Pa. 2015).  Thus, "[c]ourts in Delaware and other jurisdictions have found that '[a] forum selection clause should not be defeated by artful pleading of claims" avoiding the claim contained in the forum selection

clause. *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010) (citing *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *3 (Del. Ch. Oct. 19, 2000)). Particularly, where the claim made involves "the same operative facts" as the claim omitted and "ultimately depend[s] on the existence of" this omitted claim. *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000).

2. <u>The Merger Agreement Requires That All Of Plaintiff's Claims Be Brought in Delaware.</u>

The Merger Agreement provides that the parties may "not bring any action relating to this Agreement or the transactions contemplated by this Agreement in any court other than the Delaware Court of Chancery, any other court of the State of Delaware or any federal court sitting in the State of Delaware." (Merger Agreement § 9.10.) Forum-selection clauses "covering disputes 'relating to' a particular agreement apply to any disputes that reference [] or have some 'logical or causal connection' to the agreement," and not just those that "grow out of" or "require interpretation of" the contract at issue. *Yei A. Sun*, 901 F.3d at 1086; *Manila Indus., Inc. v. Ondova Ltd. Co.*, 334 F. App'x 821, 823 (9th Cir. 2009) (forum selection provision covered plaintiff's claims because claims "relate[d] in some way" to the "rights and duties enumerated in the Agreement"). There can be no dispute that all of Plaintiff's claims "relate" to the Merger Agreement—the First Cause of Action as to misconduct under the Merger Agreement (SAC ¶¶ 195-202), the Second Cause of Action seeking declaratory relief under the Merger Agreement (*id.* ¶¶ 203-205) and the Third Cause of Action seeking restitution because of a delay in closing under the Merger Agreement (*id.* ¶¶ 206-209).

Plaintiff's position, however, is that even though he seeks to enforce the Merger Agreement, it is not enforceable ***against him***, stating: "[t]he forum selection clause in the Merger Agreement . . . does not bind [him] because he was not a signatory." Dkt. 61 at 4. Plaintiff misstates the law. It is well established that ***non-parties*** to a forum-selection clauses are nevertheless bound where their claims are "closely related to the contractual relationship." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988); *Hadley v. Shaffer*, 2003 WL 21960406, at *6 (D. Del. Aug. 12, 2003). Where, as here, a non-party's claim requires

the determination of some aspect of the underlying agreement that contains the forum-selection clause, it is "closely related" and enforcement of the forum-selection clause against the non-party is proper. *Meyer v. Howmedica Osteonics Corp.*, 2015 WL 728631, at *13 (S.D. Cal. Feb. 19, 2015); *see also Vistage Worldwide, Inc. v. Knudsen*, 2020 WL 71140, at *7 (S.D. Cal. Jan. 7, 2020) (collecting cases applying the "closely related" test).

## B.    The Forum-Selection Clauses Are Valid And Enforceable

As to the second factor, the Bylaws' forum-selection clause is enforceable against Plaintiff, a Twitter shareholder.

When Plaintiff purchased stock, he agreed to be bound by Twitter's valid Bylaws— including the forum-selection clause. *See Facebook*, 367 F. Supp. 3d at 1122 (enforcing forum-selection clause in certificate of incorporation); *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013) ("a forum-selection clause adopted by a board with the authority to adopt bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses"); *In re: CytRx Corp. S'holder Derivative Litig.*, 2015 WL 9871275, at *4 (C.D. Cal. Oct. 30, 2015).

The Merger Agreement forum-selection clause is also valid and enforceable, indeed, for Plaintiff to argue otherwise would require him to abandon his claims altogether that are predicated on enforceability of the Merger Agreement.

