QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:      (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Elon Musk, X HOLDINGS I, INC., X HOLDINGS II, INC. and Twitter Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HERESNIAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., and TWITTER, INC.,<br><br>Defendants. | CASE NO. 3:22-CV-03074-CRB-SK<br><br>**DEFENDANTS X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge:         Hon. Charles R. Breyer<br>Courtroom:  6, 17th Floor<br><br>Hearing Date: May 12, 2023<br>Time:              10 a.m. |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ....................................................................................................1

ARGUMENT ...................................................................................................................................3

I.    PLAINTIFF HAS NO STANDING UNDER THE MERGER AGREEMENT ....................3

II.   DISMISSAL ON FORUM *NON CONVENIENS* GROUNDS IS REQUIRED HERE .................................................................................................................................6

    A.    The Bylaws Apply To The Causes Of Action In This Case ......................................6

    B.    The Merger Agreement's Forum-Selection Clause Also Applies Here......................8

    C.    Public Interest Factors Weigh Heavily Toward Dismissal .......................................10

III.  PLAINTIFF HAS NOT STATED A CLAIM FOR AIDING AND ABETTING ...............11

IV.  PLAINTIFF HAS NOT STATED A CLAIM FOR DECLARATORY RELIEF ...............13

CONCLUSION ..............................................................................................................................14

i    Case No. 3:22-CV-03074-CRB-SK

DEFENDANTS X HOLDINGS I, INC., X HOLDINGS II, INC., AND TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*,
  992 A.2d 1239 (Del. Ch. 2010) ................................................................................................ 8

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) ................................................................................................................ 10

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ................................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 13

*Brown v. Web.com Grp., Inc.*,
  57 F. Supp. 3d 345 (S.D.N.Y. 2014) ....................................................................................... 9

*Cap. Grp. Companies, Inc. v. Armour*,
  2004 WL 2521295 (Del. Ch. Oct. 29, 2004) ........................................................................ 10

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*,
  779 F.3d 214 (3d Cir. 2015) ................................................................................................... 9

*CompuCom Sys., Inc. v. Getronics Fin. Holdings B.V.*,
  2012 WL 4963308 (D. Del. Oct. 16, 2012) ..................................................................... 2, 10

*Crispo v. Musk*,
  2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ........................................... 1, 4, 5, 6, 11, 12, 13

*Ctr. For Biological Diversity v. Lohn*,
  511 F.3d 960 (9th Cir. 2007) ............................................................................................ 2, 14

*Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*,
  2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) ......................................................................... 8

*Facebook v. Zuckerberg*,
  526 F. Supp. 3d 637 (N.D. Cal. 2021) ................................................................................... 7

*Feldman v. Bomar*,
  518 F.3d 637 (9th Cir. 2008) ............................................................................................ 2, 14

*Hart v. Facebook Inc.*,
  2022 WL 1427507 (N.D. Cal. May 5, 2022) ......................................................................... 6

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................................... 6

*In re Facebook, Inc. S'holder Derivative Priv. Litig.*,
  367 F. Supp. 3d 1108, 1120 (N.D. Cal. 2019) ....................................................................... 7

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
    2022 WL 263312 (D. Del. Jan. 27, 2022), *report and recommendation adopted*,
    2022 WL 957761 (D. Del. Mar. 30, 2022) ................................................................. 2, 7, 8

*In re Tesla, Inc. Sec. Litig.*,
    477 F. Supp. 3d 903 (N.D. Cal. 2020) ................................................................................ 12

*In re: CytRx Corp. S'holder Derivative Litig.*,
    2015 WL 9871275 (C.D. Cal. Oct. 30, 2015) ............................................................ 11, 12

*Intango, LTD v. Mozilla Corp.*,
    2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) ................................................................ 14

*Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*,
    31 F.2d 265 (2d Cir. 1929) ................................................................................................. 12

*Klein v. Ellison*,
    2021 WL 2075591 (N.D. Cal. May 24, 2021) .................................................................. 10

*Lambert v. Kysar*,
    983 F.2d 1110 (1st Cir. 1993) .............................................................................................. 9

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ................................................................................................. 12

*Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*,
    254 F.3d 753 (8th Cir. 2001) .............................................................................................. 10

*Medtronic, Inc. v. Endologix, Inc.*,
    530 F. Supp. 2d 1054 (D. Minn. 2008) ................................................................................ 9

*Mewawalla v. Middleman*,
    601 F. Supp. 3d 574 (N.D. Cal. 2022) ............................................................................... 10

*Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*,
    1995 WL 662685 (Del. Ch. Nov. 2, 1995) ....................................................................... 3, 4

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ................................................................................................... 5

*Orozco v. WPV San Jose, LLC*,
    36 Cal. App. 5th 375 (2019) ................................................................................................. 6

