QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice* forthcoming)
alexspiro@quinnemanuel.com
51 Madison Ave 22nd floor
New York, NY 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
Alex Bergjans (Bar No. 302830)
alexbergjans@quinnemanuel.com
Aubrey L. Jones (Bar No. 326793)
aubreyjones@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Defendants Elon Musk, X Holdings
I, Inc., X Holdings II, Inc., and Twitter, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HERESNIAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELON R. MUSK, X HOLDINGS I, INC., X HOLDINGS II, INC., and TWITTER, INC.,<br><br>Defendants. | CASE NO. 3:22-CV-03074-CRB-SK<br><br>**DEFENDANT ELON R. MUSK'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom:  6, 17th Floor<br><br>Hearing Date: May 12, 2023<br>Time:       10 a.m. |

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ..............................................................................1

ARGUMENT ....................................................................................................3

I.      PLAINTIFF DOES NOT HAVE STANDING TO BRING DERIVATIVE CLAIMS ..............................................................................................3

II.     PLAINTIFF'S AIDING AND ABETTING CLAIM FAILS AS A MATTER OF LAW ....................................................................................................7

     A.    The Business Judgment Rule Applies Here ...............................................7

     B.    Plaintiff Cannot Show an Underlying Breach Of A Fiduciary Duty ........9

     C.    Plaintiff Cannot Independently Show Aiding And Abetting ..................11

III.    THE UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW ...................12

     A.    The Unjust Enrichment Claim Is Not Saved By The Delaware Carve-Out............12

     B.    There Is No Unjust Enrichment Theory Connected To Plaintiff's Loss Or Disconnected From The Merger Agreement..............................................14

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*Barkan v. Amsted Indus., Inc.*,
    567 A.2d 1279 (Del. 1989)................................................................................................ 10

*Basho Techs. Holdco B, Ltd. Liab. Co. v. Georgetown Basho Inv'rs, Ltd. Liab. Co.*,
    2018 Del. Ch. LEXIS 222 (Ch. July 6, 2018) ................................................................ 15

*Binks v. DSL.net, Inc.*,
    2010 WL 1713629 (Del. Ch. Apr. 29, 2010) ................................................................. 11

*Blue v. Fireman*,
    2022 WL 593899 (Del. Ch. Feb. 28, 2022).................................................................. 6, 7

*Brokerage Jamie Goldenberg Komen Rev Tru U/A 06/10/08 Jamie L Komen Tr. for Komen v. Breyer*,
    2020 WL 3484956 (Del. Ch. June 26, 2020) ....................................................... 1, 5, 6, 7

*Brookfield Asset Mgmt., Inc. v. Rosson*,
    261 A.3d 1251 (Del. 2021)................................................................................................ 5

*Chester County Retirement System v. Collins*,
    2016 WL 7117924 (Del.Ch. Dec. 06, 2016) ................................................................. 10

*Corwin v. KKR Fin. Holdings LLC*,
    125 A.3d 304 (Del. 2015)........................................................................................ 2, 7, 8

*Crispo v. Musk*,
    2022 WL 6693660 (Del. Ch. Oct. 11, 2022) .......................................................... 2, 13, 14

*Dieterich v. Harrer*,
    857 A.2d 1017 (Del. Ch. 2004) ....................................................................................... 6

*Feldman v. Cutaia*,
    951 A.2d 727 (Del. 2008).......................................................................................... 1, 4, 5

*Feldman v. Cutaia*,
    956 A.2d 644 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008) ........................................ 3

*Golaine v. Edwards*,
    1999 WL 1271882 (Del. Ch. Dec. 21, 1999) ............................................................... 6, 7

*Huff Energy Fund, L.P. v. Gershen*,
    2016 WL 5462958 (Del. Ch. Sept. 29, 2016) ............................................................ 9, 11

*Indiana Elec. Workers Pension Tr. Fund, IBEW v. Dunn.*,
    352 F. App'x 157 (9th Cir. 2009) ..................................................................................... 4

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013), aff'd, 566 F. App'x 93 (2d Cir. 2014) ................... 9

*In re Dollar Thrifty S'holder Litig.*,
    14 A.3d 573 (Del. Ch. 2010)..................................................................................... 1, 9

*In re Essendant, Inc. S'holder Litig.*,
    2019 WL 7290944 (Del. Ch. Dec. 30, 2019) ..................................................... 10

*In re First Interstate Bancorp Consol. S'holders Litig.*,
    729 A.2d 851 (Del. Ch. 1998) .................................................................... 5, 8

*In re Gen. Motors Class H S'holders Litig.*,
    734 A.2d 611 (Del. Ch. 1999) ......................................................................... 10

*In re Hansen Med., Inc. S'holders Litig.*,
    2018 WL 3025525 (Del. Ch. June 18, 2018) ..................................................... 11

*In re Solera Holdings, Inc. S'holder Litig.*,
    2017 WL 57839 (Del. Ch. Jan. 5, 2017) ...................................................... 7, 8

*In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*,
    2018 WL 3120804 (Del. Ch. June 25, 2018) ..................................................... 6

*Jacobs v. Meghji*,
    2020 WL 5951410 (Del. Ch. Oct. 8, 2020) ................................................ 11, 12

*Lamie v. United States Tr.*,
    540 U.S. 526 (2004) ......................................................................................... 13

*Lewis v. Anderson*,
    477 A.2d 1040 (Del. 1984) ................................................................................. 3

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ..................................................................... 2, 10, 12