## C.    Public Interest Factors Weigh In Favor Of Enforcement

Finally, Courts may consider "public interest" factors—court congestion and administration concerns, local interest, and which forum is more "at home" with the law at issue— but they "rarely" defeat a motion. *Atl. Marine*, 571 U.S. at 64.  In any event, these factors weigh heavily in favor of enforcing the forum selection clause and favors dismissal.  Substantive litigation on the Merger issues between Twitter and Mr. Musk have been pursued and continue to be pursued in Delaware. *Crispo*, for example, in Chancery Court involving issues associated with the Merger that overlap with Plaintiff's claims, and the litigation between Mr. Musk and Twitter itself in that forum (before the same Judge).  "Permitting [the] situation," Plaintiff seeks, in which multiple cases about the same issues "are simultaneously pending in different . . . [c]ourts leads to

the wastefulness of time, energy and money." *See Cont'l Grain Co. v. The FBL*-585, 364 U.S. 19, 26 (1960). Dismissal of this action in favor of the forum where the precise issues in this case have and are already being litigated would prevent this waste.

By contrast, local interests do not favor litigation in California. Although Plaintiff alleges that some of the predicate acts occurred in this state, three of the four defendants are Delaware corporations, all Defendants have ***already*** litigated related issues in the Chancery Court, and Plaintiff is a Virginia resident. *See Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *5 (N.D. Cal. Apr. 11, 2014). Also weighing heavily in favor of dismissal: every claim requires an application of Delaware law, with which Delaware courts have more familiarity. *See CytRx*, 2015 WL 9871275, at *6. All told, this forum is inconvenient under the test employed by courts in the Ninth Circuit and should be dismissed.

**D.      Because The Forum Selection Clauses Apply To At Least One Cause of Action, Forum Non Conveniens Applies To All**

Because the Bylaws mandate that Chancery Court, a Delaware state court, be "the sole and exclusive forum" to adjudicate Plaintiff's aiding and abetting claim, the entire action should be dismissed under forum non conveniens. *Atl. Marine*, 571 U.S. at 60 (dismissal under forum non conveniens is "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum"). Where, as here, a mandatory forum-selection requires that at least one claim be litigated in a state forum, judicial efficiency and the interests of justice provide that the entire action be dismissed and adjudicated there. *See e.g.*, *Minghong Inv., Inc. v. Felix Chac Chuo*, 2022 WL 2189365, at *6 (C.D. Cal. Mar. 9, 2022) (dismissing entire action where a minority of claims were covered by forum-selection clause).

Moreover, where an action implicates multiple non-conflicting, overlapping forum-selection clauses, courts enforce the latter, more restrictive clause and dismiss the action. *Granite Re, Inc. v. N. Lines Contracting, Inc.*, 478 F. Supp. 3d 772, 780 (D. Minn. 2020) (citing cases). Thus, because the Bylaws' forum-selection clause requires that the aiding and abetting claim be brought in Chancery Court and the Merger Agreement requires that ***all*** claims be brought in a state

1   or federal court in Delaware, the entire action should be dismissed pursuant to forum non

2   conveniens. *See id.*

3   **III.    PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING**

4          **AGAINST THE HOLDING COMPANIES**

5          Plaintiff's aiding and abetting claim against the Holding Companies should also be

6   dismissed for failure to state a claim. As discussed in Mr. Musk's Motion, the SAC fails to allege

7   an underlying breach of fiduciary duty, knowing participation in the breach by Mr. Musk, and

8   damages proximately caused by the breach. *Malpiede*, 780 A.2d at 1096.  The Holding Companies

9   join that Motion.   The claim should also independently be dismissed against the Holding

10  Companies because Plaintiff alleges no facts giving rise to any liability against the Holding

11  Companies with any degree of specificity.  To plead aiding and abetting, Plaintiff must allege (1)

12  that the Holding Companies "participated in the board's decisions, conspired with the board, or

13  otherwise caused the board to board to make the decisions at issue," (2) with actual or constructive

14  knowledge that the conduct was legally improper. *Malpiede*, 780 A.2d at 1098.