*Osseous Techs. Of Am., Inc. v. DiscoveryOrtho Partners LLC*,
    191 Cal. App. 4th 357 (2010) ............................................................................................. 13

*PNC Bank, Nat'l Ass'n v. MAC Meetings & Events, LLC Cisco Sys., Inc.*,
    No. 4:18-CV-1967-SPM, 2020 WL 3578574 (E.D. Mo. July 1, 2020) ........................... 10

*Ponomarenko v. Shapiro*,
    287 F. Supp. 3d 816 (N.D. Cal. 2018) ............................................................................... 12

*Salzberg v. Sciabacucchi*,
    227 A.3d 102 (Del. 2020) ..................................................................................................... 7

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) .......................................................................... 2, 13

*Simon v. Navellier Series Fund*,
    2000 WL 1597890 (Del. Ch. Oct. 19, 2000) .................................................................. 8, 9

*Sylebra Cap. Partners Master Fund, Ltd. v. Perelman*,
    No. CV 2019-0843-JRS, 2020 WL 5989473 (Del. Ch. Oct. 9, 2020) ................................ 8

*Uppal v. Waters*,
    2016 WL 4211774 (Del. Super. Ct. Aug. 9, 2016) ..................................................... 1, 4, 5

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012) ............................................................................................ 1, 4

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ......................................................................................... 2, 9

**Statutory Authorities**

Cal. Civ. Code § 1717 ................................................................................................................ 6

Del. Code Ann. tit. 8, § 115. ...................................................................................................... 7

**Rules and Regulations**

Fed. R. Civ. P. 5(b) .................................................................................................................. 15

## SUMMARY OF ARGUMENT

Plaintiff's Second Amended Complaint ("SAC") suffers from a number of dispositive flaws including that (1) Plaintiff has brought an action to enforce a Merger Agreement to which he is neither a party nor a third-party beneficiary; (2) the SAC's allegations trigger *two* separate forum-selection clauses requiring this action be brought in Delaware (in both the Twitter Bylaws and the Merger Agreement), by alleging breach of fiduciary duty and wrongdoing by Twitter directors and claims related to the Merger Agreement; (3) the SAC fails to state a claim of aiding and abetting against X Holdings I, Inc. and X Holding II, Inc. (the "Holding Companies"); and (4) Plaintiff seeks purely retrospective declaratory and injunctive relief. These defects require that the Court dismiss the SAC in its entirety.

Plaintiff's Opposition cannot cure the SAC's fundamental problems, and instead asks the Court to ignore them. In response to the Company Defendants' Motion that Plaintiff lacks standing to seek relief under the Merger Agreement, Plaintiff does not argue that he is a party or third-party beneficiary to the Merger Agreement, but takes the radical position that whether he is a stranger to the contract he seeks to enforce is *irrelevant*. Plaintiff makes the formalistic argument that as long as he seeks contract damages through a tort theory of recovery, he need not establish any connection with the Merger Agreement. But that is not the law. To the contrary, Delaware law is clear that a stranger to a contract cannot circumvent his lack of standing by bootstrapping a breach of contract into a tort claim, *Uppal v. Waters*, 2016 WL 4211774, at *3-4 (Del. Super. Ct. Aug. 9, 2016), or by re-casting a breach of contract as an equitable claim, *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012). Since Plaintiff is not a party to the Merger Agreement, has not pled that he is an intended third-party beneficiary, and cannot assert third-party beneficiary status under the unambiguous language of the Merger Agreement, *Crispo v. Musk*, 2022 WL 6693660, at *11 (Del. Ch. Oct. 11, 2022), he lacks standing to bring any of his claims under the Merger Agreement.

The Opposition's response on *forum non conveniens* is equally deficient. Plaintiff did not, as he argues, artfully plead around the two forum-selection clauses at issue. A claim for aiding and abetting is governed by the Twitter Bylaws' forum-selection clause, both under a plain

reading of its text and the unanimous line of cases interpreting it.  *See In re Pattern Energy Grp. Inc. Sec. Litig.*, 2022 WL 263312, at *11, n. 8 (D. Del. Jan. 27, 2022) *report and recommendation adopted*, 2022 WL 957761 (D. Del. Mar. 30, 2022) (aiding and abetting claim subject to forum-selection clause identical to Twitter's Bylaws).  All of Plaintiff's claims relate to the Merger Agreement because they expressly seek to enforce it, and thus are subject to its forum-selection clause.  *See Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (forum-selection clause with "related to" language "applies to any dispute that has some logical or causal connection to the parties' agreement.").  The remaining efforts to avoid these clauses fail. Plaintiff is seeking relief under the Merger Agreement and thus can be held to its forum-selection clause even as a non-signatory.  *CompuCom Sys., Inc. v. Getronics Fin. Holdings B.V.*, 2012 WL 4963308, at *3 (D. Del. Oct. 16, 2012) (non-signatory availing itself of contract's provisions bound by forum-selection clause). And Plaintiff comes nowhere close to meeting his substantial burden to overcome the forum-selection clause by noting that Twitter is headquartered in California and some of the witnesses (but neither Mr. Musk nor Plaintiff himself) live in the state.