*Morgan v. Cash*,
    2010 WL 2803746 (Del. Ch. July 16, 2010) ......................................... 2, 11, 12

*Morrison v. Berry*,
    191 A.3d 268 (Del. 2018) ................................................................................ 11

*Parnes v. Bally Entm't Corp.*,
    722 A.2d 1243 (Del. 1999) ......................................................................... 1, 5, 7

*Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010) ................................................................ 14

*Rabkin v. Philip A. Hunt Chem. Corp.*,
    547 A.2d 963 (Del. Ch. 1986) .......................................................................... 10

*RBC Capital Mkts., LLC v. Jervis*,
    129 A.3d 816 (Del. 2015) ................................................................................ 10

*Stein v. Wind Energy Holdings, Inc.*,
    2022 WL 17590862 (Del. Super. Ct. Dec. 13, 2022) ................................. 3, 14

*Thorpe by Castleman v. CERBCO, Inc.*,
    676 A.2d 436 (Del. 1996) ................................................................................ 15

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
     845 A.2d 1031 (Del. 2004).................................................................. 1, 3, 4, 5, 7

*Vichi v. Koninklijke Philips Elecs. N.V.*,
     62 A.3d 26 (Del. Ch. 2012) ...................................................................... 14, 15

*Weinberger v. UOP, Inc.*,
     457 A.2d 701 (Del. 1983)................................................................................ 15

*Zoren v. Genesis Energy, L.P.*,
     195 F. Supp. 2d 598 (D. Del. 2002) .............................................................. 12

## **Statutory Authorities**

15 U.S.C. § 77p ................................................................................................ 13

15 U.S.C. § 77p(d)(1)(B) ................................................................................. 12

15 U.S.C. § 77p(d)(1)(B)(i) ............................................................................. 12

15 U.S.C. § 77p(d)(1)(B)(ii) ............................................................................ 13

## **Rules and Regulations**

Fed. R. Civ. P. 5(b)........................................................................................... 16

Rule 12(b)(6) .................................................................................................... 11

## **Other Authorities**

12B Fletcher Cyc. Corp. § 5923.30 ................................................................... 4

Del. L. of Corp. and Bus. Org. § 13.10 ............................................................. 4

**SUMMARY OF ARGUMENT**

Although it tries, Plaintiff's Opposition to Mr. Musk's Motion to Dismiss cannot change the dispositive and uncurable defects in the Second Amended Complaint.

**First**, Plaintiff, a former Twitter shareholder, brought this action to enforce—not challenge or invalidate—Twitter's Merger Agreement and obtain damages, not for any individualized harm he suffered, but on behalf of all of Twitter's former shareholders at large.  The action is derivative in nature and should be dismissed because Plaintiff is no longer a Twitter shareholder and lacks standing to sue.  Plaintiff cannot rescue his lawsuit through his specious attempts to wedge it into the framework of *Tooley v. Donaldson, Lufkin & Jenrette, Inc*., 845 A.2d 1031, 1033 (Del. 2004) and *Parnes v. Bally Entm't Corp*., 722 A.2d 1243, 1245 (Del. 1999).  Plaintiff, unlike in *Tooley*, does not allege any independent harm but instead seeks damages on behalf of all Twitter shareholders.  As the Delaware Supreme Court has made clear post-*Tooley*, such claims are derivative.  *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) ("In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.").  And Plaintiff cannot avail himself of the *Parnes* exception since he does not challenge the merger itself, contend the price was unfair, or allege more than a *de minimis* diversion of merger consideration.  *Compare* Opp. at 15 (contending Mr. Musk saved $200 million—less than one-half of one percent of the total merger consideration) *with Brokerage Jamie Goldenberg Komen Rev Tru U/A 06/10/08 Jamie L Komen Tr. for Komen v. Breyer*, 2020 WL 3484956, at *9 (Del. Ch. June 26, 2020) (diversion of less than one percent of merger consideration was "immaterial to that transaction" and rendered the claim derivative).

**Second**, Plaintiff cannot state a claim for aiding and abetting.  On the facts alleged, Plaintiff cannot plead any underlying fiduciary duty breach by directors Dorsey or Durban because the decision to approve the Merger—at a significant premium on the company's share price (SAC ¶ 78), to an individual who undoubtedly was capable of completing the deal (*id.* ¶ 4)—was fair and is therefore protected from a fiduciary duty claim under the Delaware business judgment rule. *In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 598 (Del. Ch. 2010).  The fact that the Merger was subsequently approved by a fully-informed shareholder vote further precludes Plaintiff's

claim pursuant to the business judgment rule. *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 309 (Del. 2015). Plaintiff's attempt to suggest that the shareholder vote was not fully informed is fatally undermined by Plaintiff's First Amended Complaint which was filed ***prior*** to the vote and describes in detail the very facts he now alleges were unknown and not disclosed. Dkt. 7 ("FAC") ¶¶ 90–154. And even if the SAC could establish an underlying breach of fiduciary duty, the Opposition has no answer for the fact Plaintiff cannot sustain an ***aiding and abetting*** claim against Mr. Musk because he pleads no facts that Mr. Musk conspired with the board, acted with scienter, or—most importantly and dispositively—influenced a majority of the board, as opposed to just two of its eleven members. *See Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001) (dismissing aiding and abetting claim for failure to allege majority of board was interested or dominated by interested director); *Morgan v. Cash*, 2010 WL 2803746, at *5 (Del. Ch. July 16, 2010) (dismissing aiding and abetting claim for failure to allege the board "was influenced materially" by the allegedly interested director).