15         The SAC does not come close to meeting these requirements. All Plaintiff alleges is that

16  the Holding Companies "took" some unidentified "actions at Musk's direction to carry out his

17  unlawful conduct." (SAC ¶ 200.) This allegation, pleaded without any underlying facts to support

18  it, is a vague conclusion insufficient to establish Plaintiff's "high" burden to plead that the

19  Holding Companies "knowingly participated" in any breach. *See Bell Atl. Corp. v. Twombly*, 550

20  U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the grounds of his entitlement to relief

21  requires more than labels and conclusions"); *Malpiede*, 780 A.2d at 1098 (plaintiff must plead

22  specific facts that third party knowingly participated in breach).  The SAC fails on that basis.

23  **IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF.**

24         Plaintiff's declaratory and injunctive relief claim should also be dismissed because it only

25  seeks a declaration regarding alleged past wrongs that are now moot and fails to allege any risk of

26  future harm.  "[T]here is no basis for declaratory relief where only past wrongs are involved."

27  *Osseous Techs*, 191 Cal. App. 4th at 366; *see also Travers v. Louden*, 254 Cal. App. 2d 926, 931

28  (1967) ("There is unanimity of authority to the effect that the declaratory procedure operates

1  prospectively, and not merely for the redress of past wrongs."); *San Diego Cnty. Gun Rts. Comm.*

2  *v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("[P]laintiffs seek declaratory and injunctive relief

3  only, there is a further requirement that they show a very significant possibility of future harm; it

4  is insufficient for them to demonstrate only a past injury.").  Here, the SAC seeks a declaration

5  regarding rights and obligations for a transaction that has already closed and whether "all

6  conditions necessary for the closing of the Merger *were* satisfied as of September 13, 2022" (SAC

7  ¶ 205) (emphasis added).  Plaintiff makes no allegations—nor could he—that he may suffer future

8  harm in connection with the Merger Agreement.  Moreover, Plaintiff is no longer a Twitter

9  shareholder and has no current or future contractual relationship with the Defendants.  Thus,

10  because the resolution of this controversy would have "little practical effect in terms of altering

11  parties' behavior"—indeed it would have no effect at all—the claim for declaratory and injunctive

12  relief should be dismissed.  *See Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 648 (2009)

13  (affirming dismissal where plaintiff did "not allege that the continuation of the contractual

14  relationship depends on the resolution of" the issues raised in the declaratory relief claim).

15                                    **CONCLUSION**

16         For the reasons stated herein, defendants X Holdings I, Inc., X Holdings II, Inc. and

17  Twitter, Inc. respectfully request that the Court grant their motion and dismiss the Second

18  Amended Complaint with prejudice.

19  DATED:  March 3, 2023                 QUINN EMANUEL URQUHART &
20                                        SULLIVAN, LLP

21                                        By  */s/ Michael T. Lifrak*
22                                            Alex Spiro
                                            Michael T. Lifrak
23                                            Joseph C. Sarles
                                            Alex Bergjans
24
                                        *Attorneys for Elon Musk, X HOLDINGS I, INC.,*
25                                        *X HOLDINGS II, INC. and Twitter Inc.*

26

27

28

1

## CERTIFICATE OF SERVICE

2    I hereby certify that the foregoing document was served on all counsel of record electronically or

3    by another manner authorized under FED. R. CIV. P. 5(b) on this the 3rd day of March 2023.

4
                                QUINN EMANUEL URQUHART &
5                                SULLIVAN, LLP

6

7                        By  */s/ Michael T. Lifrak*

8                            Alex Spiro
                             Michael T. Lifrak
9                            Joseph C. Sarles
                             Alex Bergjans
10                           Aubrey L. Jones

11                           *Attorneys for Elon Musk, X HOLDINGS I, INC.,*
12                           *X HOLDINGS II, INC. and Twitter Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS X HOLDINGS I, INC., X
HOLDINGS II. INC.. AND TWITTER. INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I, Alex Bergjans, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(h)(3), I hereby attest that Michael T. Lifrak has concurred in the filing of the above document.

*/s/ Alex Bergjans*

Alex Bergjans