Even setting aside the threshold issues that doom the SAC, Plaintiff's Opposition fails to rescue his claims for aiding and abetting against the Holding Companies and declaratory relief against the Company Defendants.  As to the aiding and abetting claim, Plaintiff admits he did not plead specific facts against the Holding Companies and instead argues they should be liable for Mr. Musk's actions under a "maker" theory that applies only to claims for violations of Rule 10b-5, and a "reverse" alter ego theory that is implausible on its face and unsupported by any fact pled here.  *See Sandoval v. Ali,* 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim.").  And Plaintiff's declaratory and injunctive relief claim fails because the declaration he seeks relates to alleged "past wrongs" only.  Dismissal of that claim is mandated not only by the allegations in the SAC but by the two declaratory relief cases Plaintiff cites in his Opposition.  *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (dismissing declaratory relief action because no live controversy remained between the parties); *Feldman v. Bomar,* 518 F.3d 637, 643 (9th Cir. 2008) (same).

# ARGUMENT

## I. PLAINTIFF HAS NO STANDING UNDER THE MERGER AGREEMENT

Plaintiff brought this action to enforce the Merger Agreement. The core relief the SAC seeks is vindication of Plaintiff's so-called right under that Agreement to the payment of merger consideration within two days of the shareholder vote approving the Merger. *E.g.*, SAC ¶ 25 ("Musk therefore was contractually obligated to close the Merger within two business days pursuant to Section 2.2 of the Merger Agreement."), ¶ 34 ("[T]he closing of the Merger had been substantially delayed due to Musk's wrongful conduct, thus depriving Plaintiff and the Class of interest on the Merger proceeds that they should have received earlier."); ¶¶ 167–69 ("Musk and X Holdings I and X Holdings II thus wrongfully delayed the closing of the Merger, in violation of their obligations and duties" under the Merger Agreement); ¶ 201 ("Twitter stockholders suffered damages alleged herein, including lost interest and monies due to the wrongful delay in the closing of the Merger"); ¶ 205 (seeking a declaration regarding the "conditions…of the contract [Mr. Musk] signed with Twitter, Inc."); ¶ 207 ("Musk was also unjustly enriched due to his failure to timely close the Buyout on or about September 15, 2022."). But, as explained in the Companies' Motion to Dismiss, Plaintiff's lawsuit suffers from a fatal defect: he is neither a party to or third-party beneficiary of the Merger Agreement, and therefore lacks standing to bring any claim asserting rights under it. Dkt. 68 ("Mot.") at 6–8.[1]

In Opposition, Plaintiff does not dispute that he is neither a party nor a third-party beneficiary to the Merger Agreement or otherwise argue he has standing to enforce it if contract principles apply. Dkt. 73, ("Opp.") at 4–6. Nor could he. Instead, he contends that whether he has standing to enforce the Merger Agreement is "irrelevant" because he is seeking relief through tort claims and has not brought a formal breach of contract claim. *Id.* at 5–6. Not so. Delaware law is clear that "disputes that relate to obligations 'expressly treated and rights [that are] created'

---

[1] As explained in Mr. Musk's Motion to Dismiss (Dkt. 67) and Reply in Support, filed herewith, Plaintiff also lacks standing because his claims are derivative in nature. The Company Defendants incorporate by reference all arguments and authorities in Mr. Musk's Motion and Reply herein.

by contract will be governed by contract principles." *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, 1995 WL 662685, at *6 (Del. Ch. Nov. 2, 1995). Accordingly, Delaware law "will **not** permit a plaintiff to 'bootstrap' a breach of contract claim into a tort claim merely by intoning the prima facie elements of the tort while telling the story of the defendant's failure to perform under the contract." *Uppal*, 2016 WL 4211774, at *3.