   ***Third***, both of Plaintiff's unjust enrichment theories fail as a matter of law. The first theory—based on Mr. Musk's purported untimely disclosure of his Twitter stake—is barred by SLUSA. Plaintiff does not deny that this theory is a federal securities claim dressed up as a state tort and instead relies entirely on the narrow Delaware carve-out. But that exception cannot apply here because Plaintiff does not and cannot allege that Mr. Musk was an affiliate who controlled or was controlled by Twitter when he was purportedly required to make the disclosure—in late March 2022, three weeks before he even made an initial offer to purchase Twitter—as he was a minority shareholder with no other formal connection to the company. The Delaware Chancery Court has already rejected the exact same argument on these facts. *Crispo v. Musk*, 2022 WL 6693660, at *12 (Del. Ch. Oct. 11, 2022). In fact, in his other Opposition, Plaintiff himself described the argument, when made in *Crispo*, as "meritless" and "baseless since [Mr.] Musk was never a director, officer, or majority shareholder of Twitter." Dkt. 73 at 5. Additionally, the Delaware carve-out does not apply because Mr. Musk's purportedly untimely disclosure impacted both current ***and*** prospective Twitter shareholders and was made before—and therefore could not concern decisions in response to—his offer to purchase the company. And Plaintiff's second

1    unjust enrichment theory fails because it is a contract claim disguised as an equitable one, which is

2    impermissible under Delaware law.  *Stein v. Wind Energy Holdings, Inc.*, 2022 WL 17590862, at

3    *9 (Del. Super. Ct. Dec. 13, 2022) ("Where a contract is 'the measure of the plaintiffs' right, there

4    can be no recovery under an unjust enrichment theory independent of it.'").

5                                                    **ARGUMENT**

6    **I.**      **PLAINTIFF DOES NOT HAVE STANDING TO BRING DERIVATIVE CLAIMS**

7                As explained in the Reply filed by X Holdings I, Inc.,  X Holding II, Inc., and Twitter (*see*

8    Dkt. 75)[1], Plaintiff lacks standing to enforce the terms of the Merger Agreement, as he is not a

9    signatory or intended third party beneficiary of the contract, and cannot bootstrap a claim for

10   failure to pay under the contract as a tortious or equitable claim.  *See* Dkt. 75 at 3–7.  Plaintiff also

11   lacks standing to bring derivative shareholder claims generally as he "who ceases to be a

12   shareholder, whether by reason of a merger or for any other reason, loses standing to continue a

13   derivative suit."  *See Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984).

14              Plaintiff's argument that his claim is "direct" and not derivative contradicts well-

15   established law.  Dkt. 74, ("Opp.") at 2–6.  Plaintiff argues his claims are "clearly direct" because

16   "Merger consideration was ***owed*** to Plaintiff, not Twitter"  Opp. at 6 (emphasis added).  But what

17   Plaintiff is "owed" in merger consideration derives solely from the Merger Agreement—a claim

18   that by definition is not ***independent*** of the Merger Agreement as the law requires.  *Tooley*, 845

19   A.2d at 1039 ("The stockholder's claimed direct injury must be independent of any alleged injury

20   to the corporation.").  Plaintiff asserts he is "not attempting to enforce the Merger Agreement's

21   terms on behalf of Twitter" and is instead "asserting a tort claim against Musk and is seeking a

22   damages remedy (lost use of money/interest) due to Musk's tortious conduct."  Opp. at 5–6.

23   Unmistakably, these seek the same remedy, for the same act, rendering the SAC an exercise in

24   artful pleading "attempting to recast a derivative claim by alleging the same fundamental harm in

25   a slightly different way [which] is disfavored by Delaware courts."  *Feldman v. Cutaia*, 956 A.2d

26   644, 659–60 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008).

27   _____

28         [1]   Both the Company Defendants' Reply and Motion are incorporated by reference herein.

Plaintiff's aiding and abetting claim is derivative for the same reason. By Plaintiff's own admission, this claim derives from and is co-extensive with the fiduciary duty owed to the company. According to Plaintiff, "Twitter's founder, Dorsey, and Director Durban . . . violat[ed] their duty of loyalty *to Twitter*." Opp. at 4 (emphasis added); *see also id.* at 14 ("Dorsey eagerly came to Musk's aid and *preferred Musk's interests over those of Twitter*"); SAC ¶ 84 ("During this time period, Dorsey *failed to protect the best interests of Twitter* and instead preferred and favored Musk's interests in the Buyout."); *id.* ¶ 197 ("Dorsey and Durban *breached their fiduciary duties by failing to protect the best interests of Twitter* and instead preferring and favoring their own and Musk's interests in the Buyout"). Under *Tooley* a "stockholder must demonstrate…he or she can prevail without showing an injury to the corporation." 845 A.2d at 1039. Plaintiff's fiduciary claims arise from the duties owed to and injuries allegedly suffered by Twitter and are therefore derivative. *See* Del. L. of Corp. and Bus. Org. § 13.10 ("[U]nder *Tooley*…[a] claim that seeks relief for alleged breaches of fiduciary duty which caused injury to the corporation and its stockholders as a whole remains derivative"); 12B Fletcher Cyc. Corp. § 5923.30 ("A claim for breach of fiduciary duty is generally derivative in nature").