That is precisely what the SAC attempts to do. All of the rights Plaintiff claims were created solely by the Merger Agreement. SAC ¶¶ 167–69, 201, 205, 207. His first cause of action for aiding and abetting seeks damages arising from the "wrongful delay in the closing of the Merger" in purported violation of "Section 2.2 ***of the Merger Agreement***." *Id.* ¶¶ 201, 167 (emphasis added)  His second cause of action seeks a declaration that the "conditions that [Mr.] Musk stated must be met before the Buyout could go forward were not part ***of the contract he signed with Twitter, Inc.***," that under that contract "[Mr.] Musk had a legal obligation to close the Merger within two business days" of the shareholder vote approving the Merger, and that Mr. Musk "wrongfully failed to close the Merger on such date." *Id.* ¶ 205 (emphasis added). In his third cause of action, Plaintiff alleges that Mr. Musk "was also unjustly enriched due to his failure to timely close the Buyout on or about September 15, 2022." *Id.* ¶ 207. And Plaintiff's Opposition briefs themselves—while arguing Plaintiff is not bringing a contract claim—make crystal clear the relief he seeks arises entirely from the Merger Agreement. *See* Dkt. 74 at 5 ("Plaintiff…had the *right* to receive…Buyout consideration [under the Merger Agreement]"); *id.* at 7 ("Plaintiff…was *deprived* of timely receipt of the Merger [Agreement] consideration which Plaintiff…had the *right* to receive") (emphasis added in both); Opp. at 19 ("Here, Plaintiff seeks to exercise his *rights* and *reclaim* the lost interest on his shares, which was caused by Musk's delay in closing the Merger [Agreement]"); *id.* at 5 ("Plaintiff was injured by Musk's tortious conduct, which unlawfully delayed the closing of the Merger [Agreement], ***and caused Plaintiff damages as a result***.") (emphasis added in both).

Accordingly, Plaintiff cannot rescue his claims from dismissal or waive away his lack of standing merely by labeling them as torts. Breach of contract claims dressed up as torts must either be dismissed outright, *Vichi*, 62 A.3d at 58 (when "evaluating a party's claim for an

equitable remedy…courts inquire at the threshold as to whether a contract already governs the parties' relationship"), or the very least "adjudicated within the analytical framework of a breach of contract claim." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (affirming dismissal of fiduciary claims as "superfluous"). Under that well-established law, if a plaintiff is neither a party nor an intended beneficiary to a contract, he lacks standing to enforce it, whether he seeks to do so through contract or tort. *See Uppal*, 2016 WL 4211774, at *5 (dismissing breach of contract claim against non-parties to the contract and dismissing tort claims under bootstrapping doctrine).

Plaintiff's attempts to distinguish *Crispo*, which held that Twitter shareholders did not have standing to enforce the very Merger Agreement at issue in this case, fail. *Crispo*, 2022 WL 6693660, at *5. Plaintiff first tries to narrow the *Crispo* reasoning to apply only to claims for specific performance and breach of fiduciary duty. Opp. at 5–6. While those were the two primary claims in *Crispo*, neither the broad language of Section 9.7 of the Merger Agreement nor the Chancery Court's third-party beneficiary analysis can be fairly read as restricted to those two claims. *See Crispo*, 2022 WL 6693660, at *5 (The Merger Agreement's "plain language…did **not** intend to confer third-party beneficiary standing to Twitter's stockholders.") (emphasis added), *see* Dkt. 68-1 at 382, *see also* Merger Agreement at 9.7 ("this Agreement is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder"). Instead, the Chancery Court only identified one potential carve-out to the Merger Agreement's broad preclusion of shareholders as third-party beneficiaries: language in Section 8.2 that suggested shareholders may have third-party beneficiary status to seek damages in the event the Merger was terminated or abandoned. *Id.* at *9. But even then, the Chancery Court expressed skepticism that Section 8.2 conferred any standing at all, noting that its language "mimics…provisions that are not intended to grant third-party beneficiary status to stockholders" and as such it "weighs against Plaintiff's construction". *Id.* at *11. Thus, contrary to Plaintiff's misleading description, the Chancery Court did not leave open the possibility that a shareholder could sue for damages generally—its dicta was limited to the scenario in which the Merger was terminated. *Id.* But it was not terminated, and therefore to the extent Section 8.2 created any exception, it does not apply. *Compare id. with* SAC ¶ 177. Both *Crispo* and the unambiguous

language of Section 9.7 foreclose any argument that Plaintiff has standing to assert claims to enforce the Merger Agreement. All three should be dismissed.

Plaintiff cites to no authority holding otherwise. *Hart v. Facebook Inc*., 2022 WL 1427507 (N.D. Cal. May 5, 2022), *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015), (Opp. at 4), do not involve plaintiffs seeking to vindicate contractual rights through tort actions, but instead analyze Article III standing under the state action doctrine and specific California statutes, respectively. And *Orozco v. WPV San Jose, LLC,* 36 Cal. App. 5th 375 (2019)—the only case Plaintiff cites in support of his contention that it is "irrelevant" whether he is a party to or an intended beneficiary of the Merger Agreement—has nothing to do with standing or Delaware law, and instead addresses only whether an action for fraudulent inducement brought to **void** a contract was an "action on contract" triggering an award of attorneys fees under California Civil Code section 1717. *Id.* The case offers no guidance as to whether Plaintiff has standing to **enforce** the Merger Agreement under Delaware law. In any event, the *Orozco* court found that the lawsuit was not an "action on contract" only because the plaintiff did not argue that the defendant "breached the lease in any way" and "did not seek to interpret or enforce any provision in the lease." *Id.* at 409. By contrast, the SAC does both. SAC ¶¶ 167–69, 201, 205. Thus, even under Plaintiff's own inapplicable authority, his claims are contractual in nature and are governed by ordinary contract principles which require dismissal here.