Plaintiff's attempt to analogize his case to the facts in *Tooley* fails because his argument requires ignoring both *Tooley*'s holding and the Delaware Supreme Court's subsequent jurisprudence on the direct-subsidiary distinction. In *Tooley*, *minority shareholders* claimed an injury because the board agreed to extend a merger date, to benefit the majority, but prejudiced the minority. *Tooley* at 1033–34. Plaintiff is *not* asserting claims on behalf of a minority of unfairly treated shareholders, he is asserting that *all* shareholders have been injured alike. The Delaware Supreme Court after *Tooley* highlighted this point: "In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large." *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). Plaintiff asserts damages for all stockholders at large, unlike *Tooley*, which under *Feldman* is a prototypical derivative claim. SAC ¶¶ 1, 43.

Plaintiff ignores *Feldman* and misunderstands its impact on *Tooley*. *Feldman*, decided four years post-*Tooley*, reiterated that non-individualized claims shared by all stockholders are derivative. *Feldman*, 951 A.2d at 733; *see also Indiana Elec. Workers Pension Tr. Fund, IBEW v.*

*Dunn*, 352 F. App'x 157, 162 (9th Cir. 2009) (holding claims alleging equal injury to all shareholders were derivative under *Feldman*).

Plaintiff's assertion that he is "owed" interest under the Merger Agreement (*see* Opp. at 6) does not make his claim direct. *Feldman* was explicit on this point:

> Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature. ***The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders*** does not make a claim direct under *Tooley*.

*Id.* at 733 (Del. 2008) (emphasis added).

A defect in a merger that reduces the consideration received by all shareholders is derivative. *Komen*, 2020 WL 3484956, at *9 (quoting *In re First Interstate Bancorp Consol. S'holders Litig.*, 729 A.2d 851, 861 (Del. Ch. 1998) ("Delaware law is well-settled that claims arising from transactions involving corporate assets that allegedly operate to reduce the consideration received by stockholders in a merger are, in the absence of [special] circumstances . . . derivative in nature.")).  So too are Plaintiff's claims.

As noted in Mr. Musk's Motion, in narrow and unusual circumstances a "stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation," and may file a direct claim. *Parnes*, 722 A.2d at 1245.  Under *Parnes*, courts must distinguish between (1) claims "challenging the merger itself" (which are direct) from (2) those challenging "wrongs associated with the merger" (which are derivative).  *Id.*

Plaintiff's claims fall into the second category.  Plaintiff does not challenge the merger, instead he seeks to enforce it.  *Komen*, 2020 WL 3484956, at *10 (agreeing that plaintiff "cannot transform these claims into direct claims because Plaintiff raises no challenge to the Transaction itself").  Plaintiff argues his "SAC alleges a litany of unfair dealings ***in connection with the Merger***…replete with allegations of Musk's wrongful conduct" and is therefore direct under *Parnes*.  Opp. at 4.  (emphasis added).  But these allegations of unfair dealing do not make the required ***causal link*** between a side deal and the material terms of the merger nor plead that the transaction improperly diverted proceeds to purportedly interested insiders that would have instead

been paid to the shareholders.  *See, e.g., Golaine v. Edwards*, 1999 WL 1271882, at *9 (Del. Ch. Dec. 21, 1999).  The SAC and Opposition contend that Mr. Musk wrongfully put the Merger on hold and attempted to negotiate a lower price after the value of his Tesla shares fell, but ignore the fact that these purported unfair dealings did not impact price at all—Mr. Musk made an initial bid to purchase Twitter at $54.20 per share and bought Twitter at $54.20 per share.  Opp. at 4.  The Opposition also concludes—without identifying any plausible supporting facts—that Dorsey and Durban "assisted [Mr.] Musk in his wrongful conduct" but again does not explain how that alleged wrongful conduct affected the material terms of the merger or diverted material side benefits from shareholders to either.  *Id.*  These allegations, at most, identify "mere wrongs **associated with the merger**" that purportedly resulted in minimal—relative to the scale of the Merger—damages to Twitter and thus only "give rise to derivative claims."  *See In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3120804, at *10 (Del. Ch. June 25, 2018) (emphasis added).

Accordingly, Plaintiff's claim that his action is "exactly" like *Straight Path* is incorrect. Unlike in *Straight Path* and other "direct" actions, Plaintiff neither challenges the fairness of the merger itself or makes a claim that the "director conduct [was] so egregious as to **materially affect the price paid**" in that transaction.  *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004); *Blue v. Fireman*, 2022 WL 593899, at *8 (Del. Ch. Feb. 28, 2022) ("A claim for diverted merger consideration must challenge a material amount to be direct"'; diversion of one-third of merger consideration rendered claim direct); *Straight Path*, 2018 WL 3120804, at *12, 15 (noting selling the indemnification claim had "the effect of depriving stockholders of one-fifth of the merger consideration," and ruling that amount was material).  The merger consideration paid by Mr. Musk here was $44 billion dollars.  By Plaintiff's calculation, the alleged wrongful delay cost Twitter $200 million in lost interest on the total amount paid.  Opp. at 15.  Although at first glance it appears substantial, this purported loss is not material as a matter of law.  It is less than half of one percent of the merger consideration, similar to the side transactions in other claims held to be derivative.  Both *Golaine*, 1999 WL 1271882, at *3 and *Komen*, 2020 WL 3484956, at *9, represented less than one percent of the overall merger consideration.  In those cases, as here, the "diverted" merger consideration at issue was too immaterial to impact the overall fairness of the

1   deal and therefore the claims were derivative and not direct.  *See Golaine*, 1999 WL 1271882, at

2   *3; *Komen*, 2020 WL 3484956, at *9.