## II.     DISMISSAL ON FORUM *NON CONVENIENS* GROUNDS IS REQUIRED HERE

### A.     The Bylaws Apply To The Causes Of Action In This Case

Plaintiff does not dispute that when he purchased stock, he agreed to be bound by Twitter's Bylaws—including the forum-selection clause. Plaintiff asserts, however, that the Bylaws do not apply to his claims. Opp. at 6–9. He is incorrect as a matter of law.

On their face, the Bylaws' forum-selection clause applies to any "derivative action or proceeding brought on behalf of the corporation." Bylaws at Art. VIII., Dkt. 68-1 at 291. Plaintiff's claim seeking to enforce the rights of all shareholders under the Merger Agreement are just that—derivative claims (*see, e.g.,* Dkt. 67 at 6–9).

Beyond that, the Bylaws' forum-selection clause also covers "any action asserting a claim

of breach of fiduciary duty owed by, or otherwise wrongdoing by, any director," which by definition includes claims for aiding and abetting these breaches. *See* Bylaws at Art. VIII., Dkt. 68-1 at 291. Plaintiff ignores the Bylaws' actual language and argues without support that the clause applies only to a direct fiduciary or wrongdoing claim against a director. Opp. at 7. But that limitation is found nowhere in the text of the Bylaws—which are not limited to claims brought against directors and officers and are written broadly to include any claim of "wrongdoing by" a director—and Plaintiff cites **no authority** for it. Instead, Plaintiff vaguely asserts that the Bylaws should be interpreted to apply only to the "internal affairs" of the company, which by Plaintiff's definition does not include claims that third parties aided and abetted the violation of fiduciary duties. Opp. at 7. But this is contradicted by Delaware law. Section 115 of the Delaware Code, which authorizes bylaw forum-selection clauses, defines "internal corporate claims" to include claims "based upon a violation of a duty by a current or former director." Del. Code Ann. tit. 8, § 115. Both the Delaware Supreme Court and legislature expressly recognize that this statutory definition—which has a similar construction as Twitter's forum-selection clause—encompasses and includes claims for aiding and abetting. *Salzberg v. Sciabacucchi*, 227 A.3d 102, 119 n. 74 (Del. 2020) citing Del. S.B. 75 syn., 148th Gen. Assem. (2015) (Section 115 applies to "claims of breach of fiduciary duty by current or former directors…***or persons who aid and abet such a breach***") (emphasis added).

Consistent with this, every aiding and abetting case interpreting this same forum-selection clause language has found that it applies to those claims. *See In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1115, 1120 (N.D. Cal. 2019); *Ocegueda on behalf of Facebook v. Zuckerberg*, 526 F. Supp. 3d 637, 648-50 (N.D. Cal. 2021); *In re Pattern Energy Grp. Inc. Sec. Litig.*, 2022 WL 263312, at *11. In fact, as Plaintiff notes in his Opposition, the notion that the forum-selection clause's "fiduciary duty" and "wrongdoing" language applies to claims for aiding and abetting breaches of fiduciary duty is so uncontroversial that the Plaintiffs in *Pattern Energy* "**did not dispute** that their aiding and abetting claim…is covered by the clause." 2022 WL 263312, at *11, n. 8; *see also* Opp. at 8. There should be no dispute here either. Plaintiff has not identified any authority or a single reason for this Court to depart from a legion of

unanimous precedents on this issue.

Indeed, doing so would reward Plaintiff's gamesmanship and be contrary to public policy. "Courts in Delaware and other jurisdictions have found that a forum selection clause should not be defeated by artful pleading of claims" avoiding the claim contained in the forum-selection clause. *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010) (internal quotation omitted) (citing *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *3 (Del. Ch. Oct. 19, 2000)). Here, in an effort to avoid the forum-selection clause, Plaintiff made the tactical decision to not bring the breach of fiduciary duty claim upon which his aiding and abetting claim lies. This effort was futile as the clause applies with equal force to the aiding and abetting claim. *See Pattern Energy*, 2022 WL 263312, at *11, n. 8. But even if it did not, courts consistently dismiss claims where, as here, they arise from "the same operative facts" as and "ultimately depend[s] on the existence of" the indisputably covered claim. *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000).[2]

### B.   The Merger Agreement's Forum-Selection Clause Also Applies Here.

Plaintiff also argues that Section 9.10 of the Merger Agreement—which states that parties may "not bring any action relating to this Agreement or the transactions contemplated by this Agreement" in this Court (*see* Dkt. 68-1 at 384)—does not apply to him because (1) he is not bringing a breach of contract claim and (2) he is not a party to the Merger Agreement. Opp. at 14. Both assertions are wrong.