3       Plaintiff's claims and alleged injury are not analogous to and do not fit anywhere within

4   *Parnes*, and its progeny's, framework of "direct" merger cases.[2]  Unlike *Parnes*, the SAC does not

5   allege facts showing that Twitter directors scared off any potential bidders, conditioned the merger

6   on the receipt of a side deal, directed or were responsible for the only aspect of the merger

7   Plaintiff to which objects (the delay in closing) or influenced the other nine directors to approve

8   the Merger Agreement unanimously.  722 A.2d at 1245.  Plaintiff does not allege unfair dealing by

9   a majority of the Board or a link between the conclusory allegation that Twitter directors acted out

10  of allegiance to Musk and the terms of the merger.  *See Golaine*, 1999 WL 1271882, at *9.  The

11  only harm alleged here is that a Merger Agreement closing was delayed, a derivative claim

12  belonging to the company, not the shareholders.

13  **II.    PLAINTIFF'S AIDING AND ABETTING CLAIM FAILS AS A MATTER OF LAW**

14      **A.    The Business Judgment Rule Applies Here**

15      Plaintiff wrongly asserts that intermediate "enhanced scrutiny" is the appropriate standard

16  to evaluate alleged underlying fiduciary breaches by board members.  Opp. at 7.  Instead, as here,

17  "when a transaction…is approved by a fully informed, uncoerced vote of the disinterested

18  stockholders, the business judgment rule applies."  *Corwin*, 125 A.3d at 309.    Plaintiff

19  affirmatively pleads that the "Twitter shareholders voted to approve the Merger," makes no

20  allegations that the vote was coerced, and fails to present a plausible theory that the vote was less

21  than fully informed.  (SAC ¶ 167)  Therefore, the business judgment rule applies and the claim

22  should be dismissed.  *See In re Solera Holdings, Inc. S'holder Litig.*, 2017 WL 57839, at *9–13

23  (Del. Ch. Jan. 5, 2017) (dismissing fiduciary duty claim under the business judgment rule where

24  the transaction was approved by a fully-informed shareholder vote).

25

---

26  [2]  Plaintiff attempts to distinguish cases such as *Golaine* on the basis that "[t]he case had nothing

27  to do with a tortiously delayed merger or the unlawful termination of a merger."  *See* Opp. at fn. 3,
    fn. 5.  That makes Mr. Musk's point.  *Tooley* does not apply here on its facts as discussed above,
    but its reasoning and holding makes clear that Plaintiff's complaint should be dismissed.

28

Absent any allegation of coercion, Plaintiff's only hope to avoid the application of the business judgment rule rests on his contention that the board materially omitted information—and the shareholders were accordingly misinformed—regarding (1) Dorsey potentially rolling over his Twitter stock into the private entity, and (2) Mr. Musk's financing.  *See Solera Holdings* at *9 (*citing Corwin*, 125 A.3d at 309).  Plaintiff not only fails to allege any material omission as to either topic, but the FAC—filed ***prior to the shareholder vote***—shows that Plaintiff (and other shareholders) was well aware of both allegedly omitted facts before the vote.  As to Dorsey's rollover, Twitter shareholders were informed on ***May 5, 2022*** (months before the September 2022 shareholder vote) that Mr. Musk and Dorsey were in active discussions regarding a potential rollover.  *See also* SAC ¶ 188 (quoting from SEC Form 13D/A).  These discussions were also disclosed in the Proxy.[3]  SAC ¶¶ 163–64.  There are no factual allegations that Mr. Musk and Dorsey entered into any agreement ***before*** October 27, 2022, when it was formally disclosed.  SAC ¶ 189.  Shareholders were aware of the likely possibility that Dorsey would rollover his equity at the time of the vote, which he eventually did.  Indeed, Plaintiff himself discussed the likely rollover in his FAC filed months before the shareholder vote occurred.  *See* FAC ¶ 153.

Plaintiff also fails to allege that Twitter materially omitted facts regarding Mr. Musk's financing.  As an initial matter, Plaintiff does not allege that Mr. Musk and Twitter failed to fully disclose the sources and conditions of his funding, which were discussed at length in the Proxy Statement (Proxy at 11–12, 131–133).  Instead, the only omission Plaintiff alleges is the purported failure to disclose the purported risk of a margin call on loans against Tesla shares as part of Mr. Musk's financing.  SAC ¶ 117.  This theory fails on four separate grounds.  ***First and dispositively***, as clearly disclosed in the Proxy and acknowledged in the SAC, Mr. Musk allowed his margin loan to expire in May 2022 and afterward made up the difference through equity financing.  *See* SAC ¶ 119, Proxy at 58.  As there was no margin loan, there obviously was no

---

[3]  Plaintiff requests that the Court take judicial notice of the July 26, 2022 Proxy Statement (herein, the "**Proxy**"), *see* Dkt. 74 at fn. 6.  Defendants do not oppose the request.  For the convenience of the Court  the Proxy is attached as **Exhibit 1** of the Declaration of Joseph Sarles filed herewith.

8

Case No. 3:22-CV-03074-CRB-SK
DEFENDANT ELON R. MUSK'S REPLY IN SUPPORT OF
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

margin loan risk to disclose.  ***Second***, Plaintiff cites no authority for the proposition that the board had an obligation to disclose the purported unmaterialized risk beyond all of the detailed financial information provided in the Proxy.  ***Third***, any purported risk on the margin loans was publicly known to shareholders at the time of the vote as evidenced by the fact that Plaintiff ***identified and pled them in his FAC*** prior to the Proxy.  FAC ⁋⁋ 90–154.  A fraudulent omissions theory cannot stand where, as here, the alleged omitted material was publicly available.  *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) ("Where allegedly undisclosed material information is in fact readily accessible in the public domain…a defendant may not be held liable for failing to disclose this information.").  ***Fourth***, to the extent that Plaintiff contends financing issues were material because they led to the closing's delay, the fact of the delay was already well-known to the shareholders at the time of the vote: Mr. Musk sent three termination letters to Twitter prior to the vote and Twitter and Mr. Musk were in the middle of a well-publicized lawsuit over the deal.   SAC ⁋⁋ 161, 162.