Section 9.10 is not limited to a breach of contract claim, but rather applies to "any action relating to" the Merger Agreement. Dkt. 68-1 at 384. It is well established that this means the clause applies to claims "that reference the agreement or have some 'logical or causal connection'

---

[2]   Plaintiff unsuccessfully attempts to distinguish these cases, arguing that the litigants plead contract claims—which he has not done here. But as discussed above, contract principles apply here regardless due to plaintiff's improper bootstrapping. Plaintiff also argues that the forum-selection clause in these cases were not in bylaws, which is irrelevant because bylaws are treated no differently than any other contract. *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 957 (Del. Ch.); *Sylebra Cap. Partners Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *10 (Del. Ch. Oct. 9, 2020) ("Forum selection bylaws are enforced 'in the same way [Delaware] enforces any other forum selection clause.'").

to the agreement." *Yei A. Sun*, 901 F.3d at 1086. "[F]orum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses." *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 361 (S.D.N.Y. 2014); *see Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 220 (3d Cir. 2015) ("An action need not even allege contract-based claims in order for a forum selection clause in a contract to be enforced.").

Here, all of Plaintiff's claims not only reference the Merger Agreement but seek to enforce and obtain remedies—including interest on merger consideration—that arise directly from it. SAC ¶¶ 201, 205, 207; *see also* Opp. at 14. All three claims have a clear "logical or causal connection" to the Merger Agreement and are thus bound by it. *See Yei A. Sun*, 901 F.3d at 1086. Plaintiff's attempt to plead around this clause also fails under the law. *See Simon*, 2000 WL 1597890, at *5 n. 18 (citing cases holding "artful pleading" designed to circumvent enforcement of the parties' contractual choice of forum is not permitted); *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) (courts do not "reward attempts to evade enforcement of forum selection agreements through artful pleading of tort claims in the context of a contract dispute.") (internal quotation omitted).

Plaintiff does not dispute that non-signatories in a close relationship to the parties or agreement generally are bound to the agreement's forum selection clause, but argues *ipse dixit* that it somehow is "unreasonable" to apply the rule to a ***plaintiff*** non-signatory. Opp. at 15. The opposite is true: "[t]he ***majority*** of cases binding a third party to a forum-selection clause under the closely-related-party doctrine involve[] third parties suing as plaintiffs, rather than those being sued as defendants." *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1057 (D. Minn. 2008); *see PNC Bank, Nat'l Ass'n v. MAC Meetings & Events, LLC Cisco Sys., Inc.*, 2020 WL 3578574, at *8 (E.D. Mo. July 1, 2020) (applying closely-related doctrine to a non-signatory plaintiff on the basis that when plaintiff "decided to ask the Court to enforce the terms of the Agreements [that it was not a signatory to], it should have been entirely foreseeable to [Plaintiff] that it would be bound by the terms of those Agreements, including the forum selection clause"); *Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757-58 (8th Cir. 2001) (applying closely-related rule to non-signatory shareholder plaintiff). Thus, it is well established

that courts enforce forum-selection clauses against plaintiffs who sue or otherwise seek relief under that contract.

Plaintiff cites *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 589 (N.D. Cal. 2022), but the facts and posture of this case are diametrically opposed to *Mewawalla*. In *Mewawalla*, the ***plaintiff*** sought to enforce a forum-selection clause against a non-signatory ***defendant*** "that was not in existence" when the contract was executed and was not seeking to avail itself of any rights or benefits under it. *Id.* at 590. The due process concerns raised in *Mewawalla* are thus not present here, where plaintiff seeks to enforce ***some*** portions of the Merger Agreement while attempting to avoid its forum-selection clause. In situations like this, courts are clear: a non-signatory "cannot have it both ways" and must be bound to the forum-selection clause in the contract he seeks to enforce. *CompuCom Sys.*, 2012 WL 4963308, at *2, 4; *Cap. Grp. Companies, Inc. v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004) ("a non-signatory to a contract [cannot] embrac[e] the contract, and then turn[] her back on the portions of the contract, such as a forum selection clause, that she finds distasteful.").