### B.   Plaintiff Cannot Show an Underlying Breach Of A Fiduciary Duty

Under the business judgment rule, a fiduciary duty theory ***must*** plausibly allege that the board decision did not rationally and logically advance the corporation's objectives.  *In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 598 (Del. Ch. 2010).  At a minimum this requires pleading that a ***majority*** of the board were self-interested or dominated or controlled by a director that was.  Dkt. 67 at 10; *Huff Energy Fund, L.P. v. Gershen*, 2016 WL 5462958, at *11–12 (Del. Ch. Sept. 29, 2016).  Unable to do so, Plaintiff asserts "[he] does not need to."  Opp. at 10.  His failure to plead this threshold requirement is reason enough to dismiss.  Moreover, it was not irrational for the board to "simply accept Musk's first offer to acquire Twitter."  *Id.* (citing SAC ⁋ 197).  Here: (1) Musk's offer was ***non-negotiable***, *see* SAC ⁋ 90; (2) the Merger price of $54.20 was a significant premium ***over*** the then public share price offer, *see* SAC ⁋ 78; and (3) the board was advised that the Merger price was fair.  Proxy at 55.

Plaintiff's assertion that the board did not "take active steps to ensure it is achieving maximum value and fair terms for shareholders" (Opp. at 9) is contradicted by the SAC and Proxy.  The board sought and obtained a favorable fairness opinion from multiple financial

advisors, which precludes any claim that there was a breach of the duty of fair dealing.  Proxy at 49–55; *Rabkin v. Philip A. Hunt Chem. Corp.*, 547 A.2d 963, 971 (Del. Ch. 1986) (no breach where directors obtained fairness opinion).  Moreover, unlike in *Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1287 (Del. 1989) (finding good faith despite the absence of a rival bidder) (Opp. at 13) and *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 831, 850–57 (Del. 2015) (Opp. at 9), Twitter retained uninterested legal and financial advisors (there is no allegation otherwise) and did seek out other bidders but concluded that none were interested.  Proxy at 49, 52, 54.  Again, this is not a case where Plaintiff seeks to rollback a merger on the grounds the board prevented the shareholders from obtaining a better deal.  In fact, Plaintiff is seeking to ***enforce*** the terms of the Merger Agreement the board negotiated.

Plaintiff also cannot show that Dorsey or Durban individually breached fiduciary duties either.  Whether "Dorsey and Durban were close friends with Musk" or whether "Musk and Dorsey also discussed reinstating Dorsey as CEO" (Opp. at 9, 12) are immaterial, *see* Dkt. 67 at 10–11.  There is no well-pled fact, beyond conclusory statements, that Dorsey and Durban "exclusively favored Musk" (Opp. at 8); "influenced…[the Board to] approve a $44 billion sale" (*id.*); and "pressured their fellow Board members into accept[ing] Musk's first offer" (Opp. at 9).  Nor can Plaintiff show any financial interest.  There are no allegations that Durban had any side deal with Mr. Musk.  As to Dorsey, the rollover—which simply allowed Dorsey to retain his Twitter stock and provided no other material benefit—was not material "in the context of the director's economic circumstances."  *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999).  Plaintiff's speculation that the stock may reap future gains and that Dorsey may at some point be appointed Twitter CEO are just that, speculation, and cannot give rise to a claim.  And fundamentally, even if Plaintiff stated a claim that either breached any fiduciary duty, he failed to plead that the breach impacted the remainder of the board which unanimously approved the deal.  *See Malpiede*, 780 A.2d at 1084-85 (dismissing duty of loyalty claim for failure to allege majority of board was interested or dominated by interested director).  Here, "[h]aving failed to plead a claim for breach of fiduciary duty, the plaintiff likewise has failed to

10

Case No. 3:22-CV-03074-CRB-SK
DEFENDANT ELON R. MUSK'S REPLY IN SUPPORT OF
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

plead a claim for aiding and abetting."  *See e.g., Chester County Retirement System v. Collins*, 2016 WL 7117924, at *3 (Del.Ch. Dec. 06, 2016).

### C.   Plaintiff Cannot Independently Show Aiding And Abetting

Citing no authority, Plaintiff argues his pleading burden in an aiding and abetting breach of fiduciary duty claim is "low" (Opp. at 6), but the opposite is true.  "A plaintiff faces *a high burden* when pleading an aiding and abetting claim." *Jacobs v. Meghji*, 2020 WL 5951410, at *8 (Del. Ch. Oct. 8, 2020) (dismissing aiding and abetting fiduciary claim under Rule 12(b)(6)) (emphasis added); *Binks v. DSL.net, Inc.*, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010) ("The standard for an aiding and abetting claim is a stringent one").  The rationale for a high bar is to protect a bidder's "right to work in its own interests to maximize its value" in a merger, *Jacobs*, 2020 WL 5951410, at *8, and protect the privilege of "arm's-length bargaining," *Morgan,* 2010 WL 2803746, at *8.  Vague and conclusory statements are therefore insufficient.  *Id.* at *8.