### C. Public Interest Factors Weigh Heavily Toward Dismissal

"The party challenging a forum-selection clause 'bear[s] the burden of showing that public-interest factors ***overwhelmingly*** disfavor a transfer.'" *Klein v. Ellison*, 2021 WL 2075591, at *8 (N.D. Cal. May 24, 2021) (emphasis added) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 61 (2013)). Plaintiff's public interest argument falls far short of meeting this heavy burden and instead amounts to identifying a handful of potential connections between this litigation and California. But there is a far larger number of more significant connections to Delaware or elsewhere. For example: Plaintiff asserts that Twitter is headquartered in California, but ignores the fact that pre-merger it was domiciled and organized under the laws of Delaware[3] (*compare* Opp. at 11 *with* SAC ¶ 40); contends that some parts of the

---

[3] Twitter, Inc. has since been merged into X Corp., a privately held Nevada corporation, and no longer exists. X Holdings I, Inc. has been merged into X Holdings Corp., the parent company of X Corp., and no longer exists. Additionally, X Holdings II, Inc., the merger subsidiary, ceased to exist following the Merger and was survived by Twitter, Inc.

negotiations were with Californians but fails to mention that the Merger Agreement itself was entered pursuant to and is governed by the General Corporation Law of Delaware (*compare* Opp. at 11–12 *with* SAC ¶ 103); and argues that some witnesses are based in California but ignores that the two primary parties, Mr. Musk and Plaintiff himself, are residents of Texas and Virginia respectively (*compare* Opp. at 11 *with* SAC ¶¶ 39, 41).  None of these purported connections to California on their own, or in combination, ***overwhelmingly*** favor venue in California.

Nor is this Court substantially more familiar with the circumstances of this case than the Delaware Chancery Court.  Quite the opposite, litigation related to ***this*** Merger Agreement have already and continue to be litigated in Delaware.  *See* Mot. at 12.  Plaintiff attempts to split hairs because one of these matters (*Crispo*) has all but concluded, and the other has closed. Opp. at 11.  But beyond dispute, the Chancery Court is already well-versed on the Musk-Twitter Merger, having taken the issues to the eve of trial.  The matter of *Pampena v. Musk*, Case No. 3:22-CV-05937-CRB, now assigned to this Court, bears little weight in comparison.  The *Pampena* action, as Plaintiff has already stipulated, "is at a preliminary stage."  *See Pampena*, Dkt. 62 at 3, fn. 2. Further, *Pampena* suffers from many of the same forum defects as here—Mr. Musk has already moved to transfer the matter to Delaware.  *See Pampena*, Dkt. 12.  Lastly, application of Delaware law further weighs in favor of the forum-selection clause.  *In re: CytRx Corp. S'holder Derivative Litig.*, 2015 WL 9871275, at *6 (C.D. Cal. Oct. 30, 2015) ("[A] Delaware state court is more at home with Delaware law than is a California federal district court" and the Chancery Court "has a well-recognized expertise in the field of state corporation law.")

Plaintiff further asserts there is a "strong presumption" in favor of his choice of forum, but that is wrong.  Opp. at 12.  Here, "where a valid forum selection clause preselects a different forum than the one selected by the plaintiff…the plaintiff's choice of forum 'merits ***no weight***.'" *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 833 (N.D. Cal. 2018) (citation omitted) (emphasis added).  Plaintiff has not sustained his burden in challenging application of the forum selection clause, and as a result the case should be dismissed.

### III.     PLAINTIFF HAS NOT STATED A CLAIM FOR AIDING AND ABETTING

The SAC's lone allegation in support of the purported claim against the Holding Companies for aiding and abetting the Twitter board's decision to enter into the Merger Agreement is that the Holding Companies "took" some unidentified "actions at Musk's direction to carry out his unlawful conduct." *See* SAC ¶ 200.

Plaintiff asserts that he need not plead more, as his allegations against Musk can be attributed to the Holding Companies. *See* Dkt. 73 at 13 (citing SAC ¶ 42). But this argument does not solve his pleading failure, it exacerbates it. *See e.g., Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001) (plaintiff must plead specific facts that third party aided and abetted in a breach of a fiduciary duty). Plaintiff relies on *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903 (N.D. Cal. 2020) but the issue in *In re Tesla* was whether Tesla was a "maker" of an alleged misstatement made on Mr. Musk's Twitter account under Section 10b-5, and turned on the fact that Tesla had "formally notified investors that it would use Musk's Twitter account as a formal means of communication" in an SEC filing. *Id.* at 926–927. This is not a 10b-5 case in which the "maker" of a misstatement is at issue and does not involve any allegation that Mr. Musk was designated as a spokesperson for the Holding Companies. *In re Tesla* has no bearing here.