Plaintiff fails to allege facts that satisfy this bar.  Absent from Plaintiff's laundry list of conclusory grievances, *see* Opp. at 9–10, is any non-conclusory allegation supported by fact, *see Jacobs*, 2020 WL 5951410, at *7, n. 46.  Plaintiff's only response is to state he "plainly alleges all required elements of his aiding-and-abetting claim" and regurgitate allegations against Dorsey and Durban but none against Mr. Musk (Opp. at 7-9) because the SAC pleads no such facts, only labels and elements of the claim.  *In re Hansen Med., Inc. S'holders Litig.*, 2018 WL 3025525, at *11 (Del. Ch. June 18, 2018) ("Plaintiffs have not stated a reasonably conceivable claim for aiding and abetting of fiduciary duty…because they have not pled facts that show Defendant…knowingly participated in the purported breach by the other Defendants.").  Failure to plead non-conclusory facts requires dismissal.

The Opposition identifies no facts in the SAC demonstrating that Mr. Musk had any involvement in the purported underlying breaches.  The Opposition does not and cannot point to any facts showing that Mr. Musk aided in the concealment of the rollover deal with Dorsey—no doubt due in part to the fact that the rollover was discussed—thus distinguishing this case from the authority upon which Plaintiff relies.  *Compare* SAC *with Morrison v. Berry*, 191 A.3d 268, 277–286 (Del. 2018) (pleading facts of actual concealment, including emails comparing public

1   statements to underlying agreement).  Nor can the Opposition's bare assertion that "Musk directly

2   reach[ed] out to his friends on the Board" (Opp. at 10) establish that Mr. Musk exploited

3   purported conflicts on Twitter's board since Delaware law declines to "infer knowing participation

4   where an otherwise arm's-length bidder has recruited or involved" a director "in the bidding

5   process to increase the likelihood of effectuating a deal." *Jacobs*, 2020 WL 5951410, at *10.

6          But above all else, and even if Plaintiff had (1) successfully avoided the business judgment

7   rule, (2) pleaded claims for underlying breach of fiduciary duty, (3) and pleaded that Mr. Musk

8   conspired with Durban and Dorsey with actual or constructive knowledge that he was violating the

9   law, the claim must still be dismissed because there are no allegations that either directed

10  dominated, influenced, or swayed the other nine directors.  *See Malpiede*, 780 A.2d at 1098;

11  *Morgan*, 2010 WL 2803746, at *5 (dismissing claim for failure to allege the board "was

12  influenced materially" by the allegedly interested director).

13  **III.   THE UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW**

14         **A.     The Unjust Enrichment Claim Is Not Saved By The Delaware Carve-Out**

15         The claim that Mr. Musk was unjustly enriched when he failed to timely file an SEC Form

16  is barred by SLUSA's prohibition on pleading securities fraud actions as state law claims.  The

17  exception to this rule under 15 U.S.C. § 77p(d)(1)(B) (the "Delaware carve-out") does not apply

18  here. *See* Opp. at 13–14.

19         Contrary to Plaintiff's contention, his unjust enrichment claim does not fall under the first

20  Delaware carve-out criterion—that the action involves "the purchase or sale of securities by the

21  issuer or an affiliate of the issuer ***exclusively from or to holders of equity securities of the issuer***,"

22  15 U.S.C. § 77p(d)(1)(B)(i) (emphasis added).  Plaintiff's claim arises not from Mr. Musk's

23  ***purchase*** of the securities from Twitter's shareholders, but rather from his purported failure to

24  disclose his ownership of Twitter shares to ***the entire market*** and not "exclusively…holders of

25  equity securities" of Twitter.  SAC ⁋ 65 (alleging that Twitter's "share price could have been

26  higher had the market"—and not just Twitter's existing shareholders—"known of Musk's growing

27  stake.").  Since Twitter stock was sold on an open market, Mr. Musk's purported failure to timely

28  disclose his ownership unquestionably impacted anyone who would have purchased Twitter stock

in reaction to the disclosure, including "prospective unitholders, not simply those who already owned" Twitter stock.  *See Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del. 2002) (because the transaction at issue "unquestionably involved a purchase or sale to prospective unitholders, not simply those who already owned Genesis units, the exception cannot apply").

Nor does it fall under the second criterion.  Mr. Musk's Form 13D disclosing his position in Twitter is not a communication "concern[ing] decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights."  *See* 15 U.S.C. § 77p(d)(1)(B)(ii).  First, the Form 13D simply disclosed Mr. Musk's Twitter holdings and had nothing to do with any buy-out.  Second, dispositively, according to the SAC, Mr. Musk was obligated to make the disclosure on March 26, 2022 and did not make the disclosure until April 4, 2022.  SAC ⁋ 60.  These **predate Mr. Musk's** offer to purchase the company by **three weeks and nine days**, respectively, and therefore could not have concerned decisions "acting in response to a tender offer" that had not yet been made.  *Compare* 15 U.S.C. § 77p(d)(1)(B)(ii) *with* SAC ⁋ 60 *and* ⁋ 89.  Moreover, a failure to file SEC Form 13 (*see* Opp. at 14) is not "communication" as contemplated by § 77p(d)(1)(B)(ii).  The Court should not expand this statute beyond its plain meaning.  *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