Moreover, the SAC does not make any allegations that Mr. Musk was acting as an agent of the Holding Companies at any relevant time  Quite the opposite, the SAC alleges that the Holding Companies "took action at [**Mr.] Musk's direction to** carry out his unlawful conduct." SAC ¶ 200. Nor are there allegations that would support piercing the corporate veil, making the Holding Companies liable for the acts of an owner. To do so here Plaintiff must allege facts sufficient to support a theory of "reverse piercing." *See Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (Judge Learned Hand stating: "[p]erhaps it would be too much to say that a subsidiary can never be liable for a transaction done in the name of a parent, the situation at bar. Any person may use another as a screen, and one may conceive cases where such an arrangement might exist. But such instances, if possible at all, must be extremely rare, and there is not the slightest evidence of the sort here."). Even if such a theory was possible, it cannot rest on mere "[c]onclusory allegations of 'alter ego status.'" *Sandoval,* 34 F. Supp. 3d at 1040 ("Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff

must allege specifically both of the elements of alter ego liability, as well as facts supporting each.") (citation omitted).  Plaintiff's allegations against the Holding Companies are vague conclusions insufficient to establish Plaintiff's "high" burden to plead that the Holding Companies "knowingly participated" in any act.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions").

IV. **PLAINTIFF HAS NOT STATED A CLAIM FOR DECLARATORY RELIEF**

Confirming yet again that his claims are based on the Merger Agreement, Plaintiff requests a declaration pertaining to the rights and obligations of the Parties under the Merger Agreement. SAC ¶¶ 203–205.  As discussed *supra* pp. 3–7, Plaintiff lacks standing to bring this claim.  Even apart from that, the claim also fails because it seeks only retrospective relief.  Plaintiff concedes as much in his Opposition and SAC.  According to Plaintiff, "[t]he resolution of this controversy will aid the parties in determining their rights and obligations **now that the Merger has been completed** and Plaintiff and shareholders **no longer hold any shares**."  Opp. at 14 (emphasis added); *see also* SAC ¶ 205 ("**all conditions** necessary for the closing of the Merger **were satisfied** as of September 13, 2022.") (emphasis added).

These statements are admissions that Plaintiff seeks a retrospective declaration as to his status under a contract and merger that is closed.  Tellingly, Plaintiff does not assert continuing performance under the Merger Agreement is at issue.  Plaintiff thus pleads himself out of standing to seek both declaratory and injunctive relief as "there is no basis for declaratory relief where only past wrongs are involved."  Oss*eous Techs. Of Am., Inc. v. DiscoveryOrtho Partners LLC*, 191 Cal. App. 4th 357, 366 (2010); *see Intango, LTD v. Mozilla Corp.*, 2020 WL 12584274, at *8 (N.D. Cal. Aug. 25, 2020) (dismissing claim for declarative relief because "[d]eclaratory relief operates prospectively [and] there is no basis for declaratory relief where only past wrongs are involved."); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Past wrongs do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy" for an injunction) (internal quotation omitted).

In response, Plaintiff incorrectly argues that he can state a claim for declaratory relief merely by asserting that "declaratory relief would nevertheless provide meaningful relief." Opp. at 13 (citing *Lohn*, 511 F.3d at 964). That may be the case in a claim asserting ***future*** harm, but does not apply to a plaintiff seeking a declaration as to backward looking rights in a contract that has already closed. More importantly, the *Lohn* court dismissed the claim for declaratory relief because—as here—"no 'live' controversy remains between the parties." *Lohn*, 511 F.3d at 964.

Finally, Plaintiff's additional assertion that his burden "is to simply prove that he 'clearly retain[s] a legally cognizable interest in the outcome'" similarly fails. *See* Opp. at 14 (citing *Feldman*, 518 F.3d at 642). For one, Plaintiff ignores the preceding sentence in *Feldman* that states that there must be "continuing harm" for the court to issue a declaration of rights. 518 F.3d at 642. No "continuing harm" exists here. And in any event, like in *Lohn*, the *Feldman* court ruled that there was "no live controversy…that effects their 'existing interests'" and thus dismissed the appeal and action. 518 F.3d at 644. So too here.

## CONCLUSION

For the reasons stated herein, defendants X Holdings I, Inc., X Holdings II, Inc., and Twitter Inc. respectfully request that the Court grant their motion and dismiss the Second Amended Complaint with prejudice.

DATED: April 18, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Joseph C. Sarles*
   Alex Spiro
   Michael T. Lifrak
   Joseph C. Sarles
   Alex Bergjans

   *Attorneys for Elon Musk, X HOLDINGS I, INC., X HOLDINGS II, INC. and Twitter Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 18th day of April, 2023.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Joseph C. Sarles*
Alex Spiro
Michael T. Lifrak
Joseph C. Sarles
Alex Bergjans
Aubrey L. Jones

*Attorneys for Elon Musk, X HOLDINGS I, INC., X HOLDINGS II, INC. and Twitter Inc.*