At the baseline, neither criteria of the Delaware carve-out could apply because Mr. Musk did not, under any definition, control Twitter as of April 4, 2022.  The term "control" is not defined in 15 U.S.C. § 77p.  Plaintiff asserts that control, however, can be inferred based on a mixture of factors: (1) Mr. Musk's then 9.6% ownership, (2) combining his shares with those of others who have voting agreements with him (here, Morgan Stanley, Dorsey and Al Waleed bin Talal) (in total an additional 15.77% of the company); and (3) giving weight to Mr. Musk's close personal relationship with Dorsey.  Opp. at 13.  In *Crispo v. Musk*, the Delaware Chancery Court considered this precise argument and held that the very facts alleged by Plaintiff to establish "control" for the Delaware carve-out were insufficient to show that Mr. Musk "controlled" Twitter

for purposes of a fiduciary duty claim against him.  2022 WL 6693660, at *15.  In *Crispo*, the Chancery Court found: (1) a "less-the-10% voting percentage is typically not enough, standing alone, to give rise to an inference of control," *id.* at *13; (2) "lumping in the co-investors' stock would attribute to [Mr. Musk's] effective control [to] 26.8% of Twitter's outstanding shares" but was still "not enough to give rise to an inference of control," *id.*; and (3) Mr. Musk's relationship with Dorsey "while a relevant factor to consider…d[id] not contribute much to [p]laintiff's argument," *Id*.  Further, *Crispo* held "[t]he allegations are no stronger when considered together." *Id*. at *15.  Ironically, in his Opposition to the Companies' Motion to Dismiss, Plaintiff described *Crispo*'s theory of control as "meritless" and "baseless since [Mr.] Musk was never a director, officer, or majority shareholder of Twitter."  Dkt. 73 at 5.  Mr. Musk agrees.  The Court should hold Plaintiff to his own—correct—analysis and find, as in *Crispo*, that Mr. Musk did not "control" Twitter prior to the closing of the Merger and, accordingly, that the Delaware carve-out does not apply to Plaintiff's unjust enrichment claim.

### B.        There Is No Unjust Enrichment Theory Connected To Plaintiff's Loss Or Disconnected From The Merger Agreement

Plaintiff has failed to plead any viable theory of unjust enrichment.  Plaintiff's first theory—the Form 13D theory—also fails for lack of any alleged causation.  An unjust enrichment claim requires an alleged "relation between the enrichment and impoverishment."  *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012).  Plaintiff does not allege that he suffered any injury—*e.g.*, sold shares at a deflated price—as a result of Mr. Musk's allegedly late disclosure.  Plaintiff does not state a claim simply by pleading that Mr. Musk was enriched, or that it was unfair—a causal nexus is required, which Plaintiff fails to plead.  *See Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 485 (D. Del. 2010).

Plaintiff's second theory of unjust enrichment fails because it is a contract claim disguised as an equitable one.  "Where a contract is 'the measure of the plaintiffs' right, there can be no recovery under an unjust enrichment theory independent of it.'"  *Stein v. Wind Energy Holdings, Inc.*, 2022 WL 17590862, at *9 (Del. Super. Ct. Dec. 13, 2022).  Plaintiff quantifies his remedy wholly by reference to the Merger Agreement—asserting he was "***deprived*** of timely receipt of the

Merger [Agreement] consideration which [he]…had the **right** to receive" (Opp. at 7).  He cannot bring that claim in equity.  Plaintiff cites several cases which stand for the unremarkable proposition that in a fiduciary duty case the court can fashion a monetary remedy based on the damages suffered.  Opp. at 15, *see Weinberger v. UOP, Inc.*, 457 A.2d 701, 712 (Del. 1983); *Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436, 444 (Del. 1996); *Basho Techs. Holdco B, Ltd. Liab. Co. v. Georgetown Basho Inv'rs, Ltd. Liab. Co.*, 2018 Del. Ch. LEXIS 222, at *1 (Ch. July 6, 2018).  None of these cases concern unjust enrichment, nor provide any exception to the well-established prohibition on "pleading around" a breach of contract by framing it as unjust enrichment claim.  *See Vichi*, 62 A.3d at 58.  And to the extent that Plaintiff's unjust enrichment claim is based on the same facts as his claim for aiding and abetting, it should be dismissed on the same basis.  *Jacobs*, 2020 WL 5951410, at *14 ("Plaintiff's unjust enrichment claim…fails, as it is based on the same facts and circumstances as the failed aiding and abetting breach of fiduciary duty claim.").  Neither of Plaintiff's unjust enrichment theories can stand, and they should be dismissed along with Plaintiff's other claims.

## CONCLUSION

For the reasons stated herein, Defendant Mr. Musk respectfully requests that the Court grant his motion and dismiss the Second Amended Complaint with prejudice.

DATED:  April 18, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Joseph C. Sarles*
Alex Spiro
Michael T. Lifrak
Joseph C. Sarles
Alex Bergjans

*Attorneys for Elon Musk,  X HOLDINGS I, INC., and X HOLDINGS II, INC, and Twitter, Inc.*

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that the foregoing document was served on all counsel of record electronically or

3   by another manner authorized under FED. R. CIV. P. 5(b) on this the 18th day of April, 2023.

4
                                    QUINN EMANUEL URQUHART &
5                                   SULLIVAN, LLP

6

7                               By  /s/ Joseph C. Sarles
8                                   Alex Spiro
                                    Michael T. Lifrak
9                                   Joseph C. Sarles
                                    Alex Bergjans
10                                  Aubrey L. Jones

11
                                    *Attorneys for Elon Musk,  X HOLDINGS I, INC.,*
12                                  *and X HOLDINGS II, INC, and Twitter, